IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROBERT TILLARD,

                Plaintiff,

                                    Civil Action No.
                                    10-CV-0344 (NAM)(DEP)

      v.

D. PRUCKNO, Correctional Officer,

                Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

ROBERT TILLARD, *Pro Se*
08-B-3953
Oneida Correctional Facility
P.O. Box 4580
Rome, N.Y. 13442

FOR DEFENDANT:

HON. ANDREW M. CUOMO      ADAM SILVERMAN, ESQ.
Attorney General of the State    Assistant Attorney General
of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Robert Tillard, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 against a corrections officer employed at the facility in which he was housed at the relevant times, alleging deprivation of his constitutional rights.  Tillard asserts that he was verbally mocked, harassed, and threatened by the defendant over a period of time, and that in retaliation for filing a grievance concerning the matter he was issued a misbehavior report falsely accusing him of violating prison rules.  As relief, plaintiff's complaint requests an award of compensatory damages in the amount of $30,000.

In response to plaintiff's complaint defendant has moved seeking its dismissal as failing to plausibly state a cause of action for violation of his constitutional rights.  For the reasons set forth below, I recommend that defendant's motion be granted, in part, and that plaintiff's Eighth and Fourteenth Amendment claims for harassment be dismissed, but that the motion otherwise be denied.

I.      BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the custody of the New York

State Department of Correctional Services ("DOCS").  *See generally*

Complaint (Dkt. No. 1).  At the times relevant to his claims plaintiff was

designated to the Oneida Correctional Facility ("Oneida"), located in

Rome, New York.  *Id.*

Plaintiff's claims arise principally from a series of interactions with

defendant D. Pruckno, a corrections officer employed at Oneida, occurring

during the period between January and March of 2010.  Complaint (Dkt.

No. 1) § 6.  Plaintiff alleges that on several occasions defendant mocked

him and made racially insensitive remarks toward him.  Plaintiff filed a

grievance regarding the matter on or about February 19, 2010, and

additionally complained to the DOCS Inspector General ("IG") concerning

defendant's conduct.  *Id.*

Plaintiff was summoned on March 2, 2010 to participate in an

investigation stemming from his filings.  Complaint (Dkt. No. 1) § 6.

---

[1]      In light of the procedural posture of this case the following recitation is drawn
principally from plaintiff's amended complaint, the contents of which have been
accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551
U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S.
546, 546, 84 S. Ct. 1733, 1734 (1964).

Plaintiff was advised by an unidentified corrections officer "to watch his back" and that "they were there to beat the black off [him]". *Id.* On that evening defendant Pruckno called the plaintiff out of his Rastafarian study group and informed him that he was not supposed to be there. *Id.*

On March 3, 2010 plaintiff was issued a misbehavior report; while plaintiff's complaint does not explicitly state that Corrections Officer Pruckno was the author of the misbehavior report the implication from his complaint, when liberally construed and all inferences are drawn in his favor, is that he did.  Complaint (Dkt. No. 1) § 6.  According to plaintiff's complaint, on March 7, 2010 while plaintiff was eating at the facility mess hall, defendant stated to the him, "I'm a [sic] have your black ass in the S.H.U. before mourning [sic] sun rise."  As a result of the March 3, 2010 misbehavior report, plaintiff was sentenced on March 8, 2010 to thirty days of disciplinary confinement in the facility's special housing unit ("SHU").[2]

_____

[2]     Inmates may be placed in SHU confinement for a variety of reasons, including for disciplinary purposes. *Lee v. Coughlin*, 26 F. Supp.2d 615, 618 (S.D.N.Y. 1998) (quoting, *inter alia*, 7 N.Y.C.R.R. § 301.6); 7 N.Y.C.R.R. § 301.7. Inmates in SHU are not completely restricted. *Husbands v. McClellan,* 990 F. Supp. 214, 217 (W.D.N.Y. 1998); *see also* 7 N.Y.C.R.R. pt. 304.   While in SHU confinement inmates are allowed two showers per week and one hour of outdoor exercise per day, and are entitled to unlimited legal visits and one non-legal visit per week. *Id.*  SHU inmates have access to counselors and sick call, and additionally can participate in cell study programs and receive books from the prison library. *Id.*

*Id.*

II.   <u>PROCEDURAL HISTORY</u>

This action was commenced on March 24, 2010.  Dkt. No. 1.

Plaintiff's complaint names D. Pruckno as the lone defendant, and asserts

three distinct causes of action, claiming 1) unlawful retaliation for having

engaged in activity protected under the First Amendment; 2) cruel and

unusual punishment, in violation of his rights under the Eighth Amendment

and 3) a substantive due process deprivation under the Fourteenth

Amendment.  *Id.*

In lieu of answering plaintiff's complaint, defendant moved on March

18, 2010 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

for dismissal of all three of plaintiff's causes of action.  Dkt. No. 12.  In his

motion, defendant argues that plaintiff has failed to allege plausible claims

upon which relief may be granted.[3]

Defendant's motion, to which plaintiff has not responded, is now ripe

for determination and has been referred to me for the issuance of a report

---

[3]      In his motion, defendant Pruckno also urges the court to deny plaintiff's request
for a temporary restraining order, sought earlier in the case by letter dated April 22,
2010.  Dkt. No. 11.  That application, which was treated by the court as seeking
preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure,
was denied by Chief District Judge Norman A. Mordue on July 13, 2010.  *See* Dkt. No.
16.

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Dismissal Motion Standard

    A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading, utilizing as a backdrop a pleading

standard which, though unexacting in its requirements, "demands more

than an unadorned, the-defendant-unlawfully-harmed me accusation" in

order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S., ___ , ____, 129 S.

Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554,

555, 127 S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of Civil

Procedure requires that a complaint contain "a short and plain statement

of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  While modest in its requirement, that rule commands that a

complaint contain more than mere legal conclusions; "[w]hile legal

conclusions can provide the framework of a complaint, they must be

supported by factual allegations."  *Ashcroft,* 129 S.Ct. at 1950.

    To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim that is plausible on its face. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d

435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson* v. *Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) ('"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp.2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a  *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 199); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

B.    Legal Significance of Plaintiff's Failure To Oppose Defendant's Motion

Before turning to the merits of defendant's motion, as a threshold

matter I will first address the plaintiff's failure to oppose the motion in order to determine what significance, if any, to attribute to that default.

The failure of a plaintiff to oppose a dismissal motion does not preclude the court from determining the motion without the benefit of a submission from the plaintiff.  *See e.g., White v. Mitchell*, No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001).[4]  Since a motion to dismiss tests only the facial sufficiency of a plaintiff's complaint, where a plaintiff has been afforded a reasonable time to respond to the motion but has failed to take advantage of that opportunity, the court may determine the legal sufficiency of its claims as a matter of law, based upon its own reading and knowledge of governing case law.  *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).  When measuring the sufficiency of plaintiff's complaint the court may consider that under this court's local rules a party's failure to respond to a properly filed motion can be construed as consent to the granting of the motion, provided the court determines that the moving party has met its burden of demonstrating entitlement to the relief requested.  N.D.N.Y.L.R. 7.1(b)(3); *see McCall*, 232 F.3d at 322-23 (holding that a plaintiff's failure to respond to a motion to dismiss cannot

---

[4]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

alone constitute a basis for dismissal of the plaintiff's complaint if it is found to a claim for relief); *White*, 2001 WL 64756 at n. 2 (citing *McCall*).

As the foregoing reflects, although plaintiff has failed to oppose defendant's dismissal motion, the court must nonetheless determine whether his complaint states a plausible claim for relief, but it is not precluded from deciding the pending motion based upon plaintiff's silence.

C.    Retaliation

In his first cause of action plaintiff alleges that he was issued a false misbehavior report on March 3, 2010, and that its issuance was motivated by his filing of a grievance and an IG complaint regarding defendant's conduct.  That cause of action alleges unlawful retaliation in violation of the First Amendment.  Defendant argues that plaintiff's vague and conclusory allegations offered in support of his retaliation claim are insufficient to survive a motion to dismiss.

It is true, as defendant argues, that the mere allegation that a false misbehavior report has been issued to an inmate, standing alone, does not rise to level of constituted significance.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied,* 485 U.S. 982, 108 S. Ct. 1273 (1988)).  The further

10

assertion that the false misbehavior report was prompted by the accused inmate having engaged in protected activity, however, can suffice to state a claim of unlawful retaliation.  *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco*, 854 F.2d at 588-90.  Claims by inmates that adverse actions taken by prison workers are, of course, easily incanted, and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Davis*, 320 F.3d at 352 (same).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants

11

took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action - in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

In this instance, affording plaintiff the deference which he is due as a *pro se* litigant and broadly construing his complaint, it appears that plaintiff is claiming that the March 3, 2010 misbehavior report was issued in retaliation for the grievance and IG complaint he filed on February 19, 2010, complaining of defendant's verbal harassment of him.

In cases involving allegations of retaliation based on the filing of allegedly false misbehavior reports, "[t]he difficulty lies in establishing a retaliatory motive." *Barclay v. New York*, 477 F. Supp. 2d 546 (N.D.N.Y. 2007). When evaluating whether a misbehavior report is the product of retaliatory animus, an analysis most typically undertaken on a motion for summary judgment, courts generally look to several factors as bearing upon any potential nexus between the protected conduct and the misbehavior report, including "temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *Id*. (citations omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 339 (S.D.N.Y. 2000).

In this instance, applying the generous Rule 12(b)(6) standard which governs, I conclude that plaintiff has plausibly stated a claim of unlawful retaliation.  Plainly, plaintiff has sufficiently alleged that he engaged in protected conduct, since the filing of a grievance, and the lodging of a complaint with the office of the DOCS IG, both represent constitutionally protected activity.  *Gayle v. Goynea*, 313 F.3d 677, 682 (2d Cir. 2002). Plaintiff also has adequately alleged that adverse action, in the form of issuance of a false misbehavior report resulting in a sentence of SHU

13

disciplinary confinement, was taken against him.  *Tafari v. McCarthy*, 714 F. Supp.2d 317, 373 (N.D.N.Y. 2010).  The requisite causal connection between the two is allegedly demonstrated by the fact that the two events were separated by only a matter of two weeks.  While standing alone the temporal relationship between the two events may not suffice to establish a claim of retaliation at trial or in the face of summary judgment motion, it suffices to supply the missing third element and avoid dismissal of plaintiff's retaliation of his early procedural juncture.  *See McEachin v. Selsky*, No. 9:04-CV-83 2005 WL 2128851*,* at * 6 (N.D.N.Y. Aug. 20, 2005) (Scullin, C.J.), *rev'd and vacated in part*, 225 Fed. App'x 36 (2d Cir. 2007); *Gill v. Riddick*, No. 9:03-CV-1456, 2005 WL 755745, at *13 (N.D.N.Y. Mar. 31, 2005) (Treece, M.J.).

It may be, as defendant argues, that plaintiff will not be able to sustain his retaliation claim when it is examined on a more fully developed record, either on motion for summary judgment or at trial.  At this stage, however, I conclude that plaintiff has plausibly stated a cause of action for retaliation based upon his receipt of an allegedly false misbehavior report, shortly after registering complaints regarding the conduct of the issuing officer, and therefore recommend that the portion of defendant's motion

14

addressed to that claim be denied.[5]

D.    Harassment

Plaintiff's second and third causes of action center upon the verbal

harassment and threats directed toward him by the defendant, asserting

violation of his rights under the Eighth and Fourteenth Amendments,

respectively.  In his motion, defendant seeks dismissal of those two

counts.

1.    Eighth Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual

punishments, including those that involve the "unnecessary and wanton

infliction of pain" and are incompatible with the "the evolving standard of

decency that mark the progress of a maturing society.  *Estelle*, 429 U.S. at

102, 104, 97 S. Ct. at 290, 291; *see also Whitley v. Albers,* 475 U.S. 312,

319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia Estelle*).  That

---

[5]    Plaintiff's complaint makes reference to being removed by the defendant from a
Rastafarian study group, a presumably religious-based event.  The free exercise
clause of the First Amendment guarantees the right of inmates to participate in
congregate religious services, subject to valid, overriding penological concerns,
including those relating to institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S.
342, 348 107 S. Ct. 2400, 2404 (1987); *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d
Cir. 1993) (citing cases).  That right is further protected by the Religious Land Use and
Institutionalized Person Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000 cc-1(a).  It does not
appear from his complaint that plaintiff is claiming a violation of either the First
Amendment free exercise clause or the RLUIPA in this action.

amendment's protection, however, does not extend to all offensive or boorish conduct by prison officials directed at prison inmates.  It is well established, for example, that verbal harassment of an inmate by prison officials, including through use of profanity, but without any resulting physical injury, does not rise to a level that is actionable under section 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (Claim that a prison guard called plaintiff names "did not allege any appreciable injury"); *Hofelich v. Ercole*, No. 06-13697, 2010 WL 184453, at *8 (S.D.N.Y. Jan. 11, 2010) ("Section 1983 was not designed to rectify harassment or verbal abuse.") (internal citations omitted), reconsideration granted, 2010 WL 145940 (granting motion for reconsideration and summary judgment dismissing retaliation claim); *see also Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998).  Similarly, unfulfilled threats directed by prison officials toward inmates do not amount to a constitutional violation.  *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995).

Having carefully reviewed the limited allegations set forth in plaintiff's complaint, I find that they all involve the type of verbal conduct that falls

short of establishing a plausible Eighth Amendment claim of cruel and

unusual punishment.[6]

## 2.    Fourteenth Amendment

In his third cause of action plaintiff seeks to invoke the substantive

due process clause of the Fourteenth Amendment based upon allegations

that defendant made fun of him as a result of a speech impediment.  This

claim fares no better than that alleged under the Eighth Amendment.

The due process clause of the Fourteenth Amendment contains both

a substantive and a procedural component.  *Zinermon v. Burch*, 494 U.S.

113, 125, 110 S.Ct. 975 (1990).  The substantive component "bars certain

arbitrary and wrongful government action regardless of the fairness of the

procedures used to implement them."  *Id.* at 125, 110 S.Ct. at 983 (internal

quotations and citation omitted).  "Substantive due process protects

individuals against government action that is arbitrary,  conscience-

shocking, or oppressive in a constitutional sense, but not against

government action that is incorrect or ill-advised."  *Lowrance v. Achtyl*, 20

---

[6]      In support of his application for a temporary restraining order plaintiff makes
oblique reference to corporal punishment as well as "assault and battery".  *See* Dkt.
Nos. 11, 14.  No specifics are provided, however, to show that plaintiff was actually
assaulted, nor do plaintiff's papers disclose whether defendant Pruckno was involved
in the incidents referenced.

F.3d 529, 537 (2d Cir. 1994) (internal quotations and citations omitted) (citing cases).  "The first step in a substantive due process analysis is to identify the constitutional right at stake." *Excell v. Woods*, No. 9:07-CV-0305, 2009 WL 3124424, at *23 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J. and Lowe, M. J.) (citing *Lowrance*, 20 F.3d at 537).  There are few circumstances arising in the context of prison life that ascend to the level of shocking and suffice to state a substantive due process violation. *Shuler v. Brown*, No. 07-CV-0937, 2009 WL 790973, at *9 (N.D.N.Y. Mar. 23, 2009) (McAvoy, S. J. and Lowe, M. J.).

As was previously discussed, "[t]he law is clear that verbal harassment or even threats alone are not actionable under 42 U.S.C. §1983." *Cotz v. Mastroeni*, 476 F.Supp.2d 332, 372 (S.D.N.Y. 2007).  Indeed, it is well recognized that  "although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under §1983.  Furthermore, verbal threats do not violate the Fourteenth amendment unless accompanied by physical force or the present ability to effectuate the threat." *Harris v. Lord*, 957 F.Supp. 471, 475 (S.D.N.Y. 1997) (citing and quoting *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995)) (internal quotations

18

omitted).   Since the allegations offered in support of plaintiff's substantive

due process claim involve purely verbal conduct, I recommend dismissal

of plaintiff's third cause of action, alleging a violation of his rights under the

Fourteenth Amendment.[7]

In sum, plaintiff's complaint alleges behavior on the part of

defendant Pruckno which, if it occurred, is undeniably both unprofessional

and indefensible.  Those allegations, however, do not reflect actionable

conduct under either the Eighth or Fourteenth Amendments.

IV.   SUMMARY AND RECOMMENDATION

Having reviewed plaintiff's complaint, read generously and in the

deferential light dictated by plaintiff's *pro se* status and the nature of

defendant's motion, I conclude that plaintiff has stated a plausible claim of

unlawful retaliation by defendant in response to his having filed a

grievance and a complaint with the office of the DOCS IG regarding

Corrections Officer Pruckno's actions toward him.  Because plaintiff's

---

[7]      There is yet another reason why a substantive due process claim would fail.
The Supreme Court has repeatedly held, "if a constitutional claim is covered by a
specific constitutional provision . . . it must be analyzed under the standard appropriate
to that specific provision, not under the [more generalized notion] of substantive due
process."  *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 1228 n.7
(1997) (citing *Graham v. Conner*, 490 U.S. 386, 394, 109 S.Ct. 1870, 1871 (1989));
*see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005).  Here, the conduct forming the
basis for plaintiff's Fourteenth Amendment claim is the same as that upon which his
Eighth Amendment cause of action is predicated.

Eighth and Fourteenth Amendment claims appear to involve only verbal conduct toward the plaintiff, however, with no indication that it was accompanied by physical abuse, I recommend dismissal of those claims, though with leave to replead.  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).  Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss (Dkt. No. 12) be GRANTED, in part, and that the plaintiff's second and third causes of action be DISMISSED, with leave to file an amended complaint within thirty (30) days from any order adopting this report and recommendation, but that the portion of defendant's motion challenging the sufficiency of plaintiff's First Amendment retaliation cause of action be DENIED; and in further

RECOMMENDED that defendant's time to answer plaintiff's complaint be temporarily stayed pending further order of the court, depending upon whether plaintiff opts to file an amended complaint in the action to cure the deficiencies noted in this report.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this

report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      November 29, 2010
            Syracuse, NY



Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Antwon WHITE, Plaintiff,
v.
Dr. J. MITCHELL, Arthur Kill Correctional Facility
Health Services Director, Dennis Breslin, Arthur Kill
Correctional Facility Superintendent and Edward
Checkett, D.D.S., Arthur Kill Correctional Facility
Dentist, Defendants.
No. 99-CV-8519 (FB).

Jan. 18, 2001.

Antwon White, Arthur Kill Correctional Facility, Staten
Island, New York, for the Plaintiff, pro se.

Eliot Spitzer, Attorney General of the State of New York,
By: Maria Filipakis, New York, New York, for the
Defendants.

*MEMORANDUM AND ORDER*

BLOCK, J.

**\*1** Plaintiff Antwon White ("White"), a prison inmate,
brings this action *pro se* pursuant to 42 U.S.C. § 1983 and
New York law alleging that defendants were both
negligent and deliberately indifferent to his medical needs
in connection with treatment for hearing loss he suffered
following the extraction of a wisdom tooth. White pleads
that this conduct violated his rights under the Eighth
Amendment, and seeks injunctive relief as well as
compensatory and punitive damages. While White does
not make the distinction clearly, the Court construes the
complaint as naming defendants in both their individual
and official capacities.[FN1] Defendants have moved to
dismiss White's complaint pursuant to Fed.R.Civ.P.

12(b)(6) asserting that (1) the complaint fails to state a
claim under the Eighth Amendment for deliberate
indifference to his medical needs; (2) the complaint fails
to allege personal involvement by defendant Dennis
Breslin ("Breslin"), Superintendent of Arthur Kill
Correctional Facility ("Arthur Kill"); and (3) defendants
are entitled to qualified immunity. Although White has
filed no opposition to defendants' motion, the Court can
decide the motion without the benefit of a submission
from him.[FN2] For the reasons set forth below, defendants'
motion is denied.

> FN1. "[T]he plaintiff ... should not have the
> complaint automatically construed as focusing on
> one capacity to the exclusion of the other."
> *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993).

> FN2. *See McCall v. Pataki,* 232 F.3d 321, 323
> (2d Cir.2000) ("If a complaint is sufficient to
> state a claim on which relief can be granted, the
> plaintiff's failure to respond to a Rule 12(b)(6)
> motion does not warrant dismissal").

BACKGROUND

The following facts are drawn from White's complaint and
the records attached thereto, and are accepted as true for
the purposes of this motion: On August 5, 1999, while
incarcerated at Arthur Kill, White had a wisdom tooth
extracted by defendant Edward Checkett ("Checkett"), a
dentist employed at Arthur Kill. Read broadly, the
complaint seems to allege that Checkett was aware that he
negligently injured White during the extraction procedure,
but failed to provide immediate medical attention.

Soon after the extraction, White began experiencing
ringing and hearing loss in his left ear. On several
occasions, White brought these complaints to the attention
of defendant Jennifer Mitchell ("Mitchell"), Arthur Kill's
Health Services Director. However, Mitchell did not
provide White with prompt medical attention and, in
particular, failed to refer him to an ear specialist.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

On November 15, 1999, White filed an administrative complaint, pursuant to the Department of Correctional Services' grievance procedures, requesting medical attention for his hearing problem and, "if necessary," a referral to an ear specialist. Inmate Grievance Complaint attached to Compl. White alleges that Breslin denied his grievance, and "failed to direct his subordinates" to provide White with prompt medical attention.[FN3]

> FN3. Despite White's allegation to the contrary, the Inmate Grievance Resolution Committee ("IGRC") appears to have accepted White's grievance on November 30, 1999, and directed him to "report back to sick-call." Inmate Grievance Complaint attached to Compl.

On December 9, 1999, White was seen by an audiologist who described the degree of hearing loss in his left ear as "severe-profound." NYSDOCS Request & Report of Consultation attached to Compl. The audiologist recommended further medical consultation to determine the etiology of White's hearing loss and approval for a hearing aid evaluation. *See Id.* White filed the complaint in this action on December 23, 1999.

DISCUSSION

I. Standard on a Motion to Dismiss

**\*2** In considering a motion to dismiss, the court's task is " 'necessarily a limited one.' " *George Haug Co. v. Rolls Royce Motor Cars Inc.,* 148 F.3d 136, 139 (2d Cir.1998) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "[I]n ruling on [the] defendant[s'] motion, the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 63 (2d. Cir1997). The Court may consider the allegations in the complaint and "all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1092 (2d

Cir.1995). In addition, because White is a *pro se* plaintiff, his pleadings must be read liberally. *See Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir.1999); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). The Court should grant such a motion only if, after viewing the plaintiff's allegations in the most favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Feder v. Frost,* 220 F.3d 29, 32 (2d Cir.2000).

II. Section 1983 Individual Capacity Claims

Defendants contend that White's complaint must be dismissed because it fails to state an Eighth Amendment violation. To state a claim under § 1983 for deprivation of medical treatment, a plaintiff must show that the defendant acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A serious medical need exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997)) (internal quotation marks omitted). The Second Circuit has recently held that refusal to treat a degenerative condition that tends to have serious medical implications if left untreated is a sufficient basis to support the existence of a serious medical need. *See Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) (holding that a tooth cavity may be a serious medical condition).

To establish deliberate indifference, the plaintiff must prove that "the prison official knew of and disregarded the plaintiff's serious medical needs." *Chance,* 143 F.3d at 703 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Deliberate indifference will exist when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). "[M]ere medical malpractice' is not tantamount to deliberate indifference," but may rise to the level of deliberate indifference when it "involves culpable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

recklessness, *i.e.,* an act or failure to act ... that evinces 'a conscious disregard of a substantial risk of harm." ' *Chance,* 143 F.3d at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (internal quotation marks omitted)).

**\*3** White has alleged a "serious medical condition" under *Gamble.* He states that the ringing in his ear developed into a progressive loss of hearing. Indeed, the audiologist's report referred to above characterizes the degree of hearing loss in White's left ear as being "severe-profound."

*Gamble'* s "deliberate indifference" prong is satisfied in respect to each of the defendants in their individual capacities by a reasonably liberal reading of White's *pro se* complaint. With respect to Checkett, White appears to allege that the injury leading to his hearing loss occurred when Checkett negligently extracted his wisdom tooth. Dental malpractice, without more, does not state a claim cognizable under § 1983. White further alleges, however, that Checkett was deliberately indifferent to his medical condition because, once he knew that he had injured White during the extraction procedure, he failed to render timely medical treatment to abate the harm.

As for Mitchell, White alleges that she ignored his subsequent repeated requests for appropriate treatment while his condition worsened, and failed to supervise Arthur Kills's medical personnel in connection with his treatment. Mitchell, therefore, allegedly knew of White's serious medical need, and consciously failed to act to prevent further harm to White.

Finally, Breslin allegedly failed to adequately supervise White's treatment, and denied his grievance. Defendants assert that the complaint must be dismissed as to Breslin because it fails to allege his personal involvement in the Eighth Amendment violation. Because "[s]ection 1983 imposes liability only upon those who actually cause a deprivation of rights, 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." ' *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir.1999) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). However, "personal

involvement of a supervisory defendant may be shown by evidence that ... the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong...." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). White alleges that his grievance made Breslin aware that his medical needs were being ignored. White's further allegations that Breslin denied the grievance, and failed to take steps to provide for White's treatment are sufficient to plead Breslin's personal involvement in the violation.

III. Section 1983 Official Capacity Claims

To the extent White has asserted claims seeking damages against defendants in their official capacities, they are barred by sovereign immunity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989). However, the complaint also seeks injunctive relief against the defendants. Injunctive relief may be obtained in a § 1983 action for deliberate indifference to a serious medical need, even absent an official's personal involvement, if the complaint alleges that the official had "responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need." *Koehl v. Dalsheim,* 85 F.3d 86, 89 (2d Cir.1996); *see also New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 135 (2d Cir.1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) ("the Eleventh Amendment does not bar federal courts from issuing an injunction against a state official who is acting contrary to federal law"). White alleges that defendants have denied him treatment for his progressive hearing loss. If he can prove his contentions, he may be entitled to injunctive relief.

IV. Qualified Immunity

**\*4** The defendants enjoy qualified immunity from White's suit if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Even where a prisoner's rights are clearly established, "qualified immunity is still available to an official if it was 'objectively reasonable for the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)
(Cite as: 2001 WL 64756 (E.D.N.Y.))

public official to believe that his acts did not violate those rights." ' *Hathaway,* 37 F.3d at 67 (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991)).

Defendants contend that their actions were objectively reasonable. (*See* Def. Mem. at 9). However, because the complaint adequately alleges a claim for deliberate indifference, defendants are not entitled to qualified immunity on their Fed.R.Civ.P. 12(b)(6) motion. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (the issue when considering qualified immunity in the context of Fed.R.Civ.P. 12(b)(6) "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). This allegation, if proved, could constitute a violation of White's Eighth Amendment rights, and more facts are necessary to resolve the qualified immunity question.

V. State Law Claims

As referred to above, the complaint, liberally construed, also alleges dental malpractice against Checkett and negligent supervision against Breslin and Mitchell in their individual capacities. Although theses claims are not cognizable in an action under § 1983, they do allege state law claims. Defendants do not address these claims in their motion to dismiss. Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over these pendent claims. *See Shimon v. Department of Corr. Serv. for the State of N.Y.,* No. 93 Civ. 3144(DC), 1996 WL 15688, at *3 (S.D.N.Y. Jan. 17, 1996) (Section 24 of New York Correction Law does not bar federal court from hearing pendent state law medical malpractice claim asserted against New York State Department of Correctional Services employee in employee's individual capacity). However, the Eleventh Amendment bars White's claims for damages or injunctive relief against the defendants in their official capacities. *See Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Fleet Bank, Nat'l Ass'n v. Burke,* 160 F.3d 883, 891 (2d Cir.1998).

CONCLUSION

Defendants' motion to dismiss is denied.

SO ORDERED.

E.D.N.Y.,2001.
White v. Mitchell
Not Reported in F.Supp.2d, 2001 WL 64756 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)
(Cite as: 2005 WL 2128851 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Guy MCEACHIN, Plaintiff,
v.
Donald SELSKY, Director of Shu, Docs; Jeff Minnerly,
Plant Worker, Auburn C.F.; Virginia Androsko, Facility
Nurse, Auburn C.F.; and J. Porten, C.O. Auburn C.F.,
Defendants.
**No. 9:04-CV-83(FJS/RFT).**

Aug. 30, 2005.

Guy McEachin, 00-A-5257, Attica Correctional Facility,
Attica, New York, Plaintiff pro se.

Office of the New York, State Attorney General, Syracuse,
New York, for Defendants, Maria Moran, AAG, of
counsel.

MEMORANDUM-DECISION AND ORDER

SCULLIN, Chief J.

I. INTRODUCTION

*1 Plaintiff Guy McEachin filed this action against
Defendants on January 23, 2004, pursuant to 42 U.S.C. §
1983, in which he asserted that Defendants (1) retaliated
against him in violation of the First Amendment to the
United States Constitution, (2) violated his rights under
the Fifth Amendment to the United States Constitution, (3)
subjected him to cruel and unusual punishment in
violation of the Eighth Amendment to the United States
Constitution, and (4) denied him procedural and
substantive due process in violation of his rights under the

Fourteenth Amendment to the United States Constitution.

Currently before the Court are Magistrate Judge Treece's
March 23, 2005 Report-Recommendation and Order, in
which he recommended that this Court grant Defendants'
motion to dismiss Plaintiff's complaint for failure to state
a claim, pursuant to Rule 12( b)( 6) of the Federal Rules
of Civil Procedure, in its entirety,FN1 and Plaintiff's
objections thereto.

> FN1. Specifically, Magistrate Judge Treece
> found (1) that the Eleventh Amendment barred
> Plaintiff's claims against Defendants in their
> official capacities; (2) that, whether or not
> Plaintiff had failed to exhaust his administrative
> remedies as to his First and Eighth Amendment
> claims, the Court could consider the merits of
> those claims; (3) that Plaintiff had failed to plead
> any facts to support his claim that Defendant
> Selsky was personally involved in the violation
> of his constitutional rights; (4) that inmates have
> no constitutional right to be free from being
> falsely accused; (5) that Plaintiff did not provide
> any evidence that his confinement to SHU and
> his loss of certain privileges constituted an
> atypical or significant hardship; (6) that the
> Supreme Court's decisions in *Heck v. Humphrey,*
> 512 U.S. 477 (1994), and *Edwards v. Balisok,*
> 520 U.S. 641 (1997), barred Plaintiff's § 1983
> due process and retaliation claims; (7) that
> Plaintiff failed to provide any evidence of a
> violation of any of his Fifth Amendment rights;
> and (8) that Plaintiff had not alleged any facts to
> support his assertion that Defendants subjected
> him to cruel and unusual punishment in violation
> of the Eighth Amendment.

II. BACKGROUND FN2

> FN2. Given the procedural posture of this case,
> the Court accepts, as true, the facts that Plaintiff
> alleged in his complaint.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)
(Cite as: 2005 WL 2128851 (N.D.N.Y.))

Plaintiff's claims arise from two separate incidents that occurred while he was incarcerated at the Auburn Correctional Facility. In the first incident, which occurred on January 5, 2001, Defendant Porten violated Plaintiff's First Amendment rights by filing a misbehavior report against him in retaliation for a grievance that he had submitted six days earlier against Defendant Porten's co-workers, who beat Plaintiff unnecessarily while he was incarcerated. *See* Complaint at ¶ 6. In the misbehavior report, Defendant Porten alleged that Plaintiff had violated prison rules by engaging in harassment, refusing a direct order, making threats, and causing property damage. *See* Report-Recommendation and Order at 2 (citing Dkt. No. 1, Compl. at ¶ 6(A), (B) & (F)).

On January 11, 2001, Defendant Minnerly conducted a hearing regarding the allegations contained in Defendant Porten's misbehavior report and found Plaintiff guilty of each violation cited therein. *See id.* Plaintiff asserts that Defendant Minnerly violated his Fifth, Eighth and Fourteenth Amendment rights by finding him guilty of these violations and by assigning him to a Special Housing Unit ("SHU") for 120 days, with a corresponding loss of privileges, as well as a recommendation that Plaintiff lose 180 days of good time credit.

The second incident, about which Plaintiff complains, occurred on May 8, 2001, when Defendant Androsko violated Plaintiff's Eighth and Fourteenth Amendment rights by issuing a misbehavior report against him, with no authority to do so, for violating prison rules against interference and harassment. Once again, at the conclusion of a disciplinary hearing, the hearing officer found Plaintiff guilty of the cited violations and sentenced him to an additional forty days in SHU and another loss of privileges and good time credit.

Finally, with respect to both incidents, Plaintiff alleges that Defendant Selsky violated his Eighth and Fourteenth Amendment rights by upholding the guilty determinations that the two hearing officers reached at the conclusion of the disciplinary hearings.

### III. DISCUSSION

### A. Standards of review

**\*2** The Court must review *de novo* those findings in a magistrate judge's report-recommendation to which a party has filed timely objections and for clear error those parts of the report-recommendation to which there are no objections. *See Gill v. Smith,* 283 F.Supp.2d 763, 766 (N.D.N.Y.2003) (citing 28 U.S.C. § 636(b)(1)(C)); Fed.R.Civ.P. 72; *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.1990).

In addressing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the plaintiff's well-pleaded allegations as true and must liberally construe those facts in the light most favorable to the plaintiff. *See Easton v. Sundram,* 947 F.2d 1011, 1014-15 (2d Cir.1991). Moreover, the court must construe a *pro se* complaint more leniently and determine the sufficiency of the claims according to a more flexible standard than those pleadings that lawyers submit. *See Platsky v. CIA,* 953 F.2d 26, 28 (2d Cir.1991) (citations omitted). Thus, dismissal for failure to state a claim is not proper " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)) (other citation omitted). Nonetheless, the court should not assume that "the [plaintiff] can prove facts that [he] has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983) (footnote omitted).

### B. Plaintiff's claims against Defendants in their official capacities

The Eleventh Amendment bars suits for damages against state officials sued in their official capacities. *See Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.1993) (citing *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). However, the Eleventh Amendment is not a bar to suits against state officials in their official capacities for prospective injunctive relief or suits for damages against state officials in their personal capacities.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)
(Cite as: 2005 WL 2128851 (N.D.N.Y.))

*See id.* (citations omitted).

Applying this standard, Magistrate Judge Treece recommended that the Court dismiss all of Plaintiff's causes of action against Defendants in their official capacities pursuant to the Eleventh Amendment. *See* Report-Recommendation and Order at 6. Moreover, although Magistrate Judge Treece acknowledged that Eleventh Amendment immunity is limited to claims that seek compensatory monetary relief against state officials, he concluded that, because Plaintiff did not seek any injunctive or declaratory relief, all of Plaintiff's claims against Defendants in their official capacities were subject to dismissal under the Eleventh Amendment.[FN3] *See id.*

> **FN3.** In his complaint Plaintiff asserts that he is suing "each defendant ... in their individual and official capacity in the amount of $500,000 in compensatory damages ... $500,000 in punitive damages ... and $500,000 for past pain, suffering and mental anguish ." *See* Complaint at ¶ 9.

Plaintiff did not file any specific objection to this recommendation. However, although Plaintiff concedes that he may not sue Defendants in their official capacities for monetary damages, he argues that a liberal reading of his complaint demonstrates that he intended to sue Defendants in both their individual and official capacities. *See* Petitioner's Objections, dated April 21, 2005, at 1. Thus, Plaintiff maintains that he may seek compensatory monetary damages from Defendants, all of whom are state employees, in their individual capacities under § 1983.

**\*3** It appears that Plaintiff's objection is based upon his misinterpretation of Magistrate Judge Treece's conclusion. In this regard, it is clear that Magistrate Judge Treece did not hold that the Eleventh Amendment barred Plaintiff's claims for monetary relief against Defendants in their individual capacities, nor did he indicate that Plaintiff had sued Defendants only in their official capacities.

The law is well-settled, as Plaintiff acknowledges, that the Eleventh Amendment bars § 1983 claims seeking monetary relief against state employees sued in their official capacities. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and dismisses all of Plaintiff's claims against Defendants in their official capacities.

C. Plaintiff's Fifth Amendment claims

The Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides that

> [n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation.

U.S. Const. amend. V.

After reviewing the rights that the Fifth Amendment protects, Magistrate Judge Treece reasoned that, with the exception of the Takings Clause, the Fifth Amendment does not provide a cause of action upon which grievances may be addressed; but rather, it provides a defendant in a criminal case with a "penumbra of rights (i.e., freedom from double jeopardy, self-incrimination, denial of liberty without due process of law)." *See* Report-Recommendation and Order at 26. Therefore, Magistrate Judge Treece recommended that this Court grant Defendants' motion to dismiss Plaintiff's Fifth Amendment claims.

Plaintiff does not object to this recommendation nor would any such objection have any legal merit. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and grants Defendants' motion to dismiss Plaintiff's claims that they violated his Fifth Amendment

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)
(Cite as: 2005 WL 2128851 (N.D.N.Y.))

rights.

D. Exhaustion of administrative remedies [FN4]

> FN4. Since the Court has dismissed Plaintiff's Fifth Amendment claims, it only needs to address the exhaustion issue with respect to Plaintiff's First and Eighth Amendment claims. The Court notes, however, that Magistrate Judge Treece recommended that the Court grant Defendants' motion to dismiss Plaintiff's Fifth Amendment claim on this ground as well.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a **prisoner** confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted). Furthermore, as this Court previously noted, the Supreme Court has held that the PLRA's exhaustion requirement applies even to suits where money damages are not available and the plaintiff seeks only money damages, provided that "the grievance tribunal has authority to take some responsive action." *Thomas v. Wright,* No. CIV. 9:99 CV 2071, 2002 WL 31309190, *5 (N.D.N.Y. Oct. 11, 2002)* (citing *Booth v. Churner,* 531 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001)).

**\*4** Under New York's regulations, in order for an inmate to exhaust his administrative remedies, he must complete the following three-step process before seeking relief pursuant to § 1983 in federal court, *see Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citations omitted): (1) submit a grievance to the Inmate Grievance Review Committee ("IGRC") for its determination, (2) submit an appeal from an adverse IGRC determination to the superintendent of the facility for review and determination, and (3) submit an appeal from an adverse

superintendent's determination to the Central Office Review Committee ("CORC") for a final administrative determination. *See* N.Y. Comp.Codes R. & Regs. tit. 7 § 701.7.

A plaintiff's failure to comply with the PLRA's exhaustion requirement is an affirmative defense that the defendant must raise, *see Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999), and upon which the defendant bears the burden of proof. *See Howard v. Goord,* No. 98-CV-7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)* (citations omitted). If the defendant asserts this defense, the plaintiff may defeat it either by showing a lack of evidence to prove the defense or by "delay[ing] the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

Moreover, in a case such as the present one, in which the complaint contains both exhausted and unexhausted claims, the court is not required to dismiss the action in its entirety, *see Ortiz v.. McBride,* 380 F.3d 649, 663 (2d Cir.2004), because requiring **prisoners** to return to court a second time with only their exhausted claims would not " 'reduce the quantity and improve the quality of **prisoner** suits,' *Porter,* 534 U.S. at 524, 122 S.Ct. 983, [nor would it] 'help bring relief to a civil justice system overburdened by frivolous **prisoner** lawsuits,' *see id.* 141 Cong. Rec. 26, 553 (1995) (Statement of Sen. Hatch)."

Applying the PLRA's exhaustion requirement to Plaintiff's allegations, Magistrate Judge Treece recommended that the Court grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claims for failure to exhaust his administrative remedies and deny the motion with respect to Plaintiff's First Amendment claim. *See* Report-Recommendation and Order at 12.

Plaintiff does not specifically object to this recommendation, and it is clear that, although he did exhaust his administrative remedies with respect to his First Amendment claim, he did not do so with respect to his Eighth Amendment claims. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and grants Defendants' motion to dismiss Plaintiff's Eighth

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)
(Cite as: 2005 WL 2128851 (N.D.N.Y.))

Amendment claims and deny Defendants' motion to dismiss Plaintiff's First Amendment claim on this ground.

D. The merits of Plaintiff's Eighth Amendment claims [FN5]

> FN5. Although the Court granted Defendants' motion to dismiss Plaintiff's Eighth Amendment claims for failure to exhaust his administrative remedies, it has also reviewed the merits of those claims. Having done so, the Court finds them without merit for the reasons stated herein and, thus, subject to dismissal on this alternative ground as well.

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishment,' U.S. Const. amend. VIII, and applies to states through the Due Process Clause of the Fourteenth Amendment." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir.2003) (citing Robinson v. California, 370 U.S. 660, 666-67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)). The Second Circuit has held that, in order to prove a violation of his Eighth Amendment rights, a **prisoner** must demonstrate "(1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.' " Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (citation omitted). Moreover, the Eighth Amendment only protects an inmate from the " 'unnecessary and wanton infliction of pain.' " Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quotation omitted). It " 'does not mandate comfortable prisons.' " Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir.2001) (quotation omitted).

**\*5** In addition, when an inmate challenges prison conditions, he must demonstrate that the defendant, about whose conduct he complains, has the requisite mental state, i.e., that he has shown "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834. This deliberate indifference standard has both an objective and subjective component. See Rivera v. Goord, 119 F.Supp.2d 327, 336-37 (S.D.N.Y.2000) (citation omitted).

Objectively, the alleged deprivation must be "sufficiently serious." Id. at 337 (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Subjectively, "[t]he plaintiff must allege that an official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " ' Id. (quotation omitted).

Relying upon these well-established legal principles, Magistrate Judge Treece recommended that the Court grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claims because he failed to allege any facts to support a claim that Defendants acted with deliberate indifference to his health or safety. See Report-Recommendation and Order at 28. In addition, Magistrate Judge Treece noted that a combined total time of 160 days in SHU and a loss of good time credits, in and of themselves, did not constitute cruel and unusual punishment. See id.

Plaintiff does not object to this recommendation and well-established legal principles support Magistrate Judge Treece's conclusions regarding this issue. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and grants Defendants' motion to dismiss Plaintiff's Eight Amendment claims on their merits.

E. Plaintiff's First Amendment retaliation claim against Defendant Porten

The Second Circuit has "held that a **prisoner** has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right," which includes the filing of grievances regarding prison conditions. Jones v. Coughlin, 45 F.3d 677, 679-80 (2d Cir.1995) (citing Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988)). In order to state a claim for retaliation, an inmate must establish (1) that he was engaged in a constitutionally protected activity, (2) that the defendant took adverse action against him, and (3) that the protected activity substantially motivated the alleged adverse action. See Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir.2002) (quoting Dawes v. Walker, 239 F.3d

Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)
(Cite as: 2005 WL 2128851 (N.D.N.Y.))

489, 492 (2d Cir.2001)).

With regard to the second prong of a retaliation claim, a plaintiff can demonstrate that the defendant took adverse action against him by showing (1) evidence of the temporal proximity between the protected activity and the retaliatory act, (2) a record of his good behavior, (3) his vindication at his disciplinary hearing, and (4) defendant's statements regarding his motive for the discipline. *See Colon v. Coughlin,* 58 F.3d 865, 872-73 (2d Cir.1995). Furthermore, " 'only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." ' *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) (quoting *Dawes,* 239 F.3d at 493) (other citations omitted).

**\*6** Applying these standards to Plaintiff's claim, Magistrate Judge Treece concluded that Plaintiff had alleged facts sufficient to give rise to a "colorable suspicion of **retaliation**," because of the temporal **proximity** between the filing of Plaintiff's **grievance** and Defendant Porten's filing of the misbehavior report. *See* Report-Recommendation and Order at 23. Nonetheless, he concluded that the Supreme Court's decisions in *Heck* and *Edwards* barred Plaintiff from asserting this claim under § 1983. *See id.* at 24.

In *Heck,* the Supreme Court held that

when a state **prisoner** seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck,* 512 U.S. at 487.

The Supreme Court subsequently extended its ruling in *Heck* to situations in which a state **prisoner** challenges the validity of a disciplinary proceeding that resulted in a loss

of good time credits. *See Edwards,* 520 U.S. at 648. However, the Second Circuit has identified an exception to this general rule, explaining that *Heck* and *Edwards* do not bar an inmate's § 1983 suit challenging a disciplinary hearing where that proceeding "does not affect the overall length of the **prisoner's** confinement...." *Jenkins v. Haubert,* 179 F.3d 19, 27 (2d Cir.1999).

Applying these well-established principles, Magistrate Judge Treece concluded that *Heck* and *Edwards* barred Plaintiff from asserting his claims under § 1983 because all of his claims, including his First Amendment retaliation claim, called into question the hearing officers' determinations that Plaintiff was guilty of violating prison rules. *See id.* at 25. He also found that *Heck* and *Edwards* applied to this case because Plaintiff was challenging the validity of two hearings that directly related to his overall period of confinement and that, therefore, if Plaintiff successfully litigated his due process and retaliation claims, it would require the invalidation of his disciplinary hearings. Therefore, because there was nothing in the record to indicate that the results of the disciplinary segregation hearings had been invalidated, he concluded that *Heck* and *Edwards* barred Plaintiff's claims arising from these hearings. Accordingly, Magistrate Judge Treece recommended that this Court dismiss these claims unless Plaintiff could demonstrate that the results of these disciplinary hearings had been invalidated. *See id.*

Plaintiff objects to Magistrate Judge Treece's recommendation, arguing that he is not challenging the fact or duration of his confinement but rather is challenging the conditions of his confinement, i.e., the disciplinary segregation and revocation of certain privileges. Plaintiff also objects, asserting that he is only challenging DOCS' procedure governing its directive and its hearing function and the conduct of its employees whom he has named as Defendants in this action. *See* Objections at 11. Finally, Plaintiff argues that *Heck* does not apply to this case because his claims do not call into question the validity of his conviction and, therefore, the Court should deny Defendants' motion and permit discovery on this issue. *See id.* at 10-11.

**\*7** Despite his argument to the contrary, a review of Plaintiff's complaint clearly demonstrates that his due

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)
(Cite as: 2005 WL 2128851 (N.D.N.Y.))

process and First Amendment retaliation claims-unlike his Eighth Amendment claims-question the validity of the disciplinary hearings that resulted in his confinement in SHU and his loss of certain privileges. Moreover, because Plaintiff has offered no proof that the results of these hearings were overturned or invalidated, *Heck* and *Edwards* bar these claims. Accordingly, the Court adopts Magistrate Judge Treece's recommendation and grants Defendants' motion to dismiss Plaintiff's due process and retaliation claims against all Defendants.[FN6]

> FN6. The dismissal of Plaintiff's due process and retaliation claims pursuant to *Heck* and *Edwards* makes it unnecessary for this Court to determine whether Defendants violated Plaintiff's procedural and substantive due process rights because those claims call into question the validity of his disciplinary hearings and, therefore, are subject to dismissal on that ground alone. Additionally, the Court need not address the issue of whether Defendant Selsky was personally involved in any of the alleged constitutional violations with respect to Plaintiff's Fourteenth and Eighth Amendment claims because the Court has dismissed these claims on other grounds.

### IV. CONCLUSION

After carefully considering Magistrate Judge Treece's Report-Recommendation and Order, Plaintiff's objections, the relevant parts of the record, and the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that Magistrate Judge Treece's Report-Recommendation and Order, dated March 23, 2005, is ADOPTED IN ITS ENTIRETY; and the Court further

ORDERS that Defendants' motion to dismiss Plaintiff's complaint is GRANTED IN ITS ENTIRETY; and the Court further

ORDERS that the Clerk of the Court enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

N.D.N.Y.,2005.
McEachin v. Selsky
Not Reported in F.Supp.2d, 2005 WL 2128851 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jason HOFELICH, Plaintiff,
v.
Superintendent Robert ERCOLE, Deputy
Superintendent R. Cunningham, SGT. Strasser, SGT.
Lonczak, SGT. Centanni, C.O. Gadaway, C.O. Flora,
Grievance Civilian Supervisor Mike Henn, C.O. B.
Wilson, Defendants.
**No. 06 Civ. 13697(PKC).**

Jan. 11, 2010.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

**\*1** Plaintiff Jason Hofelich brings this civil rights action pursuant to 42 U.S.C. § 1983, claiming that defendants violated his constitutional rights. Defendants moved for summary judgment on all claims. For the reasons stated below, defendants' motion is granted in part and denied in part.

BACKGROUND

I. *Factual History*

In considering the defendants' motion, I accept non-movant Hofelich's version of the facts, as set forth in his verified amended complaint, dated March 15, 2007, (the "Amended Complaint" or "Am. Compl."), the document titled "Amended Petition," attached to and incorporated therein (the "Amended Petition" or "Am. Pet."), and any facts proffered by defendants which

Hofelich does not dispute, including Hofelich's deposition testimony. The Court draws all reasonable inferences in favor of plaintiff, as the non-movant.

According to the Amended Complaint, plaintiff is an inmate in the New York State Department of Correctional Services ("DOCS"), and during the relevant time period, was incarcerated at Green Haven Correctional Facility ("Green Haven"). (Am.Compl.§ I(A).) Defendant Robert Ercole was the Superintendent of Green Haven. (*Id.* § I(B).) Defendant Robert Cunningham was the Deputy Superintendant of Green Haven. (*Id.*) Sergeants Strasser, Lonczak and Centanni, and Corrections Officers Gadaway, Flora and Wilson were corrections personnel employed at Green Haven.[FN1] (*Id.*) Defendant Patrick Henn (sued here as Mike Henn) worked at Green Haven in an inmate grievance capacity. (*Id.*)

FN1. On June 8, 2007, "Mary Springett IRC" purported to accept service of a summons and the Amended Complaint on behalf of several defendants, including Corrections Officer Wilson. (Docket No. 18.) Although the docket states that Wilson is represented by the Attorney General of the State of New York, the Attorney General indicates that Wilson has not been served and has not requested representation by its office. (Docket Nos. 23, 40.) Wilson has not answered the Amended Complaint or otherwise appeared in this action, and he did not join in the other defendants' motion for summary judgment. The Attorney General's office is directed to clarify Corrections Officer Wilson's status by February 1, 2010.

Plaintiff does not provide dates for most of his factual allegations, and the allegations do not easily lend themselves to a narrative. Therefore, I have organized plaintiff's allegations by defendant.

a. *Superintendent Ercole*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

Plaintiff alleges that Superintendent Ercole was aware that Deputy Superintendent Cunningham assaulted inmates, was aware that Cunningham acknowledged denying all of plaintiff's grievances and that, in front of other inmates, defendant Cunningham said that plaintiff and his mother were responsible for another inmate receiving a lengthy sentence because of an infraction. (Am. Pet. at 1.) Despite Ercole's awareness, he did nothing to "quash" these acts. (*Id.*) Plaintiff also alleges that defendant Ercole conspired to cover up these actions in "conjunctive cooperation" with defendant Henn, and that Ercole and Henn also conspired to "send a fictitious investigation result to CORC in Albany." (*Id.* at 1-2.) Plaintiff also alleges that defendant Ercole covered up a medical director's "refusal for medical treatment." (*Id.* at 3.)

According to plaintiff, on March 13, 2007, Ercole came to plaintiff's housing block and inquired "if he has reason to send [plaintiff] to the Special Housing Unit." (*Id.* at 2-3.) Finally, plaintiff also alleges that, at some point, Ercole threatened plaintiff with "a new sentence on a set-up," if he "continued to write and report complaints." (*Id.* at 5.)

b. *Deputy Superintendent Cunningham*

**\*2** As stated above, plaintiff alleges that defendant Cunningham "joins in on assaults on the inmate population." (*Id.* at 1.) Plaintiff also testified at his deposition that Cunningham "likes to get a kick in here or there when they do their little thing they do." (Partial Transcript of the Deposition of Jason Hofelich, taken on December 22, 2006, ("Tr.") at 153:3-4, attached as Exhibit D to the Declaration of Assistant Attorney General Julinda Dawkins, dated May 15, 2009 (the "Dawkins Decl.").)

At his deposition, plaintiff testified that he was suing Deputy Superintendent Cunningham because plaintiff had written to him many times, and "he did nothing." (Tr. at 147:15-19.) Plaintiff also testified that defendant Cunningham "failed to protect" him and "did not do his duties." (Tr. at 157:4-6.)

Plaintiff also alleges that Cunningham interfered with

Green Haven's inmate grievance review process known as the Inmate Grievance Program ("IGP") because defendant admitted that he "den[ied] all [plaintiff's] grievances that come before him to sign ." (Am. Pet. at 1.) Finally, as mentioned above, plaintiff also alleges that, in front of several inmates, defendant Cunningham "paint[ed] the picture" that plaintiff and plaintiff's mother were responsible for another inmate receiving a lengthy sentence for an infraction. (*Id.*)

c. *Sergeant Strasser*

Plaintiff claims that Sergeant Strasser once "yelled down a hallway 'I didn't know you were SGT. Matlots [sic] snitch.' " (*Id.* at 4.) In addition, plaintiff alleges that Sergeant Strasser covered up the racist and abusive comments of Corrections Officer Wilson. (*Id.*)

Most of plaintiff's allegations against Sergeant Strasser relate to two instances when he failed to provide plaintiff with proper medical care. In the Amended Petition, plaintiff alleges that Sergeant Strasser, "on two occasions prevented [plaintiff] from medical attention for serious situations." (*Id.*) The first such occasion began on or about April 7, 2006, and continued through April 12, 2006. According to plaintiff, Sergeant Strasser was on duty in the SHU from April 7 through April 10, 2006. (Tr. 120:19-121:15).[FN2] In his deposition, plaintiff stated that he repeatedly asked Officers Lamberton and Matthews for help and that they went to get Sergeant Strasser, but that he never came. (*Id.* at 120:19-121:3.) He never states that these officers told Sergeant Strasser about his condition. (*Id.*) In his deposition, plaintiff goes on to state that three or four days later Sergeant Strasser came to plaintiff and stated: "I called medical. They said plug your nose." (*Id.* at 121:9-10.) Plaintiff also testified that over the course of several days, his linens repeatedly became covered with blood, so that they had to be changed. (Tr. 121:4-7.)

FN2. This incident was also the subject of a separate action that plaintiff filed against several defendants, including Sergeant Strasser, also pending before me. *Hofelich v. Ercole,* No. 08 Civ. 2193(PKC)(DFE) (the "2008 Action"). I have dismissed without prejudice the claim

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

against Sergeant Strasser in that litigation because it is duplicative of a claim against him in this earlier-filed litigation.

Plaintiff filed a grievance about this incident, which contains a similar account, but with a key difference. In the grievance, plaintiff stated that on April 8, 2006, he requested help from a corrections officer. (Grievance Number 59186-06, attached in Exh. B to the Loren Decl. at 357.) But, unlike his deposition testimony, in the grievance plaintiff stated Sergeant Strasser approached him later that day and relayed a message from a nurse, which was for plaintiff to pinch his nose for 15 minutes. (*Id.*) The complaint filed in the 2008 Action contains a similar account.[FN3] In that complaint, plaintiff stated that he began bleeding on April 7, 2006, and requested help from Corrections Officer Lamberton, who, plaintiff alleges, "came back to notify me he to [sic] the SHU SGT." (Complaint, *Hofelich v. Ercole,* No. 08 Civ. 2193(PKC) (DFE) (S.D.N.Y. Mar. 5, 2008).) Plaintiff alleges that no sergeant ever came" on April 7. (*Id.*) On April 8, 2006, plaintiff alleges that he notified a physician assistant of his bleeding, and later notified Corrections Officer Lamberton, who said he would "tell the SGT. *again."* (*Id.*) (emphasis in original). An hour later, Sergeant Strasser spoke to the plaintiff, left, and then returned thirty minutes later with instructions from a nurse that plaintiff should plug his nose. (*Id.*) The SHU log book submitted by defendants (in the 2008 Action) shows that at 10:35 a.m. on April 8, 2006, "Hofelich ... has a bloody nose, medical notified (Nurse Miller)." (Exhibit A to the Undated Declaration of Raymond Koskowski, submitted in support of the defendants' motion for summary judgment in the 2008 Action at 113.) The log book indicates that plaintiff was provided with medication later in the day on April 8, as well as on April 9 and 10, 2006. (*Id.* at 115, 119, 124.) However, according to the log, the next time plaintiff complained of a nose bleed was not until April 11, 2006. (*Id.* at 127.)

FN3. I have deemed the documents filed in support of the motion for summary judgment in the 2008 Action to be part of the record in this case. Plaintiff did not oppose that motion despite being given notice and several opportunities to do so.

*3 Given these facts, and drawing all reasonable inferences in favor of plaintiff, it appears that, at most, Sergeant Strasser was aware that plaintiff had a nose bleed on April 7, 2006, and ignored it until the next day, April 8, 2006, when he contacted medical personnel and relayed their message to plaintiff.[FN4]

FN4. Although plaintiff claimed in his deposition that he told Sergeant Strasser he had been bleeding for three or four days before Sergeant Strasser relayed the nurse's medical advice, this claim is contradicted by plaintiff's prior statement in his grievance, and his subsequent statement in the 2008 Action's complaint, both of which state that Sergeant Strasser spoke to plaintiff on April 8, 2006. The log book submitted by defendants in the 2008 Action (to which plaintiff had an opportunity to respond and did not) is consistent with this chronology. Therefore, it would not be reasonable to infer that Sergeant Strasser's interaction with plaintiff occurred "three or four days" after April 7, 2006.

Although plaintiff did not mention the second incident in his deposition, defendants submitted a copy of a grievance describing it. In that grievance, dated November 9, 2006, plaintiff complained that Sergeant Strasser told a nurse that plaintiff could not be removed from the SHU, and also told the nurse to threaten plaintiff with a misbehavior report if he reported his "severe body aches" again. (Grievance Number 60984-06, attached in Exh. B to the Loren Decl. at 202.)

d. *Sergeant Lonczak*

Plaintiff alleges that defendant Lonczak, along with defendant Henn "selectively destroy [plaintiff's] grievances and trash them." (Am. Pet. at 7; Tr. 189:18-22.) During plaintiff's deposition, he accused defendant Lonczak of repeatedly calling him a "nigger." (Tr. 186:21-187:10.)

e. *Sergeant Centanni*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

The Amended Complaint and Amended Petition do not contain any factual allegations about defendant Centanni, but during his deposition, plaintiff testified that Centanni engaged in "harassment and racial degradation." (Tr. 134:15-25.)

### f. Corrections Officer Gadaway

In the Amended Petition, plaintiff alleged that Corrections Officer Gadaway sent a message to plaintiff through Corrections Officer Dumont, a non-party, that Gadaway "knew [plaintiff] was back in population out of SHU and he'd be seeing [plaintiff] soon." (Am. Pet. at 7.) In his deposition, plaintiff testified that at some point in August 2006, while guarding plaintiff in a hospital, Corrections Officer Gadaway pointed his gun (while in the holster) at plaintiff and mouthed the word "pow" several times. (Tr. 204:5-206:3.)

### g. Corrections Officer Flora

According to plaintiff, on or about March 7, 2007, defendant Flora "repeatedly pulled on [plaintiff's] hooded sweatshirt[,] choking [him] and trying to pull [him] off the walls so he could have reason to assault [plaintiff.]" (Am. Pet. at 5-6; Grievance Number 62049-07, attached in Exh. B to the Loren Decl. at 127-28.) In addition, defendant Flora "slammed his hand in a karate chop fashion into [plaintiff's] testicles." (Am. Pet. at 6.) Defendant Flora then grabbed plaintiff's testicles and "squeezed extremely aggressively." (*Id.*)

On March 16, 2007, plaintiff filed Grievance No. 62049-07 regarding this incident. (Loren Decl. Exh. B at 127-28.) Superintendant Ercole denied the grievance on March 28, 2007, (*id* . at 126) and the Central Office Review Committee ("CORC") upheld that determination on April 25, 2007 (*id.* at 132).

Plaintiff alleges in the Amended Petition that Corrections Officer Flora verbally harassed him by saying "that the administration laughs at [plaintiff's] factual complaints and that '[Flora] will be believed as a white officer and

[plaintiff] will be decided fictitious because [he is] a black inmate.' " (Am. Pet. at 6-7.) In his deposition, plaintiff added that Flora told plaintiff's mother that plaintiff "better stop writing grievances against him and his partner ... Officer Gadaway." (Tr. 117:16-24.)

### h. *Patrick Henn*

**\*4** Plaintiff alleges that defendant Henn interfered with the IGP by refusing to give login numbers to several of plaintiff's grievances, destroying other grievances and conspiring with defendant Ercole to "send a fictitious investigation result to CORC in Albany." (Am Pet. at 1-2, 7.) Plaintiff also alleges that defendant Henn warned him about "bullshit grievances" against corrections officers and told plaintiff that he would receive "trauma that is irreversible" if he continues to file grievances against certain staff members." (*Id.* at 2, 5.)

### II. *Procedural History*

Plaintiff filed his first complaint on or about December 4, 2006. (Docket No. 1.) He filed the Amended Complaint on or about March 21, 2007. (Am.Compl.) On January 1, 2008, Magistrate Judge Douglas Eaton denied plaintiff's request for appointed counsel. (Docket No. 25.) On May 15, 2009, the defendants filed their motion for summary judgment. (Docket No. 40.) Accompanying their motion papers was the appropriate notice to a *pro se* litigant as required by [Local Civil Rule 56.2.](Docket No. 39.) On September 18, 2009, having not received any opposition papers, I issued an order informing plaintiff that if he did not submit opposition papers by October 13, 2009, I would adjudicate his motion as unopposed. (Docket No. 43.)

On October 1, 2009, I received a letter from plaintiff. The letter did not bear a caption or docket number, nor did it specifically refer to this action or any of plaintiff's other lawsuits. The substance of the letter was that plaintiff could not oppose the defendants' motion without the assistance of an attorney. I treated this as a request for appointed counsel-plaintiff's second-and denied it without prejudice to renewal at a later date, if circumstances

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

warranted. (Docket No. 44.) I also extended the date for plaintiff to submit an opposition to November 9, 2009. (*Id.*)

On November 12, 2009, plaintiff filed a document titled "Opposition for Summary Judgment." (Docket No. 45.) Plaintiff did not respond to any of the defendants' arguments in his "opposition." (*Id.*)

DISCUSSION

I. *Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* If the movant meets this burden, by asserting facts demonstrating that the non-movant's claim cannot be sustained, the non-movant must "set out specific facts showing a genuine issue for trial," and cannot rest on mere allegations or denials of the facts asserted by the movant. Rule 56(e)(2), Fed.R.Civ.P. This requires only "a limited burden of production," but, nevertheless, the non-movant "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.' " Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.2004) (citing Aslanidis v. United States Lines, Inc., 7 F.3d 1067,

1072 (2d Cir.1993)). Conclusory assertions contained in an affidavit or verified pleading, are not sufficient to create a genuine issue of fact. Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir.2004).

**\*5** The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir.1995) (internal quotation marks and citations omitted). The Court must read a *pro se* party's submissions liberally, especially when a defendant moves for summary judgment on a *pro se* plaintiff's claims. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir.1988) ("special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment").

II. *Excessive Force*

A. *Plaintiff's Claim for Excessive Force Against Officer Flora Was Not Administratively Exhausted*

Plaintiff alleges that he was assaulted by Officer Flora, which I construe as a claim of excessive force. The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, was enacted in an effort to address the large number of prisoner complaints filed in federal court. See Porter v. Nussle, 534 U.S. 516, 524-25 (2002). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is intended to "promote[ ] efficiency," Woodford v. Ngo, 548 U.S. 81, 89 (2006), and to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 525.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Court discretion plays no part in the statutory exhaustion

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

requirement. *Woodford,* 548 U.S. at 85. The Supreme Court also has observed that "the benefits of exhaustion ... include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record," *Jones,* 549 U.S. at 219.

The PLRA requires a plaintiff to exhaust the administrative grievance process before filing his complaint and failure to do so requires dismissal of the unexhausted claim. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) *overruled in part on other grounds by Porter,* 534 U.S. 516. In determining whether an inmate has exhausted his claims, a court examines the procedural requirements set by the relevant prison system, since the PLRA itself does not set forth criteria of a complaint and grievance process. *Jones,* 549 U.S. at 218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

**\*6** DOCS has a well-established, three-step procedure for inmate grievances, the IGP. N.Y. Correct. Law § 139 (2003). First, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged occurrence. 7 N.Y.Code R. & Reg. ("NYCRR") § 701.5(a)(1) (2007). After receiving a written response from the IGRC, an inmate can appeal to the superintendent of his facility within seven days. *Id.* § 701.5(c)(1). Finally, the inmate may appeal the written decision of the superintendent to CORC within seven days of receiving the superintendent's decision. *Id.* § 701.5(d)(1)(i). A prisoner must go through all three levels of the grievance process before the administrative remedies are exhausted. *See Brownell v. Krom,* 446 F.3d 305, 312 (2d Cir.2006).

On March 16, 2007, plaintiff filed Grievance Number 62049-07 against Corrections Officer Flora. (Loren Decl. Exh. B at 127-28.) This grievance dealt with the incident in which Flora allegedly choked plaintiff with his hooded sweatshirt. (*Id.*) As of that date, plaintiff had already filed his original complaint, (Docket No. 1), and plaintiff filed the Amended Complaint shortly thereafter, on March 21, 2007 (Dawkins Decl. Exh. A). Although it is unclear from

the record whether this grievance was filed with the IGRC, it is clear that the grievance was presented to Superintendent Ercole, who denied it on March 28, 2007. (Loren Decl. Exh, B at 126.) Plaintiff appealed that decision to CORC, which upheld Ercole's decision on April 25, 2007. (*Id.* at 132.) Thus, plaintiff, at a minimum, availed himself of the second and third steps of the IGP. However, the IGP was not finished until April 25, 2007, over one month after plaintiff filed the Amended Complaint. Because plaintiff failed to exhaust his administrative remedies regarding the alleged assault before he commenced this action, defendant Flora is entitled to summary judgment on this claim. *Neal,* 267 F.3d at 117-18 ("Subsequent exhaustion after suit is filed ... is insufficient."). Finally, because plaintiff has not countered this exhaustion argument, I need not engage in the three-part inquiry set forth in *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004).

B. *Plaintiff Failed to Allege That He Was Assaulted by Deputy Superintendent Cunningham*

Plaintiff alleges that defendant Cunningham "joins in on assaults on the inmate population," and that he "likes to get a kick in here or there when they do their little thing they do." (Am. Pet. at 1; Tr. 153:3-4.) Plaintiff has not alleged that defendant Cunningham ever physically assaulted him. Thus, these claims fail because plaintiff does not have standing to assert the claims of another individual. *Warth v. Seldin,* 422 U.S. 490, 499 (1975).

In addition, during his deposition, plaintiff was asked if he sustained any injuries because of defendant Cunningham. (Tr. 163:7-9.) He responded: "Emotional. Emotion distress, because here before me was a guy that had-his status in the facility as a deputy superintendent.... I'm not the confrontational type, but when you're laughed in your face about something that is real and it's happening to you, and it's repeated ... it hurts, man." (Tr. 163:10-164:2.) The PLRA bars claims for emotional injury absent a showing of prior physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). Defendant Cunningham is entitled to summary judgment in his favor on plaintiff's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

excessive force claims.

III. *Interference with the Inmate Grievance Program*

**\*7** "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)) (ellipsis in original). There is no constitutional right to an inmate grievance review process. *See, e.g., Gilbert v. Goord,* No. 9:03-cv-423 (GLS/GJD), 2007 WL 3232273, at *6 (N.D.N.Y. Oct. 31, 2007) ("Because the [inmate] grievance procedures are not constitutionally required, a state's violation of those procedures or its failure to enforce them does not give rise to a claim under section 1983."); *Cancel v. Goord,* No. 00. CIV 2042 LMM, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983") (citations omitted). And, as discussed more fully in Discussion Section H.A., *supra,* New York's IGP was created by state law, not federal law.[FN5] Therefore, a violation of the IGP cannot give rise to a section 1983 claim, and defendants Ercole, Cunningham, Lonczak and Henn are entitled to summary judgment in their favor on these claims.

> FN5. The PLRA does not require states to adopt an inmate grievance procedure and only requires prisoners to exhaust such "administrative remedies *as are available.*" 42 U.S.C. § 1997e(a) (emphasis added). Thus, the PLRA does not establish a federal right to an inmate grievance procedure.

IV. *Eight Amendment's Prohibition Against Cruel and Unusual Punishment*

The Eighth Amendment prohibits cruel and unusual punishments. *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003). "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment," *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quotation marks omitted).

A. *Deliberate Indifference to a Serious Medical Need*

Under the Eighth Amendment's proscription against cruel and unusual punishment, states may not deprive prisoners of their basic human needs, including medical care and reasonable safety. *See* *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002). "While society does not expect that prisoners will have unqualified access to health care, an inmate can nevertheless prevail on an Eighth Amendment claim arising out of medical care by showing that a prison official acted with deliberate indifference to the inmate's serious medical needs." *Hernandez,* 341 F.3d at 144 (citations and internal quotation marks omitted).

The standard of deliberate indifference includes both objective and subjective components. First, the alleged deprivation must be sufficiently serious in objective terms. A medical need is "sufficiently serious" so as to satisfy the objective prong of the deliberate indifference standard when it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996). Factors relevant to the "sufficiently serious" inquiry include: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (citation and internal quotation marks omitted) (alteration in original). "Ultimately," the Second Circuit has explained, "to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his [or her] confinement violate[d] contemporary standards of decency." *Phelps,* 308 F.3d at 185,

**\*8** In addition to alleging a serious medical need, plaintiff must also allege that defendants disregarded that need with a sufficiently culpable state of mind; this is the subjective

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

prong. *Chance,* 143 F.3d at 702. "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citation and internal quotation marks omitted).

A delay in providing medical treatment can amount to deliberate indifference, actionable under section 1983. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). Even were I to assume that plaintiff's medical condition was sufficiently serious, in satisfaction of the objective element of his deliberate indifference claim, he has failed to demonstrate the Sergeant Strasser had a sufficiently culpable state of mind.

As discussed above, at most, defendant Strasser was aware that plaintiff had a nose bleed on April 7, 2006 and ignored plaintiff's request for help until the following day when plaintiff again requested help. At that point, Sergeant Strasser consulted with a nurse and reported the nurse's instructions back to plaintiff. These facts do not demonstrate that Sergeant Strasser had a sufficiently culpable state of mind, and therefore, plaintiff's deliberate indifference claim fails.

The only facts regarding Sergeant Strasser's second alleged instance of deliberate indifference are contained in Grievance Number 60984-06, which plaintiff filed on or about November 9, 2006. (Loren Decl. Exh. B at 201-02.) In that grievance, plaintiff alleged that Sergeant Strasser told a nurse that plaintiff could not be removed from the SHU, and also told the nurse to threaten plaintiff with a misbehavior report if he reported his "severe body aches again." (*Id.* at 202.) Deliberate indifference may be manifested "by prison guards in intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. at 105-06. Plaintiff's allegations, however, fall short, because he does not allege that he was actually denied or delayed in receiving any medical care as a result of Sergeant Strasser's actions or provide any facts from which a reasonable jury could infer such a denial or delay. Indeed, in an inter-departmental communication regarding plaintiff's grievance, a nurse stated that she examined plaintiff on November 8, 2006, and determined that he

was not gravely ill. (Loren Decl. Exh. B at 204.) She then offered plaintiff medication, which he refused. (*Id.*) The nurse also stated that she ended the conversation with plaintiff because he became belligerent. (*Id.*) Therefore, defendant Strasser is entitled to summary judgment on plaintiff's deliberate indifference claims.

B. *Verbal Abuse and Threats*

Plaintiff has alleged that every defendant has either threatened him, or subjected him to verbal abuse. Section 1983 "was not designed to rectify harassment or verbal abuse." *Smith v. Christopher,* No. 9:06-CV-1196 (LEK/DEP), 2008 WL 4283519, at *12 (N.D.N.Y. Sept. 16, 2008). Thus, a prisoner's allegations that he experienced threats or verbal harassment, absent some "appreciable injury," is not independently cognizable under section 1983. *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam).

**\*9** Other than emotional injuries, which as stated above, are barred by the PLRA, plaintiff has not alleged either in his Amended Complaint or in his deposition, that he was injured by the verbal harassment or threats. Therefore, all defendants are entitled to summary judgment on plaintiff's Eighth Amendment cruel and unusual punishment claims to the extent they arise from alleged verbal abuse or threats to plaintiff.

V. *First Amendment Retaliation*

Although plaintiff's allegations of verbal abuse and threats do not state a claim for cruel and unusual punishment, verbal threats can amount to an adverse action that may be redressable under the First Amendment. *See Smith,* 2008 WL 4283519, at *13 (collecting cases). To state a First Amendment retaliation claim, plaintiff must show, "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

Whether something is an adverse action is an objective inquiry. *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Id.* " 'Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.' " *Dawes,* 239 F.3d at 493 (quoting *Thaddeus-X v. Blatter,* 175 F.3d 378, 398 (6th Cir.1999) (en banc) (per curiam)).

"Case law reflects that verbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered." *Lunney v. Brureton,* No. 04 Civ. 2438(LAK)(GWG), 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007)) (Report and Recommendation); *see also Smith,* 2008 WL 4283519, at *13.

For example, in *Bartley v. Collins,* No. 95 Civ. 10161(RJH), 2006 WL 1289256 (S.D.N.Y. May 10, 2006), the court granted summary judgment for defendants, holding that "verbal threats such as 'we going to get you, you better drop the suit,' " that were not attributed to any particular defendant, did not rise to the level of an adverse action. *Id.* at *6. In *Garcia v. Watts,* No. 08 Civ. 7778, 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009), the court adopted a report and recommendation which concluded that one alleged threat by corrections officers to retaliate against the plaintiff by writing incident reports and placing him into the special housing unit if he continued to exercise his First Amendment rights was not an adverse action. *Id.* at *11; *see also Kemp v. LeClaire,* No. 03-CV-8445, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 15, 2007) (threats such as "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" were insufficient to sustain a First Amendment claim).

**\*10** In contrast, the court in *Hepworth v. Suffolk County,* No. 2:02-CV-6473 ENV/ETB, 2006 WL 2844408 (E.D.N.Y. Sept. 29, 2006), adopted a Magistrate Judge's

report and recommendation which concluded that summary judgment on plaintiff's retaliation claim was inappropriate because plaintiff alleged that defendant and other corrections officers threatened to beat and kill him if he filed a grievance or if the defendant was disciplined. *Id.* at *9; *see also Thaddeus-X,* 175 F.3d at 398 ("Harassment, physical threats, and transfer to the area of prison used to house mentally disturbed inmates," constitutes adverse action).

Plaintiff has alleged four instances in which he was threatened by one of the defendants. First, plaintiff alleged that Superintendent Ercole threatened him with "a new sentence on a set-up," if plaintiff continued "to write and report complaints." (Am. Pet. at 5.) Second, plaintiff alleged that Officer Gadaway, communicated through another corrections officer, that he "knew [plaintiff] was back in population out of SHU and he'd be seeing [plaintiff] soon." (*Id.* at 7.) Third, while Officer Gadaway was guarding plaintiff in a hospital, he pointed his holstered gun at plaintiff and mouthed the word "pow" several times. (Tr. 204:5-20.) Fourth, defendant Henn told plaintiff that he would "receive trauma that is irreversible" if he continued to file grievances against certain corrections personnel. (Am. Pet. at 2.)

Plaintiff cannot state a First Amendment claim based on his allegation that Officer Gadaway communicated through another officer that he knew plaintiff was out of the SHU and he would see plaintiff soon. The general nature of the threat, along with the fact that it was made second-hand, means it would not deter a similarly situated prisoner of ordinary firmness from exercising his First Amendment rights.

The other alleged incidents, however, are different. A threat from the superintendent of the correctional facility in which a prisoner is incarcerated that the prisoner would be set up and receive a new sentence, if true, could deter a prisoner of ordinary firmness from exercising his right to file grievances. Likewise, a threat that plaintiff would receive irreversible trauma if he continued to file grievances about specific corrections personnel, is sufficient to deter an ordinary inmate from filing grievances. As is Officer Gadaway's act of pointing his firearm at plaintiff and mouthing the word "pow."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

These three threats satisfy the second element for a First Amendment retaliation claim. Plaintiff has satisfied the first element of this claim because filing grievances is constitutionally protected petitioning activity. *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir.2002) (stating that filing a grievance is "the exercise of a constitutionally protected right"). Therefore, if the threats are connected to plaintiff's protected activity, *i.e.* filing grievances, then plaintiff has satisfied his initial burden of stating a First Amendment retaliation claim.

**\*11** A plaintiff can establish this causal nexus through direct proof or circumstantial proof, such as a temporal proximity between the protected activity and the alleged retaliatory act or evidence of plaintiff's prior good behavior. *Colon v. Coughlin*, 58 F.3d 865, 972-73 (2d Cir.1995). Plaintiff has not provided any evidence of his prison disciplinary record. Nor has he shown any facts that show a close temporal proximity between Officer Gadaway's alleged threat and an instance in which plaintiff engaged in a protected activity. In fact, plaintiff does not allege in the Amended Complaint or assert in his deposition that Officer Gadaway's threat was done in retaliation for anything. Therefore, Officer Gadaway is entitled to summary judgment on plaintiff's First Amendment retaliation claim arising out of his alleged threat to plaintiff. Accepting, as I must, plaintiff's allegations as true, he has provided direct evidence of a causal connection between his protected activity and the alleged threats from Ercole and Henn. The threats themselves could be construed as attempts to stop plaintiff from exercising his First Amendment right to petition the government and that Ercole and Henn made these threats because plaintiff had exercised this right in the past. Defendants Ercole and Henn are not entitled to summary judgment on this claim.

VI. *Conspiracy*

Read liberally, certain of plaintiff's allegations may construed to assert a claim that defendant's Ercole, Strasser and Henn engaged in a conspiracy to deprive plaintiff of his constitutional rights by covering up certain actions taken by other defendants. (Am. Pet. at 1, 3-4.)

Plaintiff alleges that Ercole and Henn acted in "conjunctive cooperation" to cover up that: (1) defendant Cunningham painting a picture that plaintiff cause another inmate to receive a long sentence for an infraction, (2) defendant Cunningham denied all of plaintiff's grievances, and (3) defendant Cunningham assaulted other inmates. (*Id.* at 1.) In addition, plaintiff alleges that Strasser covered up Corrections Officer Wilson's racists comments. (*Id.* at 4.) Finally, plaintiff also alleges that Ercole covered up a medical director's refusal to treat him. (*Id.* at 3.)

To survive summary judgment on a § 1983 conspiracy claim, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). Plaintiff's allegations fail because they are conclusory and because the underlying incidents were not violations of his federal statutory or constitutional rights. *Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir.2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993)) (internal quotation marks omitted) *overruled on other grounds by* Swierkiewicz, 534 U.S. 506. In addition, the claims that Ercole covered up a medial director's refusal to treat plaintiff and that Strasser covered up Corrections Officer Wilson's racists comments also fail because plaintiff has not alleged an agreement between a defendant and another person to engage in these cover ups, nor has he shown facts from which a reasonable jury could infer such an agreement. Defendants Ercole, Strasser and Henn are entitled to summary judgment on plaintiff's conspiracy claims.

VII. *Qualified Immunity and Eleventh Amendment Immunity*

**\*12** Eleventh Amendment immunity extends to damage actions against state employees acting in their official capacities, because the state is the real party of interest.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 184453 (S.D.N.Y.)
(Cite as: 2010 WL 184453 (S.D.N.Y.))

*See* Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101-03 (1984). Employees of DOCS and its facilities, when sued in their official capacities, have been held to be subject to the State's Eleventh Amendment immunity. *See* Davis v. New York, 316 F.3d 93, 101 (2d Cir.2002) (Commissioner of DOCS and officials of Attica). Thus, to the extent that the plaintiff seeks damages under section 1983 against defendants in their official capacities, those portions of the claims are dismissed from this action.

Defendants Ercole and Henn are only entitled to qualified immunity on the remaining claims if (1) their conduct did not violate clearly established statutory or constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir.2001). The right to be free from retaliation for exercising one's First Amendment right to petition the government was clearly established in 2006. *See, e.g.,* Dawes, 239 F.3d at 492. It was not objectively reasonable for defendants Ercole and Henn to believe that their threats did not violate this right. Therefore, they are not entitled to qualified immunity.

CONCLUSION

Consistent with the foregoing, the defendants' motion for summary judgment (Docket No. 40) is DENIED with respect to plaintiff's First Amendment retaliation claims against defendants Ercole and Henn. Defendants' motion for summary judgment is GRANTED with respect to the remainder of the claims asserted in the Amended Complaint, including all claims against defendants Cunningham, Lonczak, Centanni, Gadaway, Strasser and Flora. The Attorney General's office shall comply with the inquiry contained in footnote 1, hereto, by February 1, 2010.

SO ORDERED.

S.D.N.Y.,2010.
Hofelich v. Ercole
Slip Copy, 2010 WL 184453 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Mortimer EXCELL, Plaintiff,
v.
Robert K. WOODS, Supt., Upstate C.F.; N. Bezio, Dep.
Supt., Upstate C.F.; Glenn S. Goord, Comm'r, Docs;
Lucien J. LeClaire, Jr., Dep. Comm'r, Docs; Donnie
Wood, C.O., Upstate C.F.; Brian Lewis, C.O ., Upstate
C.F.; Timothy Ramsdell, C.O., Upstate C.F.; John
Moore, Corr. Supervisor, Upstate C.F.; Kenneth
McLaughlin, Dir. of Ops., Inspector Gen.; D. Quinn,
Captain, Upstate C.F.; R.N. Maria Travers, Nurse,
Upstate C.F.; Gary Steinberg, C.O., Auburn C.F.; Dr.
Lester Wright, Assoc. Comm'r, Docs; Brad Smith, C.O.,
Auburn C.F.; Joseph Belliner, Dep. Supt., Auburn C.F.;
Jeffrey Clafflin, C.O., Auburn C.F.; John Burge, Supt.,
Auburn C.F.; Joseph Wolczyk, Hearing Officer, Auburn
C.F.; Donald Hess, C.O., Auburn C.F.; D. Selsky, Dir.
of Special Housing, Docs; Gordon Simons, C.O.,
Auburn C.F., Brian Fischer; Comm'r, Docs; Richard
Roy, Inspector Gen.; Alan Croce, Chairman, Comm'n of
Corr., and Comm'r, Div. of Parole; Daniel Stewart,
Chairman, Comm'r, Comm'n of Corr.; Vernon Manley,
Comm'r, NYS Div. of Parole; Thomas Grant, Comm'r,
NYS Div. of Parole; John Capacci, NYS Div. of Parole;
Maria Tirone, Dep. Supt., Upstate C.F.; Ashley Allen,
Corr. Counselor, Upstate C.F.; Linda A. Hayes, KBSI,
Upstate C.F.; Patricia Salvage, Auburn C.F.; Raymond
Head, Lt., Auburn C.F.; James Anctil, Lt., Upstate C.F.;
R.N. Nancy Smith, Nurse Administrator, Upstate C.F.;
Labetz, Correctional Supervisor, Auburn C.F.; William
Devito, C.O., Auburn C.F.; J. Sourwine, C.O., Auburn
C.F.; Michael Bray, C.O., Auburn C.F.; Kevin Premo,
C.O., Upstate C.F.; Darrin Corrigeux, C.O., Upstate
C.F.; Sheila Sauve, C.O., Upstate C.F.; and M.
Mackdonal, C.O., Upstate C.F., Defendants.
No. 9:07-CV-0305 (GTS/GHL).

Sept. 29, 2009.

Mortimer Excell, Elmira, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Adele M. Taylor-Scott, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for
Defendants.

*DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* prisoner civil
rights action filed by Mortimer Excell ("Plaintiff") against
forty-three employees of several New York State
departments and/or agencies ("Defendants") pursuant to
42 U.S.C. § 1983 are the following: (1) a motion, filed by
thirty-six of the Defendants, to dismiss part of Plaintiff's
Second Amended and Supplemental Complaint for failure
to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); (2)
United States Magistrate Judge George H. Lowe's
Report-Recommendation recommending that the motion
be granted in part and denied in part; (3) Plaintiff's
Objections to those portions of the
Report-Recommendation recommending dismissal; and
(4) Plaintiff's fourth motion for the appointment of
counsel. (Dkt.Nos.67, 84, 87, 93.) For the reasons set forth
below, the Report-Recommendation is accepted and
adopted in its entirety; Defendants' motion is granted in
part and denied in part; Plaintiff's Second Amended and
Supplemental Complaint is dismissed in part, as detailed
in the "Ordered" Clauses of this Decision and Order; and
Plaintiff's fourth motion for the appointment of counsel is
denied.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Pleadings in This Action**

On March 23, 2007, Plaintiff filed his original Complaint
in this action pursuant to 42 U.S.C. § 1983, asserting

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

numerous claims arising out of his confinement at Auburn and Upstate Correctional Facilities between approximately August 9, 2005, and March 16, 2007 (the date of the Complaint). (Dkt. No. 1, at 36.) On April 18, 2007, the Court required Plaintiff to file an Amended Complaint. (Dkt. No. 6.) On May 17, 2007, Plaintiff filed an Amended *and Supplemental* Complaint asserting similar claims arising out of his confinement at Auburn Correctional Facility between approximately May 5, 2005, and May 14, 2007 (the date of the Amended and Supplemental Complaint). (Dkt. No. 10.) On July 3, 2007, with leave of the Court, Plaintiff filed a Second Amended and Supplemental Complaint asserting similar claims arising out of his confinement at Auburn and Upstate Correctional Facilities between approximately June 17, 2005, and July 3, 2007 (the date of the Second Amended and Supplemental Complaint). (Dkt. No. 17.)

Generally, in his Second Amended and Supplemental Complaint, Plaintiff alleges that, on at least five separate occasions, between approximately June 17, 2005, and July 3, 2007, correctional officers at Auburn and Upstate Correctional Facilities harassed him based on his race and religion. (*See generally* Dkt. No. 17.) As a result, Plaintiff brings claims arising under First, Fourth, Eighth and Fourteenth Amendments, against forty-three employees of several New York State departments and/or agencies, listed in the caption of this Decision and Order. (*Id.*) In his Report-Recommendation, Magistrate Judge Lowe accurately and thoroughly recites the allegations, and prayer for relief, of Plaintiff's Second Amended and Supplemental Complaint. (*See* Report-Recommendation at Parts I.B. and I.C.) As a result, that recitation is incorporated by reference herein.

**B. Plaintiff's Related Action**

**\*2** In his Report-Recommendation, Magistrate Judge Lowe also accurately and thoroughly recites the allegations, claims and procedural posture of Plaintiff's Complaint in a previously filed action that is currently pending in this Court before the undersigned-*Excell v. Burge,* 05-CV1231-GTS-GJD (N.D.N.Y.). (*See* Report-Recommendation at Part I.A.) As a result, that recitation is incorporated by reference herein. The Court would note two additional facts regarding that action's

procedural posture.

First, although this fact is not expressly stated in Magistrate Judge Lowe's Report-Recommendation, Senior United States District Judge Lawrence E. Kahn granted part of Defendants' motion for summary judgment in the action of *Excell v. Burge,* 05-CV-1231, on September 25, 2008, dismissing *with prejudice* all of Plaintiff's claims against Defendant Head, and Plaintiff's First Amendment free-exercise claim against Defendants Hess, Devito, Bray, and Sourwine. *See Excell v. Burge,* 05-CV-1231, 2008 WL 4426647 (N.D.N.Y. Sept. 25, 2008) (Kahn, J.). Then, after being assigned the case on October 2, 2008, the undersigned denied Plaintiff's motion for reconsideration of Judge Kahn's decision and order on January 21, 2009. *See Excell v. Burge,* 05-CV-1231, 2008 WL 152585 (N.D.N.Y. Jan. 21, 2009) (Suddaby, J.).

Second, after Magistrate Judge Lowe issued his Report-Recommendation in this action, the undersigned scheduled trial in the action of *Excell v. Burge,* 05-CV-1231, for December 14, 2009, and appointed *pro bono* trial counsel for Plaintiff.

**C. Defendants' Motion to Dismiss**

On March 6, 2008, thirty-six of the forty-three Defendants in this action filed a motion to dismiss part of Plaintiff's Second Amended and Supplemental Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 67.) FN1 In his Report-Recommendation, Magistrate Judge Lowe accurately summarizes Defendants' arguments on their motion to dismiss. (*See* Report-Recommendation at Part I.D.) As a result, that summary is incorporated by reference herein.

FN1. To the extent that the current motion is filed on behalf of Defendants who had already filed an Answer to Plaintiff's Second Amended and Supplemental Complaint (*see* Dkt. No. 66), that motion is properly brought under Fed.R.Civ.P. 12(c), which governs the entry of judgment on the pleadings. However, courts analyzing a motion filed under Rule 12(c) must apply the same standard as that applicable to a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

motion filed under Rule 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994); *Wynn v. Uhler,* 941 F.Supp. 28, 29 (N.D.N.Y.1996) (Pooler, J.).

After being granted two extensions of time by Magistrate Judge Lowe to file a response to the motion, Plaintiff filed a lengthy response on June 30, 2008, and July 7, 2008. (Dkt.Nos.74, 75.) More specifically, Plaintiff's response consisted of thirty pages of singled-spaced legal argument and affidavit testimony, as well as forty-nine pages of exhibits. (*Id.*) Liberally construed, the crux of Plaintiff's response is that Defendants' motion should be denied for three reasons: (1) his lengthy Second Amended and Supplemental Complaint and his declaration in response to Defendants' motion provide sufficient factual allegations for purposes of Fed.R.Civ.P. 8(a); (2) his response exhibits and his declaration in response to Defendants' motion, demonstrate genuine issues of material fact for trial; and (3) Defendants have failed to comply with Plaintiff's discovery requests. (*Id.*)

**\*3** On March 12, 2009, Magistrate Judge Lowe issued a Report-Recommendation recommending that the motion be granted in part and denied in part. (Dkt. No. 84.) Familiarity with the specific recommendations and analysis therefor offered in Magistrate Judge Lowe's Report-Recommendation is assumed in this Decision and Order. (*See* Report-Recommendation at Part III.)

On March 27, 2009, Plaintiff filed his Objections to those portions of the Report-Recommendation recommending dismissal. (Dkt. No. 87.)[FN2] Liberally construed, the crux of Plaintiff's Objections argue that the undersigned should reject Magistrate Judge Lowe's Report-Recommendation for two reasons: (1) Plaintiff's lengthy Second Amended and Supplemental Complaint, his declaration in response to Defendants' motion, and his Objections to Magistrate Judge Lowe's Report-Recommendation provide sufficient factual allegations for purposes of Fed.R.Civ.P. 8(a); and (2) Plaintiff's response exhibits, his declaration in response to Defendants' motion, and his verified Objections to Magistrate Judge Lowe's Report-Recommendation demonstrate genuine issues of material fact for trial. (*Id.*)

FN2. The Court notes that, on March 20, 2009, Plaintiff filed a document entitled "Declaration," which was mistakenly docketed as an "Objection" to the Report-Recommendation. (Dkt. No. 85.) The Court concludes that the Declaration does not constitute an Objection to the Report-Recommendation, because it is dated February 26, 2009 (two weeks before the issuance of the Report-Recommendation), it does not reference the Report-Recommendation, and it constitutes evidence (which is immaterial on a motion to dismiss). (*Id.*) The Court notes also that, on March 25, 2009, Plaintiff filed a "Respon[se] to Opposition of Defendants ['] Memorandum Motion for Preliminary Injunctive Relief," which was incorrectly docketed as a "Supplemental Objection" to the Report-Recommendation. (Dkt. No. 86.) The Court concludes that this document does not constitute an Objection to the Report-Recommendation, because it is dated February 26, 2009 (two weeks before the issuance of the Report-Recommendation), it does not reference the Report-Recommendation but Plaintiff's then-pending motion for preliminary injunction. (*Id.*) *As a result, the Clerk's Office is directed to re-docket Dkt. No. 85 as "Declaration in Support of Plaintiff's Motion for Counsel and/or Motion for Preliminary Injunction," to re-docket Dkt. No. 86 as "Reply to Response to Motion for Preliminary Injunction," and to re-docket Dkt. No. 87 as "Objection to Report-Recommendation."*

**D. Plaintiff's Fourth Motion for Counsel**

On June 2, 2009, Plaintiff filed his fourth motion for the appointment of counsel. (Dkt. No. 93.) Plaintiff's first three such motions were filed on May 27, 2008, June 2, 2008, and March 4, 2009, and were denied on December 29, 2008, and April 7, 2009. (Dkt.Nos.71, 72, 80, 82, 88.)

**II. APPLICABLE LEGAL STANDARDS**

**A. Standard of Review of a Report-Recommendation**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

When specific objections are made to a magistrate judge's report-recommendation, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C).[FN3] When only general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], aff'd without opinion, 175 F.3d 1007 (2d Cir.1999).[FN4] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at *1 (S.D.N .Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

> FN3. On *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g ., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

> FN4. *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec. 12,

1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895 (1996).

**B. Standard Governing a Motion to Dismiss for Failure to State a Claim**

Magistrate Judge Lowe thoroughly and correctly recited the legal standard governing a motion to dismiss for failure to state a claim, including the standard governing such motions to dismiss pleadings drafted by *pro se* litigants. (*See* Report-Recommendation at Part II.) As a result, that standard is incorporated by reference herein.

**III. ANALYSIS**

**A. Defendants' Motion to Dismiss**

**\*4** As indicated above in Part I.C. of this Decision and Order, Plaintiff's Objections do not contain specific challenges to those portions of the Report-Recommendation recommending the partial denial of Defendants' motion to dismiss. Thus, the Court reviews those portions of the Report-Recommendation for only clear error. *See, supra,* Part II.A. of this Decision and Order. After carefully reviewing all of the papers in this action (including Plaintiff's Second Amended and Supplemental Complaint, and the referenced portions of Magistrate Judge Lowe's Report-Recommendation), the Court concludes that the referenced portions of the Report-Recommendation are well-reasoned and not clearly erroneous. As a result, the Court accepts and adopts these portions of the Report-Recommendation for the reasons stated therein.

With regard to the one portion of Magistrate Judge Lowe's Report-Recommendation to which Plaintiff's Objections do specifically challenge-i.e., Magistrate Judge Lowe's recommendation that Defendants' motion to dismiss be

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

partially granted a *de novo* review is appropriate. *See, supra,* Part II.A. of this Decision and Order. After carefully reviewing all of the papers in this action (including Plaintiff's Second Amended and Supplemental Complaint, the referenced portion of Magistrate Judge Lowe's Report-Recommendation, and Plaintiff's Objections), the Court concludes that the referenced portion of the Report-Recommendation is correct in all respects. Magistrate Judge Lowe employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court also accepts and adopts this portion of the Report-Recommendation for the reasons stated therein. The Court would add only five points.

First, contrary to Plaintiff's reading of Magistrate Judge Lowe's Report-Recommendation, the vast majority of Magistrate Judge Lowe's recommendations were not premised on a failure by Plaintiff to allege sufficient facts for purposes of Fed.R.Civ.P. 8(a). Rather, the vast majority of Magistrate Judge Lowe's recommendations were based on the fact that the claims in question, though factually detailed, were simply not cognizable under Fed.R.Civ.P. 12(b)(6). (*See* Report-Recommendation at Part II [describing the two grounds on which a defendant may move to dismiss for failure to state a claim].) [FN5] As a result, his argument that he provided a "short and plain statement of [his] claim," as required by Fed.R.Civ.P. 8(a), is almost entirely irrelevant.

> FN5. More specifically, the vast majority of Magistrate Judge Lowe's recommendations were based on the fact that the claims in question were not actionable under the following legal authorities: (1) the proscription against duplicitous and malicious prosecutions, pursuant to Fed.R.Civ.P. 11(b)(2), the first-in-time rule, and the Court's inherent power to manage its docket; (2) the principle of sovereign immunity under the Eleventh Amendment; (3) the doctrine of absolute immunity; (4) the requirement that supervisors be personally involved in constitutional violations under 42 U.S.C. § 1983; (5) the legal standard governing substantive and procedural due process claims arising from prison disciplinary hearings under the Fourteenth Amendment; (6) the legal standard governing

access-to-courts claims arising under the First Amendment; (7) the legal standard governing free-exercise claims arising under the First Amendment; (8) the legal standard governing unreasonable-search claims under the Fourth Amendment; (9) the legal standard governing due process claims arising from the receipt of a false prison misbehavior report in prison under the Fourteenth Amendment; (10) the intra-corporate conspiracy doctrine; and (11) the legal standard governing claims of deliberate indifference to a serious medical need and inadequate prison conditions arising under the Eighth Amendment. (*See* Report-Recommendation at Part III.)

Second, contrary to Plaintiff's understanding of the legal standard governing motions to dismiss under Fed.R.Civ.P. 12(b)(6), extrinsic evidence cannot be considered by the Court when deciding such motions. *See* Fed.R.Civ.P. 12(d). Nor can matters outside the four corners of the pleadings be considered by the Court when deciding such motions, with a few exceptions. Here, the Court finds none of the exceptions are applicable. The exhibits and declarations on which Plaintiff relies in opposition to Defendants' motion were not exhibits to his lengthy Second Amended and Supplemental Complaint. (*See* Dkt. No. 17, Part 1.) Thus, they are not deemed part of that pleading pursuant to Fed.R.Civ.P. 10(c). Moreover, Plaintiff has already had three chances to amend his operative pleading in this action. As a result, he has no absolute right, under Fed.R.Civ.P. 15(a)(2), to constructively amend it through the Court's consideration of the materials in question. Finally, Plaintiff has not shown that the materials in question are sufficiently consistent with the allegations of his Second Amended and Supplemental Complaint. [FN6] As a result, it would not be appropriate for the Court to consider them out of an extension of special solicitude to Plaintiff. [FN7] For all these reasons, it is irrelevant (for purposes of the motion to dismiss currently pending before the Court) whether or not Plaintiff has submitted response exhibits, a declaration in response to Defendants' motion, and verified Objections to Magistrate Judge Lowe's Report-Recommendation, which demonstrate genuine issues of material fact for trial.

> FN6. The Court notes that, under the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

circumstances, considering the materials in question would result in piecemeal litigation, requiring Defendants, in their Answer or Amended Answer (*see* Dkt. No. 66), to admit or deny-at their peril-facts never plausibly alleged in Plaintiff's Second Amended and Supplemental Complaint.

FN7. The Court notes that an additional reason it should not treat his Objections as effectively amending his Second Amended and Supplemental Complaint is that such a treatment would contravene the rule that a district court will ordinarily refuse to consider material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, supra,* note 3 of this Decision and Order.

**\*5** Third, Plaintiff neglects to mention, in his Objections, that several of the dismissals recommended by Magistrate Judge Lowe are dismissals *with leave to amend.* Such a recommendation is extremely generous to Plaintiff, who has already had three chances to amend his operative pleading in this action, and who, on one occasion, took the opportunity to file a *supplemental* pleading without prior leave of the Court. (*Compare* Dkt. No. 15 *with* Dkt. No. 17.) *See* Fed.R.Civ.P. 15(d); Local Rule 7.1(a)(4). While the Court accepts Magistrate Judge Lowe's recommendation, *the Court cautions Plaintiff that, should his Third Amended and Supplemental Complaint allege any facts occurring after July 3, 2007 (the date of the Second Amended and Supplemental Complaint), those allegations will be sua sponte struck by the Court.*

Fourth, as stated above in Part I.B. of this Decision and Order, although this fact is not relied on in Magistrate Judge Lowe's Report-Recommendation, Judge Kahn granted part of Defendants' motion for summary judgment in the action of *Excell v. Burge,* 05-CV-1231, on September 25, 2008, dismissing *with prejudice* all of Plaintiff's claims against Defendant Head, and Plaintiff's First Amendment free-exercise claim against Defendants Hess, Devito, Bray, and Sourwine. *See* Excell v. Burge, 05-CV-1231, 2008 WL 4426647 (N.D.N.Y. Sept. 25, 2008) (Kahn, J.). As a result, Plaintiff's litigation of those claims in this action are precluded for the additional

reason of res judicata, also known as claim preclusion.

Fifth, and finally, in addition to the intracorporate-conspiracy-doctrine cases cited by Magistrate Judge Lowe, the Court relies on the cases cited by the undersigned in *Murray v. Pataki,* 03-CV-1263, 2009 WL 981217, at \*4 & n. 11 (N.D.N.Y. Apr. 9, 2009) (Suddaby, J.).

**B. Plaintiff's Motion to Appoint Counsel**

Plaintiff's fourth motion for the appointment of counsel is denied for the same reasons that his third such motion was denied by Magistrate Judge Lowe on April 7, 2009. (Dkt. No. 88.) More specifically, after carefully reviewing the file in this action, the Court finds as follows: (1) it appears as though, to date, Plaintiff has been able to effectively litigate this action; (2) it appears that the case does not present issues that are novel or more complex than those raised in most prisoner civil rights actions; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial (as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants), it is highly probable that this Court will appoint trial counsel at the final pretrial conference (should this case survive the filing of any further dispositive motions); and (4) the Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

**ACCORDINGLY,** it is

**\*6 ORDERED** that Magistrate Judge Lowe's Report-Recommendation (Dkt. No. 84) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 67) is **GRANTED in part** and **DENIED in part;** and it is further

**ORDERED** that the following claims of Plaintiff's Second

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

Amended and Supplemental Complaint (Dkt. No. 17) are *DISMISSED* without leave to amend:

(1) all claims against Defendants Devito, Head, Labetz, Simons, and Sourwine;

(2) the First Amendment religion claims alleged in ¶¶ 1-26 of the Second Amended and Supplemental Complaint against Defendant Hess;

(3) all claims against Defendant Burge;

(4) all claims against Defendants in their official capacities;

(5) all claims against Defendants Manley, Grant, and Capacci;

(6) the claim against Defendant Croce regarding his decision to deny Plaintiff parole;

(7) the claims against Defendants Goord, Burge, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright, and N. Smith alleging that they ignored complaints and grievances;

(8) the procedural due process claims against Defendants Salvage, Hayes, and Allen;

(9) the Fourth Amendment claim against Defendants Steinberg, B. Smith, and Claflin arising from their August 22, 2005, search of Plaintiff's cell;

(10) the conspiracy claims against Defendants Premo, D. Wood, and Corrigeux arising from the May 2006 drug tests;

(11) the conspiracy claim against Defendant Lewis arising from the June 17, 2006, request for a urine sample;

(12) the conspiracy claim against Defendants R. Woods and Anctil arising from Anctil's May 19, 2007, threats; and

(13) the claim that Defendant McDonald used "racial and discrimination and indecent and profane language"; and it is further

ORDERED that the following claims of Plaintiff's Second Amended and Supplemental Complaint (Dkt. No. 17) are *DISMISSED* with leave to amend:

(1) the claims against Defendants Goord, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright, and N. Smith alleging that they falsified documents in response to Plaintiff's grievances;

(2) the substantive due process and First Amendment access to the courts claims against Defendants Salvage, Hayes, and Allen;

(3) the due process claim against Defendants B. Smith and Claflin arising from the August 23, 2005, misbehavior report;

(4) the due process claim against Defendants Premo, D. Wood, and Corrigeux arising from the May 2006 drug tests;

(5) the due process claim against Defendant Lewis arising from the June 22, 2006, misbehavior report;

(6) the Eighth Amendment medical care claims against Defendants Moore and Travers arising from Plaintiff's discovery of glass in his food;

(7) the Eighth Amendment claims arising from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

Anctil's May 19, 2007, threats;

(8) the Eighth Amendment conditions of confinement claim against Defendant McDonald arising from the denial of food and spitting in Plaintiff's coffee; and

*7 (9) the Eighth Amendment medical care claim against Defendant McDonald arising from her interference with Plaintiff's medical interview; and it is further

**ORDERED** that the following claims of Plaintiff's Second Amended and Supplemental Complaint (Dkt. No. 17) hereby survive Defendants' motion to dismiss:

(1) the retaliation claim against Defendant Hess arising from the August 22, 2005, drug test;

(2) the retaliation claim against Defendant Bellinger arising from the August 22, 2005, drug test;

(3) the First Amendment claim against Defendants Steinberg, B. Smith, and Claflin arising from their August 22, 2005, search of Plaintiff's cell;

(4) the due process claim against Defendant Steinberg arising from the August 23, 2005, misbehavior report;

(5) the Fourth Amendment claim against Defendant Premo arising from the May 7, 2006, drug test; and

(6) the Eighth Amendment medical care claim against Defendant Travers arising from Plaintiff's May 2007 report of bloody bowel movements; and it is further

**ORDERED** that, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff shall file, for the Court's review and acceptance, a **THIRD AMENDED AND SUPPLEMENTAL COMPLAINT,** in which he

asserts the six claims described in the preceding paragraph, and in which he amends the nine claims that have been hereby dismissed with leave to amend; and it is further

**ORDERED** that, after Plaintiff's Third Amended and Supplemental Complaint, Defendants shall file an Answer (or an Amended Answer, if appropriate) in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiff's fourth motion for the appointment of counsel (Dkt. No. 93) is **DENIED;** and it is further

**ORDERED** that the Clerk's Office shall re-docket Dkt. No. 85 as "Declaration in Support of Plaintiff's Motion for Counsel and/or Motion for Preliminary Injunction," re-docket Dkt. No. 86 as "Reply to Response to Motion for Preliminary Injunction," and re-docket Dkt. No. 87 as "Objection to Report-Recommendation."

*Plaintiff is advised that, should his Third Amended and Supplemental Complaint fail to state a claim with regard to the nine claims that have been hereby dismissed with leave to amend, those claims will be sua sponte dismissed by the Court. Plaintiff is also advised that, should his Third Amended and Supplemental Complaint allege any facts occurring after July 3, 2007 (the date of the Second Amended and Supplemental Complaint), those allegations will be sua sponte struck by the Court.*

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently pending before the Court is a motion by some of the Defendants to dismiss for failure to state a claim pursuant

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

to Federal Rules of Civil Procedure 12(b)(6). (Dkt. No. 67.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Plaintiff's complaint in Case No. 9:05-CV-1231 (GTS/GJD)

**\*8** On September 28, 2005, Plaintiff Mortimer Excell filed a previous action in this Court. *Excell v. Burge,* No. 9:05-CV-1231 (GTS/GJD) (*"Burge"*). The operative complaint in that case alleges that on five separate occasions, correctional officers at Auburn Correctional Facility harassed Plaintiff based on his race and religion. (*Burge* Dkt. No. 7.)

Specifically, the *Burge* complaint alleges that on June 17, 2005, officers G. Simons and Labetz taunted Plaintiff with religious and racial epithets, threw his religious headgear ("Tsalot-Kob") on the ground, and threatened to harm Plaintiff if he filed any grievances. (*Burge* Dkt. No. 7 at ¶¶ 1-8.) The officers then issued a misbehavior report charging Plaintiff with violating various disciplinary rules. *Id.* at ¶ 9. After a disciplinary hearing, Plaintiff was found guilty of the charges. *Id.* at ¶ 10. Plaintiff filed an administrative appeal with John W. Burge, the superintendent of the facility, which was denied. Plaintiff's written complaint to DOCS commissioner Glenn Goord was 'neglected.' *Id.* at ¶ 11.

On July 20, 2005, officer Hess removed Plaintiff from a religious studies class and informed him that he was not allowed to wear a colored Tsalot-Kob. When Plaintiff protested that DOCS directives allowed him to wear a colored Tsalot-Kobb, Hess summoned several officers, who returned Plaintiff to his cell and placed him on keeplock status. (*Burge* Dkt. No. 7 at ¶ 12.) Plaintiff subsequently received a misbehavior report charging him with "out of place." *Id.* at ¶ 13. Plaintiff was found not guilty after a disciplinary hearing, but did not receive a copy of the written disposition. *Id.* at ¶ 14.

On July 26, 2005, officer Simons approached Plaintiff in

the mess hall, began calling him racially derogatory names, and ordered him to remove his Tsalot-Kob. (*Burge* Dkt. No. 7 at ¶ 15.) Simons and two other officers then removed Plaintiff from the mess hall, confiscated his Tsalot-Kob, and returned him to his cell on keeplock status. *Id.* at ¶ 16. Subsequently, Plaintiff received a misbehavior report charging him with violating various disciplinary rules. *Id.* at ¶ 17. After a disciplinary hearing, Plaintiff was found not guilty. *Id.* at ¶ 18.

On August 4, 2005, officer Devito removed Plaintiff from his religious class and demanded to know why he was wearing a colored Tsalot-Kob. (*Burge* Dkt. No. 7 at ¶ 20.) Devito threatened to kill Plaintiff if he filed any complaints against him. *Id.* He then went into the class and stated that the organization would not be allowed to continue to operate if Plaintiff remained in the organization. *Id.* Devito returned Plaintiff to his cell and placed him on keeplock status. *Id.* at ¶ 21. Devito subsequently issued Plaintiff a misbehavior report charging him with refusing a direct order. *Id.* at ¶ 22. Plaintiff was found not guilty after a disciplinary hearing. *Id.* at ¶ 23. However, when he requested a written disposition, hearing officer Head told him to "get the fuck out [of] the hearing office [FN1]." *Id.*

> FN1. Because a motion to dismiss tests the face of a plaintiff's complaint, this Report-Recommendation includes many direct quotes from Plaintiff's complaint. Any grammatical errors or idiosyncratic turns of phrase are Plaintiff's, not the Court's.

**\*9** On August 9, 2005, officer Sourwine approached Plaintiff in the mess hall and ordered him to remove his colored Tsalot-Kob. (*Burge* Dkt. No. 7 at ¶ 24.) When Plaintiff showed Sourwine a copy of the DOCS directive allowing colored Tsalot-Kobs, Sourwine began calling Plaintiff racially derogatory names. *Id.* Officer Bray then approached Plaintiff, began calling Plaintiff racially derogatory names, said he did not "give a dam[n] fuck about ... the Directive," and ordered Plaintiff to leave the mess hall. *Id.* Bray returned Plaintiff to his cell and placed him on keeplock status. *Id.* Subsequently, Plaintiff received a misbehavior report charging him with violating various disciplinary rules. *Id.* at ¶ 25. At the disciplinary

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

hearing on the charges, hearing officer Head would not allow Plaintiff to present a defense and ordered that Plaintiff be removed from the hearing room. *Id.* at ¶ 26. Plaintiff was found guilty of the charges. *Id.*

In addition to these five incidents, Plaintiff alleged that he had filed a grievance against officer G. Steinberg for mail theft, sexual harassment, and threats. (*Burge* Dkt. No. 7 at ¶ 30.) However, Plaintiff did not name Steinberg as a defendant in the *Burge* action. Rather, he stated that he was simply 'notifying' the Court about the incident. *Id.* The Court did not interpret the *Burge* complaint as making any allegations against Steinberg. (*Burge* Dkt. No. 52 at 8.)

The *Burge* case has proceeded past the summary judgment stage. On summary judgment, the Court dismissed all claims against Head and the First Amendment religion claims against Hess, Devito, Bray, and Sourwine. Retaliation claims against those defendants remain pending.

**B. Plaintiff's complaint in this case**

On March 23, 2007, Plaintiff filed the case pending before the undersigned. The operative complaint is the amended complaint filed on July 9, 2007. (Dkt. No. 17) ("the complaint.") The first 27 paragraphs of the complaint's statement of facts repeat, nearly verbatim, the allegations of the *Burge* case. (Compare Dkt. No. 17 at ¶¶ 1-27 with *Burge* Dkt. No. 7 at ¶¶ 1-30.) In addition, the complaint includes allegations about the lack of response to Plaintiff's complaints and grievances, the denial of Plaintiff's parole, and ten other incidents of mistreatment by staff.

1. *Allegations against Defendants Hess, Bellinger, Steinberg, Smith, Claflin, Wolczyk, Salvage, Goord and Burge re: urine sample, cell search and falsified transcript*

On August 22, 2005, Plaintiff was removed from his cell and escorted to the medical unit to give a urine sample. (Dkt. No. 17 at ¶ 28.) This sample was required because

of a report by Defendant Hess, whom Plaintiff had not seen for two or three weeks. *Id.* As Plaintiff was being escorted, Defendant Joseph Bellinger [FN2] told the escort officers to be sure that Plaintiff's urine test was positive. *Id.* Plaintiff asserts that Hess' report and Bellinger's comment were made in retaliation for Plaintiff submitting a grievance and for "beating" the July 20, 2005, misbehavior report. *Id.*

> FN2. The complaint refers to this defendant as "Joseph Bellnier." (Dkt. No. 17 at A-5.) I have used the spelling provided in Defendants' motion to dismiss.

**\*10** While Plaintiff was giving the urine sample, Defendants Steinberg, B. Smith and Claflin searched his cell. (Dkt. No. 17 at ¶ 29.) When Plaintiff returned to his cell, his legal documents and belongings were on the floor and his three Tsalot-Kobs were in the toilet. *Id.* A cell search contraband receipt signed by Steinberg, B. Smith and Claflin stated that tobacco and marijuana had been found in the cell. *Id.*

On August 23, 2005, Plaintiff received a misbehavior report charging him with possession of a controlled substance. (Dkt. No. 17 at ¶ 30.) Plaintiff was found guilty after an August 25, 2005, disciplinary hearing conducted by Defendant Joseph Wolczyk at which Plaintiff was not allowed to present a defense. *Id.* He was sentenced to 12 months' SHU confinement, 12 months' loss of good time credits, and 12 months' loss of recreation, commissary, package and telephone privileges. *Id.*

On August 26, 2005, Plaintiff filed complaints with Defendants Goord and Burge. He did not receive a response. (Dkt. No. 17 at ¶ 32.)

Plaintiff appealed his disciplinary sentence through the prison appeals system and filed an Article 78 proceeding in state court. (Dkt. No. 17 at ¶ 33.) Plaintiff alleges that defendant stenographer Patricia Salvage "falsified the transcri[pt] of the Tier Three hearing ... in an effort to cover up staff misconduct ." *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

I construe the complaint as asserting the following causes of action as a result of these events: (1) a retaliation claim against Defendants Hess and Bellinger; (2) a First Amendment religion claim, a Fourth Amendment claim, and substantive and procedural due process claims against Defendants Steinberg, B. Smith, and Claflin; (3) a procedural due process claim against Defendant Wolczyk [FN3]; and (4) a First Amendment access to the courts claim, a substantive due process claim, and a procedural due process claim against Defendant Salvage.

> FN3. Defendant Wolczyk has answered the complaint. (Dkt. No. 66.)

2. *Allegations against Defendants Premo, Wood, and Corrigeux re: falsified drug test*

On April 29, 2006, Plaintiff was moved into a cell with an inmate who had a long history of drug use. (Dkt. No. 17 at ¶ 38.) On May 7, 2006, Defendant Premo ordered Plaintiff to submit a urine specimen. Premo said "Albany" had requested the sample. (Dkt. No. 17 at ¶ 36.) On May 9, 2006, Plaintiff and his cell mate were both ordered to submit urine specimens. (Dkt. No. 17 at ¶ 37.) Plaintiff alleges that the reason for the second test was to use his cell mate's specimen "to give me a false positive." (Dkt. No. 17 at ¶ 38.)

On May 12, 2006, Defendant Wood issued misbehavior reports charging Plaintiff and his cell mate with use of controlled substances. Plaintiff alleges that Defendant Wood drafted the report in a way that ensured that Plaintiff's cell mate would have his misbehavior report dismissed as a reward for helping to set up Plaintiff. (Dkt. No. 17 at ¶ 39.) Defendant N. Bezio conducted a disciplinary hearing on May 25, 2006. (Dkt. No. 17 at ¶ 40.) As part of his defense, Plaintiff requested a copy of the urinalysis test. Plaintiff alleges that Defendants Premo and Corrigeux falsified the document to make it appear that Corrigeux, rather than "Albany," had requested the test. *Id.* Plaintiff was found guilty and sentenced to six months' SHU confinement, six months' lost good time, and six months' lost package, commissary, recreation, and telephone privileges. *Id.*

*11 I construe the complaint as asserting the following causes of action as a result of these events: (1) a Fourth Amendment claim, a conspiracy claim, and a due process claim against Defendant Premo; and (2) due process and conspiracy claims against Defendants Wood and Corrigeux.

3. *Allegations against Defendants Lewis, Moore, Ramsdell and Woods re: drug test*

On June 17, 2006, Defendant B. Lewis ordered Plaintiff to submit a urine specimen. (Dkt. No. 17 at ¶ 41.) Plaintiff, citing a three-hour time limit to submit specimens, said he would submit the specimen when he finished eating. *Id.* Defendant Lewis said to another officer "Fuck him ... we will just put down [that] he [is] refusing to submit his urine specimen." *Id.* No one returned to take Plaintiff's specimen. *Id.* Plaintiff complained verbally to the building supervisor, Defendant Moore, and filed a written complaint with Defendant R. Woods. *Id.*

On June 22, 2006, Defendant Lewis issued a misbehavior report charging Plaintiff with refusing a direct order. (Dkt. No. 17 at ¶¶ 42, 45.) On July 10, 2006, Defendant T. Ramsdell and another officer escorted Plaintiff to a disciplinary hearing. (Dkt. No. 17 at ¶ 45.) When Plaintiff protested, Defendant Ramsdell and another officer told Plaintiff that "if he do[es] not stop his jail house lawyer shit and plead guilty they will issue[ ] the Plaintiff [another] false misbehavior report." *Id.* When Plaintiff refused and began to present a defense, Defendant Ramsdell and the other officer ordered the hearing officer to stop the hearing tape. *Id.* They threatened Plaintiff with bodily harm, escorted him back to his cell, and ordered him to assume the frisk position. *Id.* While Plaintiff was positioned against the wall, the officers put all of his personal items on the floor, including his Bible [FN4], and removed Plaintiff's pillow and toilet paper. *Id.* Plaintiff immediately verbally complained to the housing supervisor. (Dkt. No. 17 at ¶ 46.)

> FN4. Plaintiff does not claim that Defendant Ramsdell violated his First Amendment rights. (Dkt. No. 17 at 56.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

On July 11, 2006, Plaintiff filed a "complaint to Defendant Woods and a grievance against Defendant Ramsdell" regarding the July 10 hearing room incident. (Dkt. No. 17 at ¶ 48.) Plaintiff alleged that Ramsdell acted in retaliation for a grievance Plaintiff filed against N. Bezio on July 9, 2006. *Id.*

On July 12, 2006, Plaintiff received a copy of a not guilty disposition from the July 10 hearing. (Dkt. No. 17 at ¶ 47.)

I construe the complaint as asserting the following causes of action as a result of these events: (1) a substantive due process claim, a procedural due process claim, and a conspiracy claim against Defendant Lewis; and (2) an Eighth Amendment claim, a substantive due process claim, and a procedural due process claim against Defendant Ramsdell [FN5]

> [FN5.] Defendant Ramsdell has answered the complaint. (Dkt. No. 66.)

4. *Allegations against Defendants Moore and Travers re: glass in food*

On June 29, 2006, Plaintiff found glass in his food. (Dkt. No. 17 at ¶ 43.) Plaintiff reported this to the housing unit supervisor, Defendant Moore. *Id.* Plaintiff requested medical care and a new food tray, but Moore refused. *Id.*

**\*12** On June 30, 2006, Defendants Moore and Nurse Travers gave Plaintiff a form to fill out to request medical care. (Dkt. No. 17 at ¶ 44.) Travers, without examining Plaintiff, told him there was nothing wrong with him. *Id.*

I construe the complaint as asserting Eighth Amendment medical care claims against Defendants Moore and Travers as a result of these events.

5. *Allegations against Defendants Bezio, LeClair, Ramsdell, and Sauve re: excessive force*

As mentioned above, on July 9, 2006, Plaintiff filed a grievance complaint against Defendant N. Bezio. (Dkt. No. 17 at ¶ 45.) On July 12, 2006, Plaintiff received a misbehavior report. (Dkt. No. 17 at ¶ 47.)

On July 21, 2006, Defendant Bezio commenced a disciplinary hearing. (Dkt. No. 17 at ¶ 49.) He denied Plaintiff's requests for the video of the July 10 hearing and copies of the July 11 complaint letters and grievance. *Id.*

On July 24, 2006, Plaintiff filed a complaint against Defendant Bezio with Defendant LeClaire. (Dkt. No. 17 at ¶ 50.) Plaintiff requested that Bezio be removed as his hearing officer. *Id.*

On July 27, 2006, Defendants Ramsdell and Sheila Sauve and five other officers arrived at Plaintiff's cell to escort him to a disciplinary hearing. (Dkt. No. 17 at ¶ 51.) Ramsdell ordered Plaintiff to turn his back to the cell door and put his hands behind his back and through the slot in the door. *Id.* Plaintiff complied, and Sauve applied mechanical restraints. *Id.* Plaintiff told Defendants that the restraints were too tight. *Id.* Ramsdell pat frisked Plaintiff "in a very hostile and sexual assault manner that offended Plaintiff['s] manhood and offend[ed] his dignity." *Id.* When Plaintiff arrived at the hearing room, Defendant Bezio told him to stop resisting. *Id.* Ramsdell and Sauve then pushed Plaintiff into the wall and tried to break Plaintiff's right index finger. *Id.* Defendant Bezio and five other officers pushed Plaintiff's face into the wall until it "burst open" and bled. *Id.* Plaintiff's wrists were also bleeding. *Id.* Plaintiff was escorted back to his cell and his legal documents were not returned. *Id.* Plaintiff did not receive medical care despite filing numerous complaints. (Dkt. No. 17 at ¶¶ 51, 58.)

Bezio found Plaintiff guilty of all charges and sentenced him to six months' SHU confinement, three months' loss of good time, and six months' loss of recreation, commissary, packages, and telephone privileges. (Dkt. No. 17 at ¶ 51.)

Plaintiff alleges that Defendant Linda A. Hayes, the stenographer for the hearing, falsely certified that her transcript was accurate. (Dkt. No. 17 at ¶ 77 [FN6].)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

FN6. Plaintiff alleges that Defendant Hayes also "knowingly and willfully ma[d]e a false official report" on another occasion, but it is not clear from the complaint to which disciplinary hearing Plaintiff is referring. (Dkt. No. 17 at ¶ 79.)

I construe the complaint as asserting the following causes of action as a result of these events: (1) Eighth Amendment, substantive due process, and procedural due process claims against Defendant Bezio FN7; (2) Eighth Amendment claims against Defendants Ramsdell FN8 and Sauve FN9; and (3) First Amendment access to the court, substantive due process, and procedural due process claims against Defendant Hayes.

FN7. Defendant Bezio has answered the complaint. (Dkt. No. 66.)

FN8. As noted above, Defendant Ramsdell has answered the complaint. (Dkt. No. 66.)

FN9. Defendant Sauve has answered the complaint. (Dkt. No. 66.)

6. *Allegations against Defendants Ramsdell, Bezio, Allen, Goord and Selsky re: false misbehavior report and transcription*

**\*13** On July 28, 2006, Defendant Ramsdell and officer Comstock issued misbehavior reports charging Plaintiff with refusing a direct order, violating lock in/lock out procedures, violent conduct, interference with employees, and harassment. (Dkt. No. 17 at ¶ 52.) Officer Comstock's report "said he had only written [it] because he was ordered to do so by Defendant Bezio." *Id.* The disciplinary hearing on the charges was conducted on several dates in August 2006. (Dkt. No. 17 at ¶ 53.) The hearing officer, Defendant D. Quinn, denied Plaintiff's requests to present evidence. *Id.* Plaintiff did not immediately receive a disposition document or any determination of guilt. *Id*

On October 15, 2006, Plaintiff filed a grievance with Defendant Goord. (Dkt. No. 17 at ¶ 54.) In response, Defendant Selsky sent Plaintiff a copy of a disposition from an August 29 hearing. *Id.* Plaintiff had been found guilty and sentenced to three months' SHU confinement, three months' loss of good time, and three months' loss of recreation, commissary, packages and telephone privileges. *Id.* Plaintiff alleges that Defendant Ashley Allen, the stenographer for the August 29 hearing, falsely certified that her transcript was accurate. (Dkt. No. 17 at ¶ 78.)

I construe the complaint as asserting the following causes of action as a result of these events: (1) substantive due process, procedural due process, and conspiracy claims against Defendants Ramsdell and Bezio FN10; (2) a procedural due process claim against Defendant Quinn FN11; and (3) First Amendment access to the courts, substantive due process, and procedural due process claims against Defendant Allen.

FN10. As noted above, Defendants Ramsdell and Bezio have answered the complaint. (Dkt. No. 66.)

FN11. Defendant Quinn has answered the complaint. (Dkt. No. 66.)

7. *Allegations against Defendant Travers re: bloody bowel movements*

On May 8, 2007, Plaintiff filed a sick call request regarding stomach pain, heart pain, and blood in his bowel movements. (Dkt. No. 17 at ¶ 65.) On May 9, 2007, a nurse gave Plaintiff three stool sample test cards. *Id.* On May 11, 2007, Plaintiff returned the three stool sample cards to Defendant Travers. (Dkt. No. 17 at ¶ 65.) On May 12, 13, and 14, 2007, Plaintiff filed sick call requests regarding heart pain and bloody bowel movements. *Id.* When Plaintiff asked Travers about the stool sample cards, she said that Plaintiff would soon see a nurse-practitioner because the samples had blood in them.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

*Id.* Travers would not give Plaintiff any pain killers. *Id.* Plaintiff filed "numerous" complaints against Nurse Travers and had blood in his bowel movements for nine months but never received care. (Dkt. No. 17 at ¶ 58, 65.)

I construe the complaint as asserting an Eighth Amendment medical care claim against Defendant Travers as a result of these events. I note that Defendants have explicitly declined to move to dismiss this cause of action. (Dkt. No. 67-4 at 21, 22 n. 4.)

8. *Allegations against Defendants McDonald, Woods and Fisher re: spitting in coffee cup, interfering with medical interview, and profane language*

*14 On May 9, 2007, Plaintiff filed a grievance against Defendant Michele McDonald [FN12] for spitting in his coffee cup, interfering with a medical interview and using racial and profane language. (Dkt. No. 17 at ¶ 62.) I construe the complaint as asserting Eighth Amendment medical care and conditions of confinement claims against Defendant McDonald.

> FN12. The complaint refers to this defendant as "Macdonal." (Dkt. No. 17 at ¶ 62.) I have used the spelling provided in Defendants' motion to dismiss.

9. *Allegations against Defendants Woods, Anctil and Tirone re: laughing at Plaintiff's report of pain and the misbehavior report alleging threats by Plaintiff*

On May 17, 2007, Defendant Woods walked by Plaintiff's cell. (Dkt. No. 17 at ¶ 66.) Plaintiff complained about his heart and stomach pains and the blood in his bowel movements. *Id.* Woods laughed in Plaintiff's face and walked away. *Id.* That same day, Plaintiff filed a complaint with Woods, stating that he was receiving cruel and unusual punishment and that "he would not just sit and be physically assaulted ... he will start to fight back to protect hi [m]self and he will not let these defendants kill him and he do not try to take one of them with him and he will feel better to die fighting for his justice." *Id.* On May

21, 2007, Defendant Anctil issued a misbehavior report charging Plaintiff with violent conduct and threats [FN13] (Dkt. No. 17 at ¶ 68.) Defendant Tirone presided over the disciplinary hearing on June 7, 2007. (Dkt. No. 17 at ¶ 69.) Plaintiff protested that the hearing was untimely. He asked to see a copy of any extension. Tirone denied that request and Plaintiff's requests to present documentary evidence and witnesses. *Id.* Tirone found Plaintiff guilty and sentenced him to nine months' SHU confinement and nine months' loss of recreation, packages, telephone and commissary privileges. *Id.*

> FN13. To the extent that this allegation raises any due process claim against Defendant Anctil on the basis that Defendant Anctil issued a false misbehavior report, I dismiss that claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B) for two reasons. First, it is clear from the face of the complaint that Plaintiff did, in fact, make threats. Thus, the report was not false. Second, as discussed at length below, even if the report were false, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997).

I construe the complaint as asserting the following causes of action as a result of these events: (1) Eighth Amendment medical care and substantive due process claims against Defendant Woods; and (2) a procedural due process claim against Defendant Tirone [FN14]

> FN14. Defendant Tirone has answered the complaint. (Dkt. No. 66.)

10. *Allegations against Defendants Woods and Anctil regarding threats of physical force*

On May 19, 2007, Woods sent Defendant Anctil to escort "Plaintiff to a hearing room and intimidation of threats of promise to use physical force." (Dkt. No. 17 at ¶ 67.) The complaint does not describe this event in any more detail. I liberally construe the complaint as asserting the following causes of action as a result of this event: (1)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

Eighth Amendment and conspiracy claims against Defendant Anctil; and (2) substantive due process and conspiracy claims against Defendant Woods.

### C. Plaintiff's prayer for relief

Plaintiff requests (1) a declaration that Defendants violated his rights under the First, Eighth and Fourteenth Amendments; (2) "compensatory damages from each one of the defendants in their individual capacity and in their official capacity" of $14 million; (3) "punitive damages from each defendant in their individual capacity and official capacity in the amount of $20 million"; (4) a permanent injunction preventing Defendants "from depriving the Plaintiff of his programs he need for parole release, and the right to adequate medical care and the right to receive his adequate rehabilitation adjustment programs and all his good time that was stolen from the Plaintiff ... and to stop deny Plaintiff his outside correspondence with acts of mail theft and stop physical assault ... and put things in his food to harm him and stop using false misbehavior reports to keep Plaintiff's false confinement and stop putting mentally ill inmates in the same cell with Plaintiff or other inmate like Charles Ramball because his child mother is his woman." (Dkt. No. 17 at A-60 FN15.)

> FN15. Page numbers refer to the handwritten page numbers in the upper right-hand corner of the complaint.

### D. Summary of Grounds in Support of Defendants' Motion

**\*15** Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 67.) Defendants argue that (1) the causes of action against Defendants Burge, Devito, Head, Hess, Labetz, Simmons and Sourwine arising out of the events of June 17-August 18, 2005, should be severed and dismissed because they are duplicative of the *Burge* action; (2) the claims against supervisory personnel in their official capacities are barred by the Eleventh Amendment; (3) Defendants Manley, Grant, Capacci and Croce have absolute immunity barring the claims regarding the denials of parole; (4) the

complaint insufficiently alleges personal involvement by Defendants Goord, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright and N. Smith; (5) the complaint does not state a cause of action against stenographers Linda Hayes, Patricia Salvage and Ashley Allen; and (6) the complaint fails to state a cause of action against Defendants Steinberg, Smith, Clafin, Corrigeux, Lewis, Premo, Bellinger, Hess, Moore, Anctil or Travers. (Dkt. No. 67-4.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); FN16 or (2) a challenge to the legal cognizability of the claim.FN17

> FN16. *See* 5C Wright & Miller, *Federal Practice and Procedure § 1363 at 112 (3d ed. 2004)* ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> FN17. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12 [b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN18] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN19] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN20]

FN18. *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) [citation omitted].

FN19. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN20. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[FN21] However, it is well established that even this liberal notice pleading standard "has its limits."[FN22] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[FN23]

FN21. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

FN22. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

FN23. *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a] [2]'s liberal requirement); *accord, Dura Pharm.,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on

summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S.Ct. 1955, 1968-69[FN24] (2007).[FN25] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

FN24. All citations to the *Bell Atlantic* decision will be to the S.Ct. cite rather than the U.S. cite because page numbers are not available for the U.S. version.

FN25. The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic,* 127 S.Ct. at 1969.

**\*16** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id* .

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic* ).[FN26] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[FN27]

FN26. *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that *"Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ( "We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible." ) [emphasis in original].

FN27. *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Bell Atlantic*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Bell Atlantic,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [FN28] There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

FN28. For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Bell Atlantic,* all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL

338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN29] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[FN30] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

FN29. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN30. *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

*17 For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN31] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[FN32] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[FN33] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[FN34] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

FN35

FN31. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

FN32. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

FN33. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

FN34. *Yang v. New York City Trans. Auth.,*

01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN35. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07-CV-0166, 2008 WL 3582743, at *2 (D.Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.,* 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00-CV-1309, 2001 WL 58834, at *11 (D.Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [FN36] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12. [FN37] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [FN38] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." [FN39]

FN36. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008)* ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

FN37. See *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8 ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN38. See *McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN39. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

### III. ANALYSIS

**A. Allegations in Paragraphs 1-27 of the Amended Complaint**

Defendants argue that any claims arising from the allegations in Paragraphs 1-27 of the complaint should be dismissed because they are duplicative of the allegations in the *Burge* case. (Dkt. No. 67-4 at 10-11.) With the exception of Paragraph 27, Defendants are correct.

As a general rule, "[w]here there are two competing lawsuits, the first suit should have priority." *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989) (quoting *Motion Picture Lab. Technicians*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

*Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir.1986)) (alteration in original). This rule "embodies considerations of judicial administration and conservation of resources" by avoiding duplicative litigation ... *Id.* at 80. We have recognized only two exceptions to the first-filed rule: (1) where the "balance of convenience" favors the second-filed action, see, e.g., *Motion Picture Lab. Technicians Loc. 780,* 804 F.2d at 19; *Remington Prods. Corp. v. Am. Aerovap, Inc.,* 192 F.2d 872, 873 (2d Cir.1951), and (2) where "special circumstances" warrant giving priority to the second suit, see, e.g., *First City Nat'l Bank,* 878 F.2d at 79.[FN40]

**\*18** *Employers Ins. of Wausau v. Fox Entertainment Group, Inc.,* 522 F.3d 271, 275 (2d Cir.2008). Claims are duplicative if they arise from the same nucleus of fact. *See Alden Corp. v. Eazypower Corp.,* 294 F.Supp.2d 233, 235 (D.Conn.2003).

Here, the claims in Paragraphs 1-26 of the operative complaint (Dkt. No. 17) are duplicative of Plaintiff's claims in Case No. 9:05-CV-1231 GTS/GJB because they allege precisely the same facts. Neither the balance of convenience nor any special circumstance warrants giving priority to this suit. Rather, giving priority to this suit would undermine the judicial resources that have already been devoted to the *Burge* action, which has proceeded past the summary judgment stage. Therefore, I recommend that the Court dismiss the claims set forth in Paragraphs 1-26 of the operative complaint without leave to amend.

Paragraph 27, however, does not arise from the same nucleus of fact as a pending claim in the *Burge* case. Although Plaintiff alleged in that action that he had filed a grievance against officer Steinberg for mail theft, sexual harassment, and threats (*Burge* Dkt. No. 7 at ¶ 30), Plaintiff did not name Steinberg as a defendant and the Court did not construe the complaint as raising a claim against Steinberg. (*Burge* Dkt. No. 52 at 8.) Here, on the other hand, Plaintiff named Steinberg as a defendant (Dkt. No. 17 at A-7) and alleged that Steinberg violated his First Amendment rights. (Dkt. No. 17 at 56.) Therefore, I recommend that Defendants' motion to dismiss the allegations in Paragraph 27 be denied.

**B. Eleventh Amendment**

Plaintiff requests damages from Defendants "in their individual capacity and in their official capacity." (Dkt. No. 17 at A-60.) Defendants argue that Plaintiff's claims against the supervisory Defendants in their official capacities are barred by the Eleventh Amendment. (Dkt. No. 67-4 at 11-12.) Defendants are more than correct: Plaintiff's claims against *all* of the Defendants in their official capacities are barred by the Eleventh Amendment.[FN40]

> **FN40.** The Court has the authority to dismiss the claims against the non-supervisory Defendants in their official capacities pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 12(h)(3).

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See* *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-06 (1984).

**\*19** The Eleventh Amendment bars suits against state officials acting in their official capacities.[FN41] All DOCS employees, not merely supervisors, are state officials for the purposes of the Eleventh Amendment. *See e.g.* *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002); *Tolliver v. N.Y. State Correctional Officers,* No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

Correctional Services."). Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) (citation omitted); *see also* Fed.R.Civ.P. 12(h)(3). Here, the face of the complaint alleges that each Defendant has an official position with DOCS or the Division of Parole. (Dkt. No. 17 at ¶ 3.) Therefore, any claims against the Defendants in their officials capacities are barred by the Eleventh Amendment. Accordingly, I recommend that the Court dismiss those claims without leave to amend.

> FN41. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989) ( "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It

is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) [citing cases].

**C. Absolute Immunity for Parole Decisions**

Plaintiff alleges that he was wrongfully denied parole twice. At Plaintiff's first parole hearing on November 8, 2005, the parole record stated that Plaintiff had pleaded guilty to three crimes. (Dkt. No. 17 at ¶ 71.) Plaintiff informed the commissioners-Defendants Vernon J. Manley, Thomas Grant, and John C. Capacci-that he had not pleaded guilty and that one of the charges had been dismissed on appeal. *Id.* Plaintiff told the commissioners that DOCS officials had imposed "numerous false disciplinary sanctions" and denied Plaintiff his programming and that Plaintiff's life was in danger if he remained in prison. (Dkt. No. 17 at ¶ 72.) Plaintiff's parole was denied. *Id.*

On November 14, 2006, Plaintiff appeared for his second parole hearing. (Dkt. No. 17 at ¶ 75.) One of the commissioners was Defendant Croce. *Id.* Plaintiff provided documentation to the commissioners that the underlying charges against him were the result of a false police report and that DOCS officials had repeatedly brought false disciplinary charges against him and denied him access to the law library. *Id.* Parole was denied. (Dkt. No. 17 at ¶ 76.)

Plaintiff claims that Defendants Manley, Grant, and Capacci violated his rights by considering false documents when denying him parole. (Dkt. No. 17 at ¶¶ 71-74 and pp. 58-59.) He claims, further, that Defendant Croce violated his rights by serving as a parole commissioner at a time when he was "knowingly and willfully" disregarding Plaintiff's complaints about his treatment. (Dkt. No. 17 at ¶¶ 75-76 and pp. 58-59.)

Defendants Manley, Grant, Capacci, and Croce argue that they are absolutely immune from liability for damages regarding their decisions to deny parole. (Dkt. No. 67-4 at 12-13.) Defendants are correct.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 24

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

**\*20** State actors are entitled to some degree of immunity from liability for damages for their official acts. Most actors receive qualified immunity, but a limited number are entitled to absolute immunity. *Scotto v. Almenas,* 143 F.3d 105, 110 (2d Cir.1998). Parole board officials are "absolutely immune from liability for damages when [deciding] to grant, deny, or revoke parole because this task is functionally comparable to that of a judge." *Scotto,* 143 F.3d at 111 (internal citations and punctuation omitted). A parole hearing officer is entitled to absolute immunity even if he acted erroneously or maliciously. *Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999). *See also Farid v. Bouey,* 554 F.Supp.2d 301, 317-18 (N.D.N.Y.2008). Moreover, injunctive relief against parole board officials is not available unless the plaintiff demonstrates that the officials violated a federal decree or that declaratory relief is not available.[FN42] *Id.* at 318.

> FN42. Plaintiff requests injunctive relief, but it is not clear from the complaint whether or not Plaintiff is requesting injunctive relief against Defendants Manley, Grant, Capacci, and Croce. (Dkt. No. 17 at A-60.) Defendants did not address the issue of immunity from claims for injunctive relief. I raise this issue *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).

Here, Plaintiff's claims against Defendants Manley, Grant, Capacci, and Croce are premised on their decision to deny him parole. These Defendants are absolutely immune. Moreover, because Plaintiff has not alleged that these Defendants violated a federal decree or that declaratory relief is unavailable, Plaintiff has not stated a claim for injunctive relief against these Defendants. Thus, I recommend that all claims against Defendants Manley, Grant, and Capacci be dismissed and that the claims arising from the denial of parole against Defendant Croce be dismissed without leave to amend.

**D. Personal Involvement**

Defendants argue that the complaint insufficiently alleges that Defendants Goord, Fischer, Roy, McLaughlin, Croce,

Stewart, LeClaire, Wright, and N. Smith were personally involved in any alleged constitutional violation. (Dkt. No. 67-4 at 13-15.)

The allegations against these defendants focus on their handling of Plaintiff's grievances and complaints. Plaintiff alleges both that these Defendants acted passively by "knowingly and willfully disregarding Plaintiff's complaints" (Dkt. No. 17 at ¶¶ 32, 34, 55, 59, 60-62, 64, 70) and that they actively interfered with his grievances and complaints by falsifying documents and "causing the filing of false misbehavior reports." (Dkt. No. 17 at ¶¶ 44, 57-59.)

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).[FN43] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN44] If the defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN45] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN46] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN47]

> FN43. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087 (1978); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

FN44. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

FN45. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

FN46. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

FN47. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323-324 (2d Cir.1986) (setting forth four prongs).

**\*21** A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord,* 119 F.Supp.2d 327, 344-45 (S.D.N.Y.2000). *See also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). District Court decisions in this Circuit have established that:

where a supervisory official like the Commissioner of Corrections or a prison Superintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable. On the other hand, where a supervisor receives an inmate grievance or other complaint and responds to it, the supervisor may be liable ... At first glance, these holdings might seem counter-intuitive, as giving supervisors an incentive to inaction in order to avoid personal liability. However, it must be noted that the Commissioner and individual prison Superintendents receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them. Thus, if mere receipt of a

letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.

*Walker v. Pataro,* No. 99 CIV. 4607, 2002 WL 664040, at \*12-13 (S.D.N.Y. Apr. 23, 2002) (internal citations omitted) (collecting and analyzing decisions) [FN48].

FN48. The undersigned will provide a copy of the *Walker v. Pataro* decision to Plaintiff in light of the Second Circuit's recent decision in *Lebron v. Sanders,* 557 F.3d 76, 2009 WL 399215 (2d Cir. Feb. 19, 2009).

Here, as discussed above, Plaintiff alleges both that the supervisory Defendants ignored his complaints and that they took action by falsifying documents. I recommend that the claims that Defendants merely ignored complaints be dismissed without leave to amend. Regarding Plaintiff's claims that the supervisory Defendants falsified documents in response to grievances, I find those allegations conclusory. The complaint does not include any facts supporting those allegations, relying instead on legal conclusions masquerading as factual conclusions. Such conclusory allegations do not state a claim. *Rolon v. Henneman,* 517 F.3d 140, 148-49 (2d Cir.2008). I therefore recommend that these claims be dismissed with leave to amend.

**E. Stenographers**

Plaintiff has named stenographers Patricia Salvage, Linda A. Hayes, and Ashley Allen as defendants. (Dkt. No. 17 at ¶¶ 33, 77-79.) In their motion to dismiss, Defendants assert that Plaintiff "does not allege that defendant stenographers altered or erred in transcribing exactly what took place at the hearings. Rather, it appears that plaintiff is alleging that they violated his rights by memorializing the purported falsity of the underlying allegations and the alleged wrongdoing of the hearing officers." (Dkt. No. 67-4 at 15.) Contrary to Defendants' assertion, the complaint does allege that the stenographers altered the transcripts. For example, Plaintiff alleges that Defendant

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

Salvage "falsified the transcribed (*sic* ) of the Tier Three Hearing Transcript ... to contempt [an] Article 78 Procedure." (Dkt. No. 17 at ¶ 33.) He alleges that Defendant Hayes' transcript of the July 27, 2006, disciplinary hearing "is all a falsification ... in a effort to cover-up staff misconduct and this transcribed (*sic* ) .... is false information" that will "prevent the Acting Supreme Court Justice of Franklin County Court from performing a lawful duty with this falsification of the records of her transcribed information that is false." (Dkt. No. 17 at ¶ 77.) He alleges that Defendant Allen prepared a "false transcribed document in a effort to cover-up staff misconduct ... to obstruct ... the Supreme Court Justice in their function with Plaintiff Article 78 proceeding ... to prevent the court from performing a lawful duty with the true and accurate transcribed documents of this Tier Three Hearing." (Dkt. No. 17 at ¶ 78.) It appears to the undersigned that Plaintiff is, indeed, alleging that the stenographers falsified transcripts and that they did so to prevent a New York state court from reviewing Plaintiff's disciplinary sentences in Article 78 proceedings.

**\*22** Construed accordingly, the complaint appears to allege that the stenographers violated Plaintiff's procedural and substantive due process rights and his right of access to the courts. Defendants argue that Plaintiff has failed to state a claim against the stenographers. (Dkt. No. 67-4 at 15-16.) Defendants are correct.

1. *Procedural Due Process*

The Supreme Court has held that in the context of a prison disciplinary hearing, procedural due process requires that (1) the inmate receive advance written notice of the disciplinary charges; (2); the inmate be allowed to call witnesses and present documentary evidence; and (3) the fact finder prepare a written statement describing the evidence relied upon and the reasons for the determination. *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974). A transcript of the disciplinary hearing is not constitutionally required. *Dixon v. Goord,* 224 F.Supp.2d 739, 744-45 (S.D.N.Y.2002). Courts have repeatedly held that the Fourteenth Amendment does not require any administrative review of disciplinary convictions [FN49]. Moreover, courts have repeatedly held that, where such administrative review is conducted, the Fourteenth

Amendment does not require the review of (much less the existence of) a tape recording or transcript of the disciplinary hearing [FN50]. Even where a party claims that a transcript was deliberately tampered with, there is no procedural due process violation if the state provides adequate post-deprivation remedies. *Curro v. Watson,* 884 F.Supp. 708, 717-19 (E.D.N.Y.1995) (prisoner who alleged that court reporters deliberately altered the transcript of his criminal trial did not state procedural due process claim because New York provides a procedure for challenging inaccuracies in trial transcripts). In New York, a prisoner who disputes the accuracy of the transcript of a disciplinary hearing may raise that issue in an Article 78 proceeding. N.Y. C.P.L.R. § 7804(d) (McKinney 1994).

FN49. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 563-570 (1974) (not listing right to appeal among due process requirements of disciplinary hearing), *accord, Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004); *Amato v. Ward,* 41 N.Y.2d 469, 473, 393 N.Y.S.2d 934, 937 (N.Y.1977) ("This type of administrative review [of prison disciplinary hearings pursuant to New York State regulations] is not required by the Federal Constitution.") (*citing Wolff v. McDonnell), accord, Giovanni v. Lynn,* 48 F.3d 908, 911 n. 7 (5th Cir.1995) ("Nor, indeed, is provision for appeal, following an [otherwise] adequate [disciplinary] hearing, required under the more stringent standards of *Wolff v. McDonnell* ....").

FN50. *See, e.g., Dixon v. Goord,* 224 F.Supp.2d 739, 744 (S.D.N.Y.2002) ("According to *Wolff,* the only written or audio record of a disciplinary hearing that must be maintained to comply with minimal due process standards is a written statement describing the evidence relied upon and the reason for the determination.... The Court therefore agrees with Defendants that any alleged defect in the tape would not rise to the level of a constitutional violation."); *Cherry v. Selsky,* 99-CV-4636, 2000 U.S. Dist. LEXIS 9451, at *15-16 (S.D.N.Y. July 7, 2000) ("This allegation [that defendant failed to review the audio tape recording of the disciplinary hearing, prior to affirming the decision of the hearing officer], without more, is insufficient to state a claim for

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

violation of a liberty interest."); *Afrika v. Selsky,* 750 F.Supp. 595, 600, 602 (S.D.N.Y.1990) (granting defendant's motion for summary judgment because, among other reasons, plaintiff had no liberty interest in the review of an audio tape of his disciplinary hearing as part of his administrative appeal, stating that "because both the hearing and review reached the minimal standards, [defendant] did not violate [plaintiff's] liberty interest in not being confined without due process"); *Brito v. Coughlin,* No. 88-CV-8064, 1989 WL 241718, at *2 (S.D.N.Y. July 31, 1989) ("[The due process clause] does not require, however, that a transcript be made or given to an inmate after a disciplinary hearing.").

Thus, because Plaintiff was not constitutionally entitled to a transcript and because he could have challenged any deficiencies in the transcripts in his Article 78 proceeding, he has not stated a claim. I therefore recommend that the Court dismiss Plaintiff's procedural due process claims against the stenographers without leave to amend.

2. *Substantive Due Process/Access to Courts*

Construed liberally, Plaintiff's complaint raises substantive due process and First Amendment access to the courts claims against the defendant stenographers. I will analyze these claims together. The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon v. Burch,* 494 U.S. 113, 125 (1990) (internal quotations marks and citation omitted). "Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal quotations marks and citations omitted).

**\*23** The first step in a substantive due process analysis is to identify the precise constitutional right at stake. *Lowrance,* 20 F.3d at 537 (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 123-25 (1992)). "Substantive due

process embraces an individual's right of access to the courts." *Curro,* 884 F.Supp. at 719. Prisoners' right to access to the courts includes proceedings to "attack their sentences, directly or collaterally, and ... to challenge the conditions of their confinement." *Lewis v. Casey,* 518 U.S. 343, 355 (1996). "[A]n Article 78 petition that challenges an inmate's ... SHU confinement is an action for which access to the courts is constitutionally guaranteed .... [because it] relates directly to the conditions of confinement." *Collins v. Goord,* 438 F.Supp.2d 399, 417 (S.D.N .Y.2006). Plaintiff claims that the defendant stenographers thwarted his efforts to pursue Article 78 proceedings by providing false transcriptions. (Dkt. No. 17 at ¶¶ 33, 77, 78.) Thus, the constitutional right at stake is the right of access to the courts.

In order to state a claim for denial of access to the courts, Plaintiff must allege that the stenographers "hindered his efforts to pursue a legal claim." *Collins,* 438 F.Supp.2d at 416 (citing *Lewis,* 518 U.S. at 351). Similarly, in order to state a cause of action for substantive due process, a plaintiff must allege that he suffered "some tangible harm." *Curro,* 884 F.Supp. at 720. *See also Collins,* 438 F.Supp.2d at 415-16 (plaintiff alleging violation of right to access to the courts must allege an "actual injury."). Plaintiff has not alleged any tangible harm. Plaintiff does not allege that he was not successful in his Article 78 proceedings. Even if he was unsuccessful in those proceedings, he does not allege that any such failure stemmed from the transcriptions. *Compare Collins,* 438 F.Supp.2d at 417 (prisoner adequately alleged tangible harm where he alleged that his Article 78 proceeding was dismissed when prison officials failed to provide him with necessary copies of documents). Therefore, Plaintiff has not stated a substantive due process or First Amendment access to the courts claim against Defendants Salvage, Hayes, or Allen and I recommend that these claims be dismissed with leave to amend [FN51]

FN51. Defendants also argue that any claim against the stenographers is barred by the doctrine of qualified immunity. (Dkt. No. 67-4 at 15-16.) In light of my finding that Plaintiff has not stated a claim, I have not addressed this argument.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

**F. Failure to state a cause of action against Defendants Steinberg, B. Smith, Clafin, Corrigeux, Lewis, Premo, Bellinger, Hess, Moore, Travers, Anctil, or McDonald**

Defendants argue that Plaintiff has failed to state a claim against Defendants Steinberg, B. Smith, Clafin, Corrigeux, Lewis, Premo, Bellinger, Hess, Moore, Travers, Anctil, or McDonald. (Dkt. No. 67-4 at 16-23.)

1. *Bellinger and Hess*

Defendants argue that Plaintiff has failed to state a claim against Defendants Bellinger and Hess. (Dkt. No. 67-4 at 16-17.) I disagree.

Regarding Defendants Bellinger and Hess, the surviving paragraphs of the complaint allege that on August 22, 2005, Plaintiff was removed from his cell and escorted to the medical unit to give a urine sample. (Dkt. No. 17 at ¶ 28.) This sample was required because of a report by Defendant Hess. *Id.* Plaintiff had not seen Hess for two or three weeks prior to August 22. *Id.* As Plaintiff was being escorted, Defendant Bellinger told the escort officers to be sure that Plaintiff's urine test was positive. *Id.* Plaintiff asserts that Hess' report and Bellinger's comment were made in retaliation for Plaintiff submitting a grievance and for "beating" a July 20, 2005, misbehavior report. *Id.*

*24 Defendants argue that Plaintiff has failed to state a retaliation claim against Defendant Hess because (1) Plaintiff was not, in fact, deterred from filing grievances, writing letters of complaint, or filing lawsuits; and (2) the allegations regarding a possible retaliatory motive are implausible [FN52]. (Dkt. No. 67-4 at 16-17.)

> FN52. Defendants also argue, cursorily and without citation to authority, that these claims should have been raised in an amended complaint in the *Burge* case.

In order to state a cause of action for retaliation, a plaintiff must plead facts plausibly suggesting that (1) the speech or conduct at issue was protected; (2) the defendant took

adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)).

Defendants argue that Plaintiff has not properly alleged that Hess took adverse action because the "complaint makes it clear that [Plaintiff] was not deterred, in any way from filing grievances, writing letters of complaint, o[r] filing new actions in the federal District Courts for relief of his alleged grievances." (Dkt. No. 67-4 at 17.) Defendants essentially argue that this Court should apply a *subjective* test: was Plaintiff actually deterred? However, the Second Circuit defines " 'adverse action' *objectively,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), *superceded by* 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003) (emphasis in original). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill,* 389 F.3d at 381. The issue of whether the facts "demonstrate that [a defendant's actions] would deter a reasonable inmate from pursuing grievances" should not be determined at the motion to dismiss stage. Rather, a prisoner plaintiff should be allowed "the opportunity to develop [those] facts." *Davis,* 320 F.3d at 354 (citing *Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002) (abrogated on other grounds by *Porter v. Nussle,* 534 U.S. 516 (2002))). Therefore, dismissal is not appropriate on this ground at this stage in the litigation.

Defendants argue that Plaintiff cannot establish a causal connection between Plaintiff's defense of the disciplinary charge and Hess' actions because Plaintiff "admits that he had not seen defendant for two or three weeks" before the urine test. (Dkt. No. 67-4 at 16.) The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir.2001). The Second Circuit has, however,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

found that lapses of time far longer than two or three weeks are sufficient to support a cause of action for retaliation. *Espinal v. Goord,* 554 F.3d 216, 228 (2d Cir.2009) (the "passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers ... is sufficient to support an inference of a causal connection"); *Gorman-Bakos,* 252 F.3d at 555 (lapse of five months between protected activity and retaliation may show a causal connection); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45-46 (2d Cir.1980) (lapse of eight months between an EEOC complaint and retaliatory act indicated a causal connection). As explained above, *Rule 8* requires a plaintiff to provide "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Bell Atlantic,* 127 S.Ct. at 1965. Plaintiff alleges that Hess wrongfully interfered with his right to wear a colored Tsalot-Kob, that Hess issued a false misbehavior report after that incident, and that Plaintiff was found not guilty of the disciplinary charges. (Dkt. No. 17 at ¶¶ 12-14.) It is not implausible that, based on these events, Hess would have the motive to retaliate. Moreover, the "two or three" weeks that Plaintiff alleges had passed since he last saw Defendant Hess appear to be the two or three weeks between the time Plaintiff was found not guilty of the disciplinary charges on July 23, 2005 (Dkt. No. 17 at ¶ 14), and the encounter on August 22. These facts plausibly suggest that Defendant Hess took his first opportunity to retaliate [FN53]. Accordingly, Plaintiff has stated a claim for retaliation against Defendant Hess and I recommend that Defendants' motion to dismiss this claim be denied.

> FN53. By finding that such an allegation is "plausible," I express no opinion on whether this allegation can be established by evidence and/or survive a more stringent inquiry.

**\*25** Defendants argue that Plaintiff has not stated a retaliation claim against Defendant Bellinger because "insulting, disrespectful, or sarcastic comments are considered *de minimus,* and are not actionable." (Dkt. No. 67-4 at 17.) Defendants are correct that insulting comments generally do not rise to an actionable level. *Davis,* 320 F.3d at 353. If Defendant Bellinger were simply a correctional officer who had made the comment

to other officers, the undersigned would be inclined to agree that the claim should be dismissed. However, the complaint alleges that Defendant Bellinger was the Deputy Superintendent of Auburn Correctional Facility. (Dkt. No. 17 at A-5.) As such, the complaint construed liberally alleges that the Deputy Superintendent of the facility ordered subordinate officers to falsify the results of a drug test. This is more than a mere insulting comment. Accordingly, I recommend that Defendants' motion to dismiss the retaliation claim against Defendant Bellinger be denied.

*2. Steinberg, B. Smith, and Claflin*

Defendants argue that Plaintiff has failed to state a cause of action against Defendants Steinberg, B. Smith, or Claflin. (Dkt. No. 67-4 at 17-18.) I find that Defendants are partially correct.

Regarding Defendants Steinberg, B. Smith and Claflin, Plaintiff alleges that while he was giving the urine sample ordered by Hess, Defendants Steinberg, Smith and Claflin searched his cell. (Dkt. No. 17 at ¶ 29.) When Plaintiff returned to his cell, his legal documents and belongings were on the floor and his three Tsalot-Kobs were in the toilet. *Id.* A cell search contraband receipt signed by Steinberg, Smith and Claflin stated that tobacco and marijuana had been found in the cell. *Id.* On August 23, 2005, Plaintiff received a misbehavior report charging him with possession of a controlled substance. (Dkt. No. 17 at ¶ 30.) Plaintiff was found guilty and sentenced to 12 months' SHU confinement, 12 months' loss of good time credits, and 12 months' loss of recreation, commissary, package and telephone privileges. *Id.*

Construed liberally, the complaint alleges that these Defendants violated Plaintiff's First, Fourth and Fourteenth Amendment rights. Defendants have not moved to dismiss Plaintiff's allegation that these Defendants violated his First Amendment rights by throwing his religious headgear in the toilet. I find that Plaintiff's First Amendment claim is sufficient to withstand a *sua sponte* review pursuant to *28 U.S.C. § 1915(e)(2)(B).* In *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988), the Second Circuit held that to assess a free

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest." The complaint sufficiently alleges, for the purposes of *sua sponte* review, that the wearing of the Tsalot-Kob is a part of Plaintiff's sincerely held Rastafarian beliefs, that throwing Plaintiff's Tsalot-Kobs in the toilet infringed that belief, and that there was no legitimate penological reason for throwing the Tsalot-Kobs in the toilet. Therefore, I recommend that Defendants be directed to answer this claim.

**\*26** Defendants argue that Plaintiff has failed to state a cause of action against Defendants B. Smith, Steinberg, and Claflin because (1) prisoners have no Fourth Amendment right of protection against unreasonable searches; and (2) prisoners have no constitutional right to be free from being falsely accused. (Dkt. No. 67-4 at 17-18 .) Defendants are correct, with the exception of the false accusation claim against Defendant Steinberg.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches ... shall not be violated." U.S. Const. amend IV. "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 619 (1989) [internal quotation marks and citation omitted]. "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests ." *Skinner,* 489 U.S. at 619 [internal quotation marks and citations omitted]. In so doing, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559 (1979) [citations omitted], *accord, Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). The Fourth Amendment's proscription against unreasonable searches does not apply *at all* within the confines of a prison cell. *Hudson v. Palmer* 468 U.S. 517, 526 (1984); *see also Tinsley v. Greene,* 95-CV-1765, 1997 WL 160124, at \*7 (N .D.N.Y.

March 31, 1997) (Pooler, J., adopting Report-Recommendation of Homer, M.J.) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights."). Therefore, Plaintiff has not stated a Fourth Amendment claim against Defendants Steinberg, B. Smith or Claflin and I recommend that this claim be dismissed without leave to amend.

Plaintiff has not stated a Fourteenth Amendment due process claim against Defendants Smith or Claflin. "[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ); *accord, Pittman v. Forte,* 01-CV-0100, 2002 WL 31309183, \*5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.). In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing .[FN54]" *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862. The complaint does not allege that Smith or Claflin acted in retaliation. Read extremely broadly, however, it does suggest that Steinberg had a retaliatory motive becaues it states that four days prior to the search, Plaintiff filed a grievance against Steinberg. (Dkt. No. 17 at ¶ 27.) Therefore, I recommend that the due process claims be dismissed as to Defendants Smith and Claflin with leave to amend but that Defendants' motion to dismiss the false accusation claim against Defendant Steinberg be denied.

FN54. Plaintiff alleges that he was not allowed to present a defense at the disciplinary hearing. (Dkt. No. 17 at ¶ 30.)

3. *Corrigeux, Premo, and D. Wood*

**\*27** The complaint alleges that on April 29, 2006, Plaintiff was moved into a cell with an inmate who had a long history of drug use. (Dkt. No. 17 at ¶ 3 8.) On May 7, 2006, Defendant Premo ordered Plaintiff to submit a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

random urine specimen. Premo said "Albany" had made the request. (Dkt. No. 17 at ¶ 36.) On May 9, 2006, Plaintiff and his cell mate were both ordered by a non-defendant correctional officer to submit a random urine specimen. (Dkt. No. 17 at ¶ 37.) Plaintiff alleges that the reason for the second test was to use his cell mate's specimen "to give me a false positive of cocaine and cannabinoid." (Dkt. No. 17 at ¶ 38.)

On May 12, 2006, Defendant Wood issued misbehavior reports charging Plaintiff and his cell mate with use of controlled substances. Plaintiff alleges that Defendant Wood listed the date that he took the specimens as May 11 rather than May 9 so that Plaintiff's cell mate would have his misbehavior report dismissed as a reward for helping to set up Plaintiff. (Dkt. No. 17 at ¶ 39.) As part of his defense at the ensuing disciplinary hearing, Plaintiff requested a copy of the urinalysis test. Plaintiff alleges that Defendants Premo and Corrigeux falsified the document to make it appear that Corrigeux, rather than "Albany," had requested the test. (Dkt. No. 17 at ¶ 40.) Plaintiff was found guilty and sentenced to six months' SHU confinement, six months' lost good time, and six months' lost package, commissary, recreation, and telephone privileges. *Id.*

I have construed the complaint as asserting (1) a Fourth Amendment claim, a due process claim, and a conspiracy claim against Defendant Premo; and (2) due process and conspiracy claims against Defendants D. Wood and Corrigeux.

Defendants have not moved to dismiss the Fourth Amendment claim against Defendant Premo. I find that the claim is sufficient to withstand initial review pursuant to 28 U.S.C. § 1915(e)(2)(B). Urinalysis testing constitutes a search subject to the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 614 (1989); *Harris v. Keane,* 962 F.Supp. 397, 407 (S.D.N.Y.1997). However, if the intrusion into one's privacy is found to be minimal, the expectation of privacy is minimal, and there is a governmental reason advanced supporting a search, then the search will not violate one's Fourth Amendment rights. It is equally well-established that a prisoner's right to be free from unreasonable searches is diminished once he or she steps through the

prison door. *Harris,* 962 F.Supp. at 407. Pursuant to New York Regulations, as long as the testing is not done with an intent to harass, a corrections officer may order an inmate to submit to urine testing "[w]hen correctional staff has reason to believe the inmate has used drugs ..., when correctional staff receives information from a source that the inmate is currently under the influence of or has recently used ... drugs ..., [or] as part of a computer-generated program for random testing of all inmates [or those] inmates who have been found guilty of drug ... related misconduct in the previous two-year period." N.Y. Comp.Codes R. & Regs. tit. 7, § 1020.4(a)(1), (4), (7), (8); *see also Rodriguez v. Coughlin,* 795 F.Supp. 609 (W.D.N.Y.1992) (holding that two random drug tests within a twelve-month period, both producing negative results, did not constitute a constitutional violation). Here, the complaint alleges that Defendant Premo told Plaintiff that the May 7, 2006, drug test was a "random request made by Albany," but that at the disciplinary hearing Premo and Corrigeux represented that Corrigeux had requested the test. (Dkt. No. 17 at ¶¶ 36, 39.) These facts raise a sufficient inference of an intent to harass to survive initial review. The undersigned expresses no opinion about whether the evidence will support these facts or whether this allegation can withstand a more stringent inquiry.

**\*28** Defendants argue that the due process and conspiracy claims against Defendants Corrigeux, Premo, and D. Wood must be dismissed because (1) prisoners have no right to be free from being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest; and (2) under the intracorporate conspiracy doctrine, DOCS officials are legally incapable of conspiring together. (Dkt. No. 67-4 at 19-20.) Defendants are correct.

As discussed above, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ); *accord, Pittman v. Forte,* 01-CV-0100, 2002 WL 31309183, *5 (N.D.N.Y. July 11, 2002)* (Sharpe, M.J.). In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing [FN55]." *Williams v. Smith,* 781 F.2d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

319, 324 (2d Cir.1986). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more, such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862; *accord, Murray v. Pataki*, 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

> FN55. The hearing was conducted by Defendant Bezio, but the complaint does not allege any facts suggesting that Defendant Bezio conducted the hearing improperly.

None of the facts alleged in the complaint plausibly suggest that Defendants Premo, Corrigeux, or D. Wood acted in retaliation for Plaintiff's exercise of a constitutional right. Therefore, I recommend that all claims against these officers regarding the filing of false reports be dismissed with leave to amend.

The complaint alleges that Defendants are all DOCS employees. (Dkt. No. 17 at 1-A9.) The intra-agency conspiracy doctrine precludes conspiracy claims "against officers, agents, or employees of a single corporate entity." *Farid v. Bouey*, 554 F.Supp.2d 301, 324 (N.D.N.Y.2008) (granting summary judgment where prisoner claimed conspiracy between Board of Parole and various BOP commissioners to deprive him of his civil rights). "The intra-corporate conspiracy doctrine provides that with exceptions not now presented, an entity cannot conspire with one or more of its employees, acting within the scope of employment, and thus a conspiracy claim conceptually will not lie in such circumstances." *Id.* (citing *Everson v. New York City Transit Auth.*, 216 F.Supp.2d 71, 75-76 (E.D.N.Y.2002)). Therefore, I recommend that all conspiracy charges be dismissed without leave to amend.

4. *Lewis*

On June 17, 2006, Defendant B. Lewis ordered Plaintiff to submit a urine specimen. (Dkt. No. 17 at ¶ 41.) Plaintiff, citing a three-hour time limit to submit specimens, said he

would submit the specimen when he finished eating. *Id.* Defendant Lewis then said to another officer "Fuck him ... we will just put down [that] he [is] refusing to submit his urine specimen." *Id.* No one returned to take Plaintiff's specimen. *Id.* On June 22, 2006, Plaintiff received a misbehavior report charging him with refusing a direct order. (Dkt. No. 17 at ¶ 42.) I have construed the complaint as asserting a due process claim and a conspiracy claim against Defendant Lewis.

*29 Defendants move to dismiss the claims against Lewis on the same grounds as asserted regarding Defendants Corrigeux, Premo and Wood. (Dkt. No. 67-4 at 18, 20.) As with those Defendants, the complaint fails to state a due process claim against Defendant Lewis because Plaintiff has not alleged any facts plausibly suggesting that Lewis acted with a retaliatory motive. Therefore, I recommend that this claim be dismissed with leave to amend. Moreover, the complaint fails to state a claim for conspiracy because Lewis and the other officer are both DOCS employees. Therefore, I recommend that this claim be dismissed without leave to amend.

5. *Moore*

The complaint alleges that on June 29, 2006, Plaintiff found glass in his food. (Dkt. No. 17 at ¶ 43.) Plaintiff reported this to the housing unit supervisor, Defendant Moore. *Id.* Plaintiff requested medical care and a new food tray, but Moore refused. *Id.* I have construed the complaint as asserting an Eighth Amendment medical care claim against Defendant Moore.

Defendants argue that Plaintiff has not stated an Eighth Amendment claim against Defendant Moore because Plaintiff "did not know whether or not he swallowed glass, and he alleges no subjective facts from which to infer that he was in 'serious medical need' on June 29 or June 30, 2006 ... and thus, that Sergeant Moore ... knew of, and disregarded, an excessive risk to his health or safety." (Dkt. No. 67-4 at 21.)

To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998). To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord*, Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1996), *cert. denied*, 513 U.S. 1154 (1995); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998).

Here, Plaintiff has not sufficiently alleged that Moore was deliberately indifferent to a serious medical need. Plaintiff has not alleged that he had a serious medical need. He alleges that while eating his food he felt a piece of glass in his mouth. He removed the glass, inspected his food, and found three more pieces of glass. (Dkt. No. 17 at ¶ 43.) He does not allege that he swallowed glass or that he was cut by the piece of glass that he placed in his mouth. Rather, he merely alleges that "he did not know if any of the glass went down his belly." *Id.* While his fear that he *may* have swallowed glass is understandable, that fear, without more, is insufficient to constitute a serious medical need for Eighth Amendment purposes because fear, in and of itself, will not produce death, degeneration, or extreme pain. Given the lack of a serious medical need, the complaint does not allege facts plausibly suggesting that Moore was deliberately indifferent. Moreover, there is no allegation that Moore placed the glass in Plaintiff's food. *Cf.* Robles v. Coughlin, 725 F.2d 12 (2d Cir.1983) (allegation that defendants contaminated prisoners' food with glass sufficiently stated an Eighth Amendment claim to withstand initial review). Therefore, I recommend that the Eighth Amendment medical care claim against Defendant Moore be dismissed with leave to amend.

6. *Travers*

**\*30** Plaintiff complains that Defendant Travers denied him medical care on two occasions: (1) on June 30, 2006, after he discovered glass in his food (Dkt. No. 17 at ¶ 44); and (2) in May 2007, when Plaintiff reported bloody bowel movements. (Dkt. No. 17 at ¶¶ 58, 65.) Explicitly declining to move to dismiss the claims arising from the May 2007

incident (Dkt. No. 67-4 at 22, n. 1), Defendants move to dismiss Plaintiff's Eighth Amendment claim regarding the June 30 glass incident. (Dkt. No. 67-4 at 21.)

Regarding that incident, the complaint alleges that on June 30, 2006, Nurse Travers gave Plaintiff a form to fill out to request medical care. (Dkt. No. 17 at ¶ 44.) Travers, without examining Plaintiff, told him there was nothing wrong with him. *Id.*

Defendants argue that Plaintiff has failed to state an Eighth Amendment claim against Nurse Travers because (1) Plaintiff has not alleged a serious medical need; (2) prisoners do not have a right to the treatment of their choice, and an inmate's disagreement over proper treatment does not create a constitutional claim; and (3) an allegation of medical negligence does not raise a constitutional claim. (Dkt. No. 67-4 at 21-22.)

As discussed above with regard to Defendant Moore, Plaintiff has not alleged that he suffered a serious medical need after discovering glass in his food. Therefore, I recommend that the Eighth Amendment claim against Defendant Travers arising from the events described in ¶ 44 of the complaint be dismissed with leave to amend.

7. *Anctil*

The complaint alleges that on May 19, 2007, Woods sent Defendant J. Anctil to escort "Plaintiff to a hearing room and intimidation of threats of promise to use physical force." (Dkt. No. 17 at ¶ 67.) Although this allegation is extremely unclear, I have construed the complaint as alleging that Defendant Anctil violated Plaintiff's Eighth Amendment rights and conspired with Defendant Woods.

Defendants move to dismiss Plaintiff's claims against Defendant Anctil. Defendants argue that verbal harassment, abuse and threats do not amount to violations of constitutional rights. (Dkt. No. 67-4 at 22.) Defendants are correct. "It is well established that mere threatening language and gestures of a custodial officer do not ... amount to constitutional violations." Alnutt v. Cleary, 913

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

F.Supp. 160, 165 (W.D.N.Y.1996) (punctuation omitted). The complaint alleges that Anctil used "intimidation" and "threats" and "promises" of physical force, not that Anctil actually harmed Plaintiff. Therefore, the complaint fails to state an Eighth Amendment claim against Defendant Anctil and I recommend that the claim be dismissed with leave to amend.

Further, as discussed above, it is legally impossible for DOCS employees to be found liable for conspiring together. Woods and Anctil are both DOCS employees. Therefore, the complaint fails to state a conspiracy claim against Defendant Anctil and I recommend that the claim be dismissed without leave to amend.

8. *McDonald*

**\*31** The complaint alleges that on April 30, 2007, Plaintiff filed a complaint with Defendant Woods stating that Defendant McDonald had used racially abusive language to Plaintiff and denied him food tray. (Dkt. No. 17 at ¶ 63.) On May 9, 2007, Plaintiff filed a grievance against Defendant McDonald for spitting in his coffee cup, interfering with a medical interview, and using racial and profane language. (Dkt. No. 17 at ¶ 62.) I have construed the complaint as alleging that Defendant McDonald violated Plaintiff's Eighth Amendment medical care and conditions of confinement rights.

In the Second Circuit, a prisoner's allegation that prison officials served unsanitary, spoiled or contaminated food is sufficient to state an Eighth Amendment claim, so long as he or she alleges that he or she suffered a "distinct and palpable injury". *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983); *Harris v. Ashlaw,* No. 9:07-CV-0358, 2007 WL 4324106, at * 5 (N.D.N.Y. Dec. 5, 2007). Here, Plaintiff has not alleged that he suffered any injury as a result of being denied food or drinking the allegedly contaminated coffee. Therefore, Plaintiff has failed to state an Eighth Amendment claim against Defendant McDonald arising from this incident and I recommend that the claim be dismissed with leave to amend [FN56].

FN56. Defendants cite two unpublished Northern

District of New York cases for the proposition that "Plaintiff's conclusory allegation ... that [McDonald] spit into his coffee cup is insufficient to state a constitutional ... claim." (Dkt. No. 67-4 at 23.) Neither of the cases cited by Defendants found that a prisoner's allegation that a correctional officer spit into his food failed to state an Eighth Amendment claim. Rather, both of those cases were decided on summary judgment and the Court dismissed the claims because the prisoner failed to *substantiate* them with evidence. *Chavis v. Kienert,* No. 9:03-CV-0039, 2005 U.S. Dist. LEXIS 41920, at *65-66 (N.D.N.Y. Sept. 30, 2005); *Zimmerman v. Seyfert,* No. 9:03-CV-1389, 2007 U.S. Dist. LEXIS 52388, at *80-81 (N.D.N.Y. July 19, 2007). Defendants provided copies of the decisions to Plaintiff in accordance with Local Rule 7.1(a)(1). The undersigned will provide a copy of the *Harris v. Ashlaw* opinion to Plaintiff in light of the Second Circuit's recent decision in *Lebron v. Sanders,* 557 F.3d 76, 2009 WL 399215 (2d Cir. Feb. 19, 2009).

Plaintiff's bare allegation that McDonald interfered with a medical interview is insufficient to state an Eighth Amendment medical care claim. As discussed above, a plaintiff asserting such a claim must allege that he or she suffered from a serious medical condition. Plaintiff has made no such allegation. It is not even clear from the complaint with what type of medical interview McDonald allegedly interfered. Therefore, I recommend that the Eighth Amendment medical care claim against Defendant McDonald be dismissed with leave to amend.

Regarding Plaintiff's claim that McDonald used "racial and discrimination and indecent profane language," as noted above, "[i]t is well established that mere threatening language and gestures of a custodial officer do not ... amount to constitutional violations." *Alnutt v. Cleary,* 913 F.Supp. 160, 165 (W.D.N.Y.1996) (punctuation omitted). Therefore, I recommend that this claim be dismissed without leave to amend.

**ACCORDINGLY,** it is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 67) be *GRANTED IN PART AND DENIED IN PART;*

**RECOMMENDED** that the following claims be dismissed without leave to amend: (1) all claims against Defendants Devito, Head, Labetz, Simons, and Sourwine; (2) the First Amendment religion claims alleged in ¶ 1-26 of the complaint against Defendant Hess, because they are duplicative of the claims in Case No. 9:05-CV-1231(GTS/GJD); (3) all claims against Defendant Burge; (4) all claims against Defendants in their official capacities; (5) all claims against Defendants Manley, Grant, and Capacci; (6) the claim against Defendant Croce regarding his decision to deny Plaintiff parole; (7) the claims against Defendants Goord, Burge, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright, and N. Smith alleging that they ignored complaints and grievances; (8) the procedural due process claims against Defendants Salvage, Hayes, and Allen; (9) the Fourth Amendment claim against Defendants Steinberg, B. Smith, and Claflin arising from their August 22, 2005, search of Plaintiff's cell; (10) the conspiracy claims against Defendants Premo, D. Wood, and Corrigeux arising from the May 2006 drug tests; (11) the conspiracy claim against Defendant Lewis arising from the June 17, 2006, request for a urine sample; (12) the conspiracy claim against Defendants R. Woods and Anctil arising from Anctil's May 19, 2007, threats; and (13) the claim that Defendant McDonald used "racial and discrimination and indecent and profane language."

***32 RECOMMENDED** that the following claims be dismissed with leave to amend: (1) the claims against Defendants Goord, Fischer, Roy, McLaughlin, Croce, Stewart, LeClaire, Wright, and N. Smith alleging that they falsified documents in response to Plaintiff's grievances; (2) the substantive due process and First Amendment access to the courts claims against Defendants Salvage, Hayes, and Allen; (3) the due process claim against Defendants B. Smith and Claflin arising from the August 23, 2005, misbehavior report; (4) the due process claim against Defendants Premo, D. Wood, and Corrigeux arising from the May 2006 drug tests; (5) the due process claim against Defendant Lewis arising from the June 22, 2006, misbehavior report; (6) the Eighth Amendment medical care claims against Defendants Moore and

Travers arising from Plaintiff's discovery of glass in his food; (7) the Eighth Amendment claims arising from Anctil's May 19, 2007, threats; (8) the Eighth Amendment conditions of confinement claim against Defendant McDonald arising from the denial of food and spitting in Plaintiff's coffee; and (9) the Eighth Amendment medical care claim against Defendant McDonald arising from her interference with Plaintiff's medical interview.

**RECOMMENDED** that Defendants be directed to answer the following claims: (1) the retaliation claim against Defendant Hess arising from the August 22, 2005, drug test; (2) the retaliation claim against Defendant Bellinger arising from the August 22, 2005, drug test; (3) the First Amendment claim against Defendants Steinberg, B. Smith, and Claflin arising from their August 22, 2005, search of Plaintiff's cell; (4) the due process claim against Defendant Steinberg arising from the August 23, 2005, misbehavior report; (5) the Fourth Amendment claim against Defendant Premo arising from the May 7, 2006, drug test; and (6) the Eighth Amendment medical care claim against Defendant Travers arising from Plaintiff's May 2007 report of bloody bowel movements.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [FN57]

> FN57. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)
(Cite as: 2009 WL 3124424 (N.D.N.Y.))

and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n. 8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v.. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

N.D.N.Y.,2009.
Excell v. Woods

Slip Copy, 2009 WL 3124424 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Anthony SHULER, Plaintiff,
v.
BROWN, et al., Defendant.
**No. 07-CV-0937.**

March 23, 2009.

West KeySummary
**Civil Rights 78 ⚷       1395(7)**

78 Civil Rights
    78III Federal Remedies in General
        78k1392 Pleading
            78k1395 Particular Causes of Action
                78k1395(7) k. Prisons and Jails; Probation
and Parole. Most Cited Cases
An inmate failed to state a § 1983 claim for a violation of
his right to privacy. The inmate did not allege precisely
what medical information he believed that his counselor
had revealed to a corrections officer. Thus, the court could
not determine from the face of the complaint whether the
inmate suffered from an "unusual" condition that would be
protected by his right to privacy. Moreover, the inmate did
not allege that his condition, whatever it might be, was
revealed to other inmates. 42 U.S.C.A. § 1983.

Anthony Shuler, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Charles J. Quackenbush, Esq., of Counsel,
New York, NY, for Defendants.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This matter brought pursuant to 42 U.S.C. § 1983 was
referred to the Hon. George H. Lowe, United States
Magistrate Judge, for a Report-Recommendation pursuant
to 28 U.S.C. § 636(b) and Local Rule 72.3(c). No
objections to the February 2, 2009
Report-Recommendation have been raised. After
examining the record, this Court has determined that the
Report-Recommendation is not subject to attack for plain
error or manifest injustice. Accordingly, this Court adopts
the Report-Recommendation for the reasons stated therein.
Defendant's motion for judgment on the pleadings is
GRANTED and Plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED.

***REPORT-RECOMMENDATION***

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to
42 U.S.C. § 1983, has been referred to me for Report and
Recommendation by the Honorable Thomas J. McAvoy,
Senior United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and Local Rule 72.3(c) of the Local Rules of
Practice for this Court. Plaintiff Anthony Shuler alleges
that two employees of the New York State Department of
Correctional Services ("DOCS") [FN1] violated his
constitutional rights when one revealed statements he
made during a counseling session and the other, based on
that revelation, issued a misbehavior report that resulted in
a 60-day disciplinary sentence. (Dkt. No. 1.)

FN1. Plaintiff's complaint also named DOCS as
a defendant. (Dkt. No. 1 at ¶ I(B).) The Court
dismissed DOCS as a defendant upon initial
review of the complaint. (Dkt. No. 6.)

Currently pending is Defendants' motion for judgment on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

the pleadings pursuant to Federal Rule of Civil Procedure 12(c) FN2. (Dkt. No. 16.) After Defendants filed the pending motion, Plaintiff requested a voluntary dismissal without prejudice. (Dkt. No. 19.) The Court denied that request. (Dkt. No. 21.) Plaintiff has not opposed the pending motion despite having been granted an extension of time to do so and being advised of the consequences of failing to do so. (Dkt. No. 21.) Because I find that Plaintiff's complaint fails to state a cause of action, I recommend that Defendants' motion for judgment on the pleadings be granted.

> FN2. Defendants' memorandum of law suggests that the Court find the complaint "wholly insubstantial and frivolous" and dismiss it for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). (Dkt. No. 16-2 at 4-5.) That suggestion did not appear in the notice of motion, the title page of the memorandum of law, or the introduction to the memorandum of law. Accordingly, I decline Defendants' suggestion and will address Plaintiff's complaint solely under Federal Rule of Civil Procedure 12(c).

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**

Liberally construed, the complaint alleges as follows:

On August 25, 2006, Plaintiff went to see his Mental Health Unit counselor, Defendant V. Brown. (Dkt. No. 1 at ¶ II(D).) Thereafter, Defendant Brown informed Defendant Sergeant R.J. Ballard that Plaintiff had behaved inappropriately toward her. (Dkt. No. 1 at 16.) On September 25, 2006, Defendant Ballard issued a misbehavior report. The report stated that when Defendant Ballard interviewed Plaintiff about Defendant Brown's allegations, Plaintiff "began yelling 'I'll do or say what I want to these females. I'm 41 years old and I'll do what I want.' " (Dkt. No. 1 at 10.) After a Tier III hearing on the misbehavior report, Plaintiff was sentenced to 60 days of keeplock along with loss of commissary, package and phone privileges. (Dkt. No. 1 at 17.)

On October 19, 2006, Plaintiff filed an inmate grievance. (Dkt. No. 1 at 8.) He complained that Defendant Brown had revealed the contents of their September 25, 2006, counseling session to Defendant Ballard. *Id.* He requested that Defendant Brown "take or retake a course in patient confidentiality." *Id.* He also asked "to have no future female as my counselor, since it makes me feel very uncomfortable to deal with the other sex on that level." *Id.* The grievance was denied. (Dkt. No. 1 at 16.)

**\*2** Plaintiff appealed his disciplinary sentence. (Dkt. No. 1 at 11-13.) On November 27, 2006, after Plaintiff had completed his keeplock sentence, DOCS reversed the disciplinary sentence. (Dkt. No. 1 at 15.)

In his complaint, Plaintiff alleges that Defendants violated his civil rights by violating his right to privacy and unlawfully detaining him in keeplock. (Dkt. No. 1 at ¶ II(D).) Liberally construed, Plaintiff's complaint raises a right-to-privacy claim against Defendant Brown and procedural and substantive due process claims against Defendant Ballard. Plaintiff requests $1 million in damages. (Dkt. No. 1 at ¶ V.)

**B. Summary of Grounds in Support of Defendants' Motion For Judgment on The Pleadings**

Defendants argue that (1) Plaintiff has not stated a right-to-privacy claim because he has not alleged that he suffers from a medical condition "unusual" enough to warrant privacy protection; (2) even if Plaintiff had alleged a cognizable privacy interest, the face of the complaint reveals that Defendant Brown's disclosure was reasonably related to legitimate penological interests; (3) the complaint fails to state a due process claim because the face of the complaint reveals that Plaintiff was granted a hearing and given the opportunity to rebut the charges against him FN3; and (4) they are entitled to qualified immunity. (Dkt. No. 16-2.) Because I find that the complaint fails to state a cause of action, I will not address Defendants' argument regarding qualified immunity.

> FN3. Defendants devoted only a four-sentence footnote to their argument regarding Plaintiff's due process claims.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

## II. ANALYSIS

### A. First Basis for Dismissal: Facial Merit of Defendants' Unopposed Motion

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the nonmoving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendants' motion for judgment on the pleadings was properly filed, Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure), and Plaintiff has failed to show good cause why his failure to oppose Defendants' motion should not be deemed as consent to the granting of the motion. Therefore, I must determine whether Defendants have met their burden to "demonstrate entitlement to dismissal" under Rule 12(c). [FN4]

FN4. *See also* Fed.R.Civ.P. 7(b)(1) (requiring motions to, *inter alia,* "state with particularity the grounds therefor").

An inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] is a more limited endeavor than a review of a contested motion for judgment on the pleadings. Specifically, under such an analysis, the movant's burden has appropriately been characterized as "modest." [FN5] This is because, as a practical matter, the burden requires only that the movant present an argument that is "facially meritorious." [FN6]

FN5. *See, e.g., Ciaprazi v. Goord,* 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec.22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord, Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *see also Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-1110 (N.D.N.Y.2003) (Munson, J.) (reviewing merely whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by 1997 U.S. Dist. LEXIS 16340, 1997 WL 640982, at *2 (N.D.N.Y. Oct. 14, 1997)* (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by 983 F.Supp. 595 (N.D.N.Y.1996)* (Pooler, J.).

FN6. *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, 2003 WL 22143709, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b] [3], "the court must review the motion to determine whether it is *facially meritorious*" ) [emphasis added; citations omitted]; *accord, Topliff v. Wal-Mart Stores East LP,* 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, 2007 WL 911891, at *28 & n. 43 (N.D.N.Y. March 22, 2007) (Lowe, M .J.); *Hynes v. Kirkpatrick,* 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, 2007 WL 894375, at *5-6 & n. 2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, 2007 WL 951447, at *28-29 & n. 40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458, 2007 WL 969576 (N.D.N.Y. March 28, 2007)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

(McAvoy, J.); *Kele v. Pelkey,* 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, 2006 WL 3940592, at *5 & n. 2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336, 2007 WL 189021 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

Here, I find that Defendants have met their lightened burden on their unopposed motion given Defendants' cogent, and legally supported, legal arguments set forth in their memorandum of law. (Dkt. No. 16.) I note that this Court has, on numerous occasions, granted motions to dismiss based on a similar facial analysis of a defendant's legal arguments (and a plaintiff's claims).[FN7]

> FN7. *See, e.g., Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Local Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 96-CV-1269, 1997 U.S. Dist. LEXIS 16340, 1997 WL 640982, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.); *Munoz v. Coombe,* 95-CV-1191, 1996 U.S. Dist. LEXIS 15107, at *3 (N.D.N.Y. Aug. 21, 1996) (Hurd, M.J.), *adopted by* 95-CV-1191, 1996 U.S. Dist. LEXIS 15108, 1996 WL 589369, at *2 (N.D.N.Y. Oct. 11, 1996) (Pooler, J.) (rejecting plaintiff's objections, explaining that "Local Rule 7.1(b) permits the court to grant an unopposed motion"); *Owens v. Long,* 95-CV-0604, 1996 U.S. Dist. LEXIS 6520, at *2 (N.D.N.Y. March 11, 1996) (Hurd, M.J.), *adopted by* 95-CV-0604, 1996 U.S. Dist. LEXIS 4807 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.).

**\*3** For these reasons, I recommend that the Court grant Defendants' motion for judgment on the pleadings.

**B. Alternative Basis for Dismissal: Substantive Merit of Defendants' Motion**

In the alternative, I recommend dismissal based on the sort of detailed scrutiny of Defendants' legal arguments that would be appropriate on a *conteste* d motion for judgment on the pleadings.

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enter. .,* 448 F.3d 518, 521 (2d Cir.2006). Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[FN8] or (2) a challenge to the legal cognizability of the claim.[FN9]

> FN8. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> FN9. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ( "There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8 [a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, 2004 WL 2613993, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, 2002 WL 313156, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." FN10 The main purpose of this rule is to "facilitate a proper decision on the merits." FN11 A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." FN12

FN10. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

FN11. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

FN12. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[FN13] However, it is well established that even this liberal notice pleading standard "has its limits."[FN14] As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[FN15]

> FN13. *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

> FN14. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

> FN15. *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord, Dura Pharm.,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,*

of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[FN16] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id. at* 1965-74.

> FN16. The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic,* 127 S.Ct. at 1969.

**\*4** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

claim is based],” it does mean that the pleading must contain at least “some factual allegation[s].” *Id* . [citations omitted]. More specifically, the “[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level],” assuming (of course) that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be “plausible grounds to infer [actionable conduct],” or, in other words, “enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct].” *Id* .

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic* ).[FN17] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[FN18]

FN17. *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that “To survive a motion to dismiss, a complaint must plead ‘enough facts to state a claim to relief that is plausible on its face.’ ”) [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, 2008 WL 269100, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that “*Twombly* requires ... that the complaint's ‘[f]actual allegations be enough to raise a right to relief above the speculative level ....’ ”) [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) (“We have declined to read Twombly's flexible ‘plausibility standard’ as relating only to antitrust cases.”) [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, “[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible ‘plausibility standard,’ which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to

render the claim *plausible.* ” ) [emphasis in original].

FN18. *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, “To survive a motion to dismiss, a complaint must plead ‘enough facts to state a claim to relief that is plausible on its face.’ ”) [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *“plausible* claim of disparate treatment,” under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, “Specific facts are not necessary” to successfully state a claim under Rule 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Bell Atlantic*-that a pleading need not “set out in detail the facts upon which [the claim is based]” in order to successfully state a claim. *Bell Atlantic,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant “fair notice” of the nature of the claim and the “grounds” on which the claim rests without ever having to allege any facts whatsoever. [FN19] There must still be enough facts alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

FN19. For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Bell Atlantic,* all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna*

*v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [FN20] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*[FN21] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

FN20. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

FN21. *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**\*5** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[FN22] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN23] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN24] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[FN25] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

substantive" such that "[b]etter pleading will not cure it." FN26

**FN22.** "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. See *Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

**FN23.** *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

**FN24.** *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

**FN25.** *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct.24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

**FN26.** *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy,* 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint-the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process-was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell,* 07-CV-0166, 2008 WL 3582743, at *2 (D.Vt. Aug.13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint-lack of subject-matter jurisdiction and lack of standing-were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.,* 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint-which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence-were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba,* 00-CV-1309, 2001 WL 58834, at *11 (D.Conn. Jan.23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

complaint arising under 42 U.S.C. § 1983 because the error in his complaint-the fact that the defendants were protected from liability by Eleventh Amendment immunity-was substantive and not formal in nature, rendering repleading futile).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[FN27] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN28] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN29] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[FN30]

FN27. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

FN28. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN29. *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ] or prejudice the adverse party").

FN30. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

1. *Privacy*

a. *Cognizable privacy interest*

Plaintiff alleges that Defendants violated his right to privacy. (Dkt. No. 1 at ¶ II(D).) Defendants argue that Plaintiff has not stated a cause of action. (Dkt. No. 16-2 at 5-7.) Defendants are correct.

There is a constitutional right of privacy[FN31] that protects the individual interest against disclosure of personal

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

matters such as one's medical condition. *Whalen v. Roe, 429 U.S. 589, 598-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)*. In *Doe v. City of New York,* 15 F.3d 264 (2d Cir.1994), the Second Circuit applied *Whalen* to hold that individuals who are HIV positive "clearly possess a constitutional right to privacy regarding their condition." The Second Circuit has extended this protection to prisoners. *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999). These decisions do not create an absolute right of privacy regarding a prisoner's medical condition. Rather, the prisoner's privacy interest will vary with the prisoner's medical condition. *Id.* at 111; *Doe v. City of New York,* 15 F.3d at 267. This privacy interest is at its zenith when the prisoner suffers from an "unusual" condition, such as HIV or transsexualism, that is "likely to provoke an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell,* 175 F.3d at 111. Courts have refused to recognize a protected privacy interest where a prisoner's medical condition is not "unusual." *Rodriguez v. Ames,* 287 F.Supp.2d 213, 220 (W.D.N.Y.2003). Courts have also refused to recognize a protected privacy interest where there is no evidence that a prisoner's condition was revealed to other inmates. *Leon v. Johnson,* 96 F.Supp.2d 244, 252 (W.D.N.Y.2000) [FN32]

FN31. The Supreme Court has ruled that "a right to privacy ... [is] derived from the Fourteenth Amendment or the 'penumbra' of other constitutional rights." *Webb v. Goldstein,* 117 F.Supp.2d 289, 296 (E.D.N.Y.2000) (citing *Whalen v. Roe,* 429 U.S. 589, 598 n. 23, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)).

FN32. Defendants have not cited, and the Court has not found, authority specifically addressing the standard to be applied where a prison mental health official allegedly reveals statements made by a prisoner during a counseling session. However, the logic underlying the disclosure-of-medical-condition cases-that prisoners have a reduced right to privacy that arises only in unusual situations, such as those that implicate a prisoner's safety-is applicable here.

*6 Here, Plaintiff has not alleged precisely what medical information he believes Defendant Brown revealed. He states that "the contents" of his August 25, 2006, session with Brown were disclosed and that "the information released was not a threat to the facility, staff or the inmate population." (Dkt. No. 1 at 8.) Thus, this Court cannot determine from the face of the complaint whether Plaintiff suffers from an "unusual" condition that would be protected by his right to privacy. Moreover, Plaintiff does not allege that his condition, whatever it may be, was revealed to other inmates. Therefore, Plaintiff has not alleged a cognizable privacy interest.

b. *Legitimate penological interest*

Even if Plaintiff had alleged a cognizable privacy interest, his right to privacy claim would be subject to dismissal for failure to state a claim because the face of the complaint reveals that Defendant Brown had a legitimate penological interest in revealing information from her counseling session with Plaintiff.

Prison officials may reveal a prisoner's medical condition, even an "unusual" medical condition that is protected by the zenith of the prisoner's right to privacy, if the disclosure is "reasonably related to legitimate penological interests." *Powell,* 175 F.3d at 112. A court can determine whether a prison official's actions were "reasonably related to legitimate penological interests" on a motion to dismiss. See e.g. *Webb v. Goldstein,* 117 F.Supp.2d 289 (E.D.N.Y.2000).

Here, the face of the complaint reveals that Defendant Brown had legitimate penological reasons for revealing information from her session with Plaintiff. During the session with Defendant Brown, Plaintiff allegedly engaged in "inappropriate sexual behavior/conduct." (Dkt. No. 1 at 10.) Reporting this incident to a correctional officer was reasonably related to the legitimate penological interest of protecting prison personnel from potential threats. See e.g. *Choice v. Coughlin,* No. 94 Civ. 8307, 1996 WL 325627 (S.D.N.Y. June 11, 1996) (prisoner's letter regarding his romantic feelings for a civilian medical employee at prison was "fundamentally inconsistent with the legitimate penological interests of the facility" because it presented

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

"a potential threat to the safety and security of [the employee] and other prison staff.").

Therefore, it is recommended that Plaintiff's cause of action for invasion of his right to privacy be dismissed.

2. *Due Process*

Plaintiff does not explicitly allege that Defendants violated his due process rights. However, the complaint states that Defendant Ballard "wrote up a fabricated misbehavior report that led to me being sentenced to 60 days of keeplock." (Dkt. No. 1 at ¶ II(D).) Liberally construing the complaint, I have deemed this to be a claim that Defendants violated Plaintiff's procedural and substantive due process rights.

a. *Procedural due process*

In order to state a claim for violation of his procedural due process rights, Plaintiff must allege facts plausibly suggesting that (1) he was deprived of a liberty interest; (2) without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000).

**\*7** As Defendants note, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)); *accord, Pittman v. Forte,* 01-CV-0100, 2002 WL 31309183, \*5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.) The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is where the false accusation is based on something such as "retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 WL 965345, at \*8 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted]. Here, Plaintiff does not claim that the misbehavior report was issued in retaliation for Plaintiff's exercise of a constitutional right. Accordingly, the complaint does not state a claim for a procedural due process violation based on the filing of an allegedly false

misbehavior report.

The complaint could also be construed as stating a procedural due process claim based on the length of Plaintiff's keeplock detention. Although Defendants did not address this claim, I will do so *sua sponte* under 28 U.S.C. § 1915(e)(2). An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU [FN33]." *Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). The issue, then, is whether Plaintiff's keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

> [FN33.] Although keeplock confinement and SHU confinement are not identical detention statuses, the Second Circuit has applied the same procedural due process analytical framework to both. See e.g. *Palmer v. Richards,* 364 F.3d 60, 66-67 (2d Cir.2004).

In the Second Circuit, determining whether a disciplinary confinement constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer,* 364 F.3d at 64. Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions [FN34]." *Palmer,* 364 F.3d at 65. For confinements of an "intermediate duration-between 101 and 305 days-development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer,* 364 F.3d at 64-65.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

Disciplinary segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life." *Palmer,* 364 F.3d at 65 (quoting *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000)).

> FN34. "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004).

**\*8** Here, Plaintiff alleges that he served 60 days in keeplock. Accordingly, a protected liberty interest is implicated only if Plaintiff was confined under conditions "more severe" than "normal" SHU conditions. Plaintiff has alleged no such conditions. Compare *Welch v. Bartlett,* 196 F.3d 389 (2d Cir.1999) (plaintiff alleged that while in the SHU he received "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes); *Palmer,* 364 F.3d at 66 (plaintiff alleged that he suffered unusual SHU conditions such as being deprived of his property, being mechanically restrained whenever he was escorted from his cell, and being out of communication with his family); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) (plaintiff alleged that he was confined to his cell for 24 hours a day, not permitted to shower for weeks at a time, denied hygiene products, and denied utensils); *Wheeler v. Butler,* 209 F.App'x 14 (2d Cir.2006) (plaintiff alleged that he was denied the use of his hearing aids during his SHU confinement). Therefore, Plaintiff has not sufficiently alleged that his confinement in keeplock deprived him of a protected liberty interest.

District courts in the Second Circuit are split on whether a prisoner can state a procedural due process cause of action when he alleges that he served less than 101 days in the SHU but does not allege conditions more severe than normal SHU conditions. Compare *Gonzalez-Cifuentes v. Torres,* No. 9:04-cv-1470 GLS/DRH, 2007 WL 499620, at * 3 (N.D.N.Y. Feb.13, 2007) ("The Second Circuit has held that at least where the period of confinement exceeded thirty days, refined fact-finding is required to

resolve defendants' claims under *Sandin.* No such fact-finding can occur ... on a motion to dismiss") and *Smart v. Goord,* 441 F.Supp.2d 631, 641 (S.D.N.Y.2006) ("Smart has not alleged that the conditions of her confinement were more severe than normal SHU conditions ... However, such detailed factual allegations are not necessary to withstand a motion to dismiss ... Since Smart has alleged that she was confined for seventy days, she has met her burden in alleging the deprivation of a protected liberty interest") with *Alvarado v. Kerrigan,* 152 F.Supp.2d 350 (S.D.N.Y.2001) (granting motion for judgment on the pleadings where prisoner's allegations about the conditions of his 93-day SHU confinement failed to "elevate his confinement to the level of deprivation required under *Sandin* "); *Sales v. Barizone,* No. 03 Civ. 6691RJH, 2004 WL 2781752, at *7 (S.D.N.Y. Dec.2, 2004) (granting motion to dismiss with leave to amend because plaintiff's "due process claim arising out of two months' confinement in the SHU ... cannot survive the *Sandin* test absent further allegations") *Tookes v. Artuz,* No. 00 Civ. 4969 RCC HBP, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("No such additional egregious circumstances are pled here. Indeed, the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement. Nor has [plaintiff] responded to the defendants' motion in order to provide further detail. Therefore, dismissal of plaintiff's due process claims is appropriate"); and *Prince v. Edwards,* No. 99 Civ. 8650, 2000 WL 633382, at *5 (S.D.N.Y. May 17, 2000) (dismissing case with prejudice where the complaint contained "no allegations whatever regarding the conditions of [prisoner's 66-day] confinement."). The Second Circuit has never addressed this issue directly [FN35]

> FN35. While the Second Circuit has stated that "development of a detailed record will assist appellate review" of SHU cases and that "development of a detailed record of the conditions of the confinement relative to ordinary conditions is required," it has done so only in cases involving "intermediate" SHU confinements of 101 to 305 days. *Colon,* 215 F.3d at 232; *Palmer,* 364 F.3d at 64-65. Even in this "intermediate" context, where a detailed record is "required," the Second Circuit has not remanded a case for further development of the record absent an allegation of severe SHU

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

conditions. For example, in *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007), the plaintiff was confined to a super-restrictive housing unit for six months. He sued, arguing in part that his procedural due process rights were violated. The defendants moved to dismiss. The district court denied the motion, finding that the plaintiff had alleged the deprivation of a liberty interest. The defendants brought an interlocutory appeal. The Second Circuit affirmed, finding that "the Plaintiff's confinement of more than six months fell in the intermediate range, thereby requiring inquiry into the conditions of his confinement, which he *sufficiently alleges* to have been severe." *Iqbal,* 490 F.3d at 163 (emphasis added).

**\*9** The undersigned agrees with the *Alvarado, Sales, Tookes,* and *Prince* courts that a motion to dismiss can be granted where a prisoner who served less than 101 days in the SHU alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU conditions. The undersigned adopts this view for two reasons. First, as discussed at length above, Rule 8 requires that a complaint include factual allegations that raise a right to relief above the speculative level to the plausible level. Where a prisoner contends merely that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU conditions, his right to relief under a procedural due process theory is purely speculative. Second, the Second Circuit's manner of reviewing motions to dismiss in SHU confinement cases suggests that dismissal is the better course. In its cases, the Second Circuit has focused on the *content* of the prisoner's allegations regarding SHU conditions rather than establishing a bright-line rule that a determination of whether conditions were "atypical and significant" cannot be resolved on a Rule 12(b)(6) motion. For example, in *Ortiz,* the district court granted the defendants' motion to dismiss a case in which a prisoner complained of a 90-day SHU confinement. The Second Circuit reversed, not because the *Sandin* issue can never be decided at the motion to dismiss stage, but because *the prisoner had alleged the existence of "conditions in SHU far inferior to those prevailing in the prison in general."* *Ortiz,* 380 F.3d at 655 (emphasis added). Plaintiff's bare allegation that his procedural due process rights were

violated by his 60-day keeplock confinement is insufficient to state a claim. Therefore, I recommend that Plaintiff's procedural due process claim be dismiss with leave to amend.

b. *Substantive due process*

Given the special solicitude due to *pro se* civil rights plaintiffs, I have deemed the complaint to include a substantive due process claim and will address it *sua sponte* under 28 U.S.C. § 1915(e)(2). Defendants have not addressed any possible substantive due process claim.

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations omitted). Very few conditions of prison life are "shocking" enough to violate a prisoner's right to substantive due process. In *Sandin,* the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs. *Sandin,* 515 U .S. at 479 n. 4, 484. Courts have also noted that a prison official's refusal to obey a state court order to release a prisoner from disciplinary confinement may violate the prisoner's right to substantive due process. *Johnson v. Coughlin,* No. 90 Civ. 1731, 1997 WL 431065, at \*6 (S.D.N.Y. July 30, 1997); *Arce v. Miles,* No. 85 Civ. 5810, 1991 WL 123952, at \*9 (S.D.N.Y. June 28, 1991).

**\*10** Plaintiff's complaint does not allege facts plausibly suggesting that Defendants' actions were arbitrary, conscience-shocking or oppressive in the constitutional sense. As discussed above, the complaint does not indicate that Plaintiff was held in unusual keeplock conditions. Moreover, Plaintiff does not allege that Defendants refused to obey a state court order to release him from disciplinary confinement. Therefore, the complaint fails to state a claim for violation of Plaintiff's right to substantive due process and I recommend that the claim be dismissed with leave to amend.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 790973 (N.D.N.Y.)
(Cite as: 2009 WL 790973 (N.D.N.Y.))

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 16) be ***GRANTED*** with leave to amend.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[FN36]

FN36. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.")

[citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

N.D.N.Y.,2009.
Shuler v. Brown
Slip Copy, 2009 WL 790973 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.